**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS,**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| HOLIDAY INN CLUB VACATIONS INCORPORATED | § § § | |
| *Plaintiff* | § | |
| v. | § | |
| | § | Civil Action No. _____ |
| T & G CORPORATION F/K/A | § | |
| T & G CONSTRUCTORS and | § | |
| ACI ARCHITECTURAL CONCEPTS, INC. | § § | |
| *Defendants* | § | |

---

**HOLIDAY INN CLUB VACATIONS INCORPORATED'S**
**ORIGINAL COMPLAINT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Holiday Inn Club Vacations Incorporated, complaining of T & G Corporation f/k/a T & G Constructors and ACI Architectural Concepts, Inc. (referred to collectively as "Defendants").

## I.
### PARTIES

1.1    Plaintiff, Holiday Inn Club Vacations Incorporated ("**HICV**") is a Delaware corporation authorized to do business in the state of Texas.

1.2    Defendant, T & G Corporation f/k/a T & G Constructors ("**T & G**") is a Florida corporation authorized to do business in the state of Texas. T & G may be served with process through its registered agent:

> **Corporation Service Company**
> **d/b/a CSC-Lawyers Inc.**
> **211 E. 7th Street, Suite 620**
> **Austin, Texas 78701**

or by serving any member, director or corporate officer of T & G (wherever he or she may be found) or the Secretary of the State of Texas.

1.3     Defendant, ACI Architectural Concepts, Inc. ("**ACI**") is a California corporation authorized to do business in the state of Texas. ACI may be served with process through its registered agent:

> **Margit Elizabeth Whitlock**
> **3958 First Ave.**
> **San Diego, CA 92103**

or by serving any member, director or corporate officer of ACI (wherever he or she may be found) or the Secretary of the State of Texas.

## II.
### VENUE

2.1     Venue is proper in this Court because all or a substantial part of the events or omissions giving rise to HICV's claims and causes of action occurred in the Southern District of Texas. *See* 28 U.S.C. § 1391 (b). Specifically, pursuant to the agreements and invoices at issue in this matter, the obligations and payments owed by T & G and ACI to HICV are due, performable, and payable in Galveston County, TX.

## III.
### JURISDICTION

3.1     Jurisdiction is based on diversity of citizenship of the parties. *See* 28 U.S.C. § 1332 (a)(1). HICV, T & G, and ACI are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

**IV.**
**F**ACTUAL **B**ACKGROUND

4.1    HICV's predecessor-in-interest (Silverleaf Resorts, Inc.) engaged T & G as the general contractor to build the Ocean Club Resort in Galveston, Texas (the "Project") pursuant to a Contract Agreement (the "T & G Contract").[1] ACI performed Construction Administration services for the Project pursuant to a contract with the Owner (the "ACI Contract").[2]

4.2    During and after completion of the Project, the owner experienced significant issues with the building envelope, waterproofing, and related components—due to T & G's deficient work and T & G's failure to comply with Project plans and specifications, along with ACI's failure to properly conduct the construction administration and Project oversight services that ACI agreed to perform.

4.3    For example, on or about January 2018, T & G finally remedied some lingering roof issues on the Project, which enabled HICV to finally obtain a manufacturer's roof warranty. Despite this, HICV has now observed substantial damage to interior building components, drywall, and finishes arising from new or previously unrepaired roof leaks on the Project.

4.4    In addition, throughout 2019 and 2020, HICV observed water intrusion and related damage to the Property arising from leaks in the curtain wall, pool deck, and exterior windows installed by T & G and administrated by ACI.

---

[1] A copy of the T & G Contract is attached as <u>Exhibit A</u> and incorporated by reference.
[2] A copy of the ACI Contract is attached as <u>Exhibit B</u> and incorporated by reference.

4.5     To date, HICV has incurred substantial damages as a result of T & G's work on the Project. Namely, T & G's defective flashing, roof system, curtain wall, windows, and related components have resulted in significant resulting damage to the Project as a whole. Similarly, HICV incurred these damages by ACI's failure to properly administer, review, and control the work performed on the Project.

4.6     Despite HICV's demand for payment or repair, T & G has refused to remedy or properly repair the issues described above. Furthermore, T & G and ACI have failed to pay HICV for the costs necessary to repair T & G's defective work and the other damages arising directly from T & G's work and ACI's deficient construction administration.

## V.
### CAUSES OF ACTION

**FIRST CAUSE OF ACTION: BREACH OF CONTRACT**

5.1     All prior paragraphs are incorporated by reference.

5.2     HICV sues T & G and ACI for breach of contract.

5.3     HICV performed all of its obligations under the contracts with T & G and ACI. Namely, HICV and/or Silverleaf paid T & G for labor and materials furnished in accordance with the T & G Contract. However, T & G failed to fulfill its contractual obligation to complete the work in a good and workmanlike manner and free from defects. Similarly, HICV and/or Silverleaf paid ACI for construction administration services furnished in accord with its Contract. ACI failed to fulfill its contractual obligation to properly manage and oversee the construction Project.

5.4    Due to T & G's failure to fulfill its contractual obligations, HICV has suffered monetary damages arising from T & G's defective work and the resulting property damage. Likewise, due to ACI's failure to fulfill its contractual obligations, HICV has suffered monetary damages arising from the defective work and the resulting property damage. Despite HICV's demand, T & G and ACI have refused to pay the amounts necessary to repair this defective work and property damage. Accordingly, HICV's damages directly result from ACI's and T & G's breach of their contractual obligations.

SECOND CAUSE OF ACTION: NEGLIGENCE

5.5    All prior paragraphs are incorporated by reference.

5.6    HICV sues T & G and ACI for negligence.

5.7    T & G had a duty to perform the work in a commercially-reasonable manner, free from defects in materials or workmanship. ACI also had a duty to perform construction administration services in a commercially-reasonable manner.

5.8    T & G breached its duty to furnish labor and materials that were free from defects. T & G's breach was unintentional and caused damage to other property—including water damage to exterior and interior building components. ACI similarly breached its duty by failing to ensure the construction was performed correctly and this breach led to the Property damage described above.

5.9    HICV suffered damages as a result of T & G's breach of its duty and ACI's breach of its duty.

5.10    These breaches of their respective duties are the direct and/or proximate cause of the injuries and damages suffered by HICV.

5.11    Accordingly, HICV seeks actual damages from T & G and ACI for the costs necessary to fully and completely repair all defects and problems arising from T & G's defective and negligent work and ACI negligent construction administration.

**THIRD CAUSE OF ACTION: INDEMNITY**

5.12    Pursuant to its Contract with HICV, T & G agreed to defend and indemnify HICV from all claims or damages caused by, arising from, or connected to T & G's work on the Project. Accordingly, T & G must indemnify HICV from all damages related to T & G's work.

## VI.
## ATTORNEYS' FEES

6.1    As a result of the acts and/or omissions of T & G and ACI as described herein, HICV has been required to retain legal counsel to prosecute this suit and has agreed to pay a reasonable fee for the legal services performed.

6.2    HICV is entitled to recover its reasonable attorneys' fees for all legal services associated with prosecuting its claims in this lawsuit pursuant to: (1) the terms of the T & G Contract; and (2) Chapter 38 of the Texas Civil Practice & Remedies Code. Additionally, HICV seeks recovery of all reasonable and necessary attorneys' fees for its post-award work.

## VII.
### INTEREST

7.1     HICV is entitled to recover all legal and equitable interest, both pre-award and post-award, at the highest legal rate allowed under applicable law.

## VIII.
### CONDITIONS PRECEDENT SATISFIED

8.1     All conditions precedent to the recovery of HICV's damages, attorneys' fees, and interest sought herein have been performed, have occurred, or have been waived or excused.

## IX.
### ALTERNATIVE PLEADING

9.1     HICV's claims as pleaded herein, where necessary, are in the alternative. *See* Fed. R. Civ. P. 8 (a)(3).

## X.
### CERTIFICATE OF MERIT - RESERVATION

10.1    In accordance with Chapter 150 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, to the extent it applies in this matter, HICV intends to supplement this pleading with a certificate of merit supporting the allegations contained in this Complaint. HICV believes that ACI might contend that a statute of limitations period expires on October 12, 2020 and therefore HICV files this Complaint in compliance with Tex. Civ. Prac. & Rem. Code §150.002(c) which allows a party to file without a certificate of merit, and later supplement, if the filing is within 10 days of the potential expiration of a statute of limitations.

## XI.
### PRAYER FOR RELIEF

11.1    Holiday Inn Club Vacations Incorporated respectfully requests T & G Corporation f/k/a T & G Constructors and ACI Architectural Concepts, Inc. be cited to appear and answer, and, following such hearing and/or trial as may be required, the Court enter judgment against T & G and ACI in favor of HICV as follows:

(a)    that HICV be awarded all of its damages as alleged herein;

(b)    that HICV be awarded its reasonable and necessary attorneys' fees in the trial court and all appellate courts;

(c)    that HICV be awarded its costs of court in the trial court and all appellate courts;

(d)    that HICV be awarded pre-judgment and post-judgment interest at the highest legal rate; and

(e)    that HICV be awarded all other relief to which it may be entitled as a matter of law or equity, or which the Court determines is just and proper.

Dated: October 9, 2020

[*Intentionally Blank – Signature Block on Following Page*]

Respectfully submitted,

**ANDREWS MYERS, P.C.**

*/s/ Clayton C. Utkov*
**Clayton C. Utkov**
Texas State Bar No. 24028180
cutkov@andrewsmyers.com
**Andrew S. Harris**
aharris@andrewsmyers.com
Texas State Bar No. 24090146
919 Congress Ave., Suite 1050
Austin, Texas 78701
512-900-3012 – Telephone
512-900-3082 – Facsimile

***Attorneys-In-Charge for***
***Holiday Inn Club***
***Vacations Incorporated***

Of Counsel:

**ANDREWS MYERS, P.C.**
919 Congress Ave., Suite 1050
Austin, Texas 78701
512-900-3012 – Telephone
512-900-3082 – Facsimile

# EXHIBIT A



# SILVERLEAF

RESORTS

# CONTRACT AGREEMENT

BETWEEN

OWNER:
Silverleaf Resorts, Inc.
1221 River Bend Dr, Ste. 120
Dallas, TX 75247

CONTRACTOR:
T&G Constructors
8623 Commodity Circle
Orlando, FL 32819

FOR

PROJECT #29001C01
OCEAN CLUB RESORT
GALVESTON, TX

DATED

April 21, 2014



Cnt 29336

# TABLE OF CONTENTS

Contract Agreement A102-2007                        Tab 1

AIA A201-2007 General Conditions                    Tab 2

Exhibit A – Schedule of Values dated 6/10/14        Tab 3

Cost Saving List dated 6/10/14                      Tab 4

Clarifications dated 6/10/14                         Tab 5

Exhibit B – Supplemental Conditions                 Tab 6

Exhibit C – Drawings and Specifications List        Tab 7

Exhibit D – Description of Division 1000 Costs       Tab 8

Exhibit E – Insurance Requirements                  Tab 9

Exhibit F – Payout Authorization                    Tab 10

Exhibit G – GC Checklist for Closeout Requirements  Tab 11

RFI Form                                            Tab 12

Warranty Book Index                                 Tab 13

Final Inspection Form                               Tab 14

RFCO Form                                           Tab 15

Unacceptable Contractors                            Tab 16

SRI Resort Rules                                    Tab 17

Conditional Waver & Release Form                    Tab 18



# **AIA**® Document A102™ – 2007

## *Standard Form of Agreement Between Owner and Contractor* where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price

**AGREEMENT** made as of the Twenty-first day of April in the year Two Thousand Fourteen

*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

Silverleaf Resorts, Inc.
1221 River Bend Drive, Suite 120
Dallas, TX 75247
Telephone Number: (214)951-0962
Fax Number: (214)630-4740

and the Contractor:
*(Name, legal status, address and other information)*

T&G Constructors
8623 Commodity Circle
Orlando, FL 32819
Telephone Number: (407) 352 4443
Fax Number: (407) 352 0778

for the following Project:
*(Name, location and detailed description)*

OCR 29001C01 Ocean Club Resort
19418 San Luis Pass Road
Galveston, TX 77514
38-Unit, Section 1, Building 1

The Architect:
*(Name, legal status, address and other information)*

The Matrix Design Companies, Inc
6213 Skyline Drive, Suite 100
Houston, TX 77057
Telephone Number: (703)525-0424

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document is not intended for use in competitive bidding.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

Init.

/

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                                                          (1348813417)

1

TABLE OF ARTICLES

1      THE CONTRACT DOCUMENTS

2      THE WORK OF THIS CONTRACT

3      RELATIONSHIP OF THE PARTIES

4      DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

5      CONTRACT SUM

6      CHANGES IN THE WORK

7      COSTS TO BE REIMBURSED

8      COSTS NOT TO BE REIMBURSED

9      DISCOUNTS, REBATES AND REFUNDS

10     SUBCONTRACTS AND OTHER AGREEMENTS

11     ACCOUNTING RECORDS

12     PAYMENTS

13     DISPUTE RESOLUTION

14     TERMINATION OR SUSPENSION

15     MISCELLANEOUS PROVISIONS

16     ENUMERATION OF CONTRACT DOCUMENTS

17     INSURANCE AND BONDS

## ARTICLE 1   THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, this Agreement shall govern.

## ARTICLE 2   THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3   RELATIONSHIP OF THE PARTIES

The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

**Init.**

**/**

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                    (1348813417)

**2**

## ARTICLE 4   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**§ 4.1** The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

The commencement date will be fixed in a notice to proceed; Dated (April 21, 2014)

If, prior to commencement of the Work, the Owner requires time to file mortgages and other security interests, the Owner's time requirement shall be as follows:

**§ 4.2** The Contract Time shall be measured from the date of commencement.

**§ 4.3** The Contractor shall achieve Substantial Completion of the entire Work not later than  Four Hundred Seventy Eight  ( 478 ) days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. If appropriate, insert requirements for earlier Substantial Completion of certain portions of the Work.)*

Substantial Completion / Certificate of Occupancy Date: August 12, 2015
Owner Turnover Date: August 12, 2015

| Portion of Work | Substantial Completion date |
|---|---|

, subject to adjustments of this Contract Time as provided in the Contract Documents.

*(Insert provisions, if any, for liquidated damages relating to failure to achieve Substantial Completion on time, or for bonus payments for early completion of the Work.)*

## ARTICLE 5   CONTRACT SUM

**§ 5.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Contractor's Fee.

**§ 5.1.1** The Contractor's Fee:
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee.)*

| Overhead | $1,041,682.00 |
|---|---|
| Fees & General Conditions | $1,029,590.00 |

**§ 5.1.2** The method of adjustment of the Contractor's Fee for changes in the Work:

1. The GC shall be allowed a markup for Overhead and Profit (OH&P) on all approved Change Orders as follows:
   a. For those Change Orders where the work is accomplished by the GC's own forces, the GC shall be allowed a maximum of Ten Percent (10%) Overhead and Five Percent (5%) Profit.  By definitions, Overhead includes all supervision, and no separate charges will be allowed.
   b. For those change Orders where the work is accomplished by the GC's Subcontractors or Suppliers, the GC shall be allowed a maximum of Five Percent (5%) OH&P.

Init.

/

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                      (1348813417)

  c. Change Orders where the work is accomplished by the GC's Subcontractors or Suppliers shall be inclusive of materials.  If GC opts to purchase materials for use by others, the GC shall be allowed a maximum of Five Percent (5%) OH&P.

2. There shall be no markup allowed for any changes in costs related to the Preferred Vendor Program.  Any changes in these costs shall be passed on to the Owner at face value.

**§ 5.1.3** Limitations, if any, on a Subcontractor's overhead and profit for increases in the cost of its portion of the Work:

**§ 5.1.4** Rental rates for Contractor-owned equipment shall not exceed  Seventy Five  percent (  75  %) of the standard rate paid at the place of the Project.

**§ 5.1.5** Unit prices, if any:
*(Identify and state the unit price; state the quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit ($0.00) |
|------|----------------------|------------------------|

§ 5.1.6 Time being of the essence, the GC shall be charged Liquidated Damages in the amount of One Thousand and 00/100 Dollars ( $1,000.00) per calendar day for every day which exceed the Date of Substantial Completion as specified herein or as amended by Change Orders as stipulated in Section I of Exhibit B. Conversely, the GC shall be awarded One Thousand and 00/100 dollars ($1,000.00) per calendar day for every day of completion earlier than the Date of Substantial Completion as specified herein or as amended by Change Orders as stipulated in Section I of Exhibit "B". The Change Order for Bonus/Liquidated Damages shall be submitted and approved prior to receipt of the Final Pay Request.

**§ 5.2 GUARANTEED MAXIMUM PRICE**
**§ 5.2.1** The Contract Sum is guaranteed by the Contractor not to exceed Nineteen Million One Hundred Thirty-five Thousand Five Hundred Nineteen Dollars and Zero Cents ($ 19,135,519.00 ), subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner.
*(Insert specific provisions if the Contractor is to participate in any savings.)*

 To the extent that the Cost of Work is less than the Guaranteed Maximum Price, the Construction Manager shall receive Seventy (70) percent of the savings and the Owner shall receive Thirty (30) percent of savings.

**§ 5.2.2** The Guaranteed Maximum Price is based on the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(N/A)*

**§ 5.2.3** Allowances included in the Guaranteed Maximum Price, if any:
*(Identify allowance and state exclusions, if any, from the allowance price.)*

| Item | Price |
|------|-------|
| N/A | N/A |

**§ 5.2.4** Assumptions, if any, on which the Guaranteed Maximum Price is based: All Work included.

**Init.**

**/**

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                             (1348813417)

**§ 5.2.5** To the extent that the Drawings and Specifications are anticipated to require further development by the Architect, the Contractor has provided in the Guaranteed Maximum Price for such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

## ARTICLE 6    CHANGES IN THE WORK

**§ 6.1** Adjustments to the Guaranteed Maximum Price on account of changes in the Work may be determined by any of the methods listed in Section 7.3.3 of AIA Document A201–2007, General Conditions of the Contract for Construction.

**§ 6.2** In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Section 7.3.3.3 of AIA Document A201–2007 and the term "costs" as used in Section 7.3.7 of AIA Document A201–2007 shall have the meanings assigned to them in AIA Document A201–2007 and shall not be modified by Articles 5, 7 and 8 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

**§ 6.3** In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in the above-referenced provisions of AIA Document A201–2007 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the term "fee" shall mean the Contractor's Fee as defined in Section 5.1.1 of this Agreement.

**§ 6.4** If no specific provision is made in Article 5 for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Article 5 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

## ARTICLE 7    COSTS TO BE REIMBURSED
### § 7.1 COST OF THE WORK

**§ 7.1.1** The term Cost of the Work shall mean costs necessarily incurred by the Contractor in the proper performance of the Work. Such costs shall be at rates not higher than the standard paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 7.

**§ 7.1.2** Where any cost is subject to the Owner's prior approval, the Contractor shall obtain this approval prior to incurring the cost. The parties shall endeavor to identify any such costs prior to executing this Agreement.

### § 7.2 LABOR COSTS

**§ 7.2.1** Wages of construction workers directly employed by the Contractor to perform the construction of the Work at the site or, with the Owner's prior approval, at off-site workshops.

**§ 7.2.2** Wages or salaries of the Contractor's supervisory and administrative personnel when stationed at the site with the Owner's prior approval.
*(If it is intended that the wages or salaries of certain personnel stationed at the Contractor's principal or other offices shall be included in the Cost of the Work, identify in Article 15, the personnel to be included, whether for all or only part of their time, and the rates at which their time will be charged to the Work.)*

**§ 7.2.3** Wages and salaries of the Contractor's supervisory or administrative personnel engaged at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

**§ 7.2.4** Costs paid or incurred by the Contractor for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections 7.2.1 through 7.2.3.

**Init.**

**/**

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                                                                (1348813417)

5

**§ 7.2.5** Bonuses, profit sharing, incentive compensation and any other discretionary payments paid to anyone hired by the Contractor or paid to any Subcontractor or vendor, with the Owner's prior approval.

### § 7.3 SUBCONTRACT COSTS
Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts.

### § 7.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION
**§ 7.4.1** Costs, including transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction.

**§ 7.4.2** Costs of materials described in the preceding Section 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Contractor. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

### § 7.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS
**§ 7.5.1** Costs of transportation, storage, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Contractor at the site and fully consumed in the performance of the Work. Costs of materials, supplies, temporary facilities, machinery, equipment and tools that are not fully consumed shall be based on the cost or value of the item at the time it is first used on the Project site less the value of the item when it is no longer used at the Project site. Costs for items not fully consumed by the Contractor shall mean fair market value.

**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Contractor at the site and costs of transportation, installation, minor repairs, dismantling and removal. The total rental cost of any Contractor-owned item may not exceed the purchase price of any comparable item.

**§ 7.5.3** Costs of removal of debris from the site of the Work and its proper and legal disposal.

**§ 7.5.4** Costs of document reproductions, facsimile transmissions and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses of the site office.

**§ 7.5.5** Costs of materials and equipment suitably stored off the site at a mutually acceptable location, subject to the Owner's prior approval.

### § 7.6 MISCELLANEOUS COSTS
**§ 7.6.1** Premiums for that portion of insurance and bonds required by the Contract Documents that can be directly attributed to this Contract. Self-insurance for either full or partial amounts of the coverages required by the Contract Documents, with the Owner's prior approval.

**§ 7.6.2** Sales, use or similar taxes imposed by a governmental authority that are related to the Work and for which the Contractor is liable.

**§ 7.6.3** Other than those included on the Exhibit "A" to be by owner; fees and assessments for the building permit and for other permits, licenses and inspections for which the Contractor is required by the Contract Documents to pay.

**§ 7.6.4** Fees of laboratories for tests required by the Contract Documents, except those related to defective or nonconforming Work for which reimbursement is excluded by Section 13.5.3 of AIA Document A201–2007 or by other provisions of the Contract Documents, and which do not fall within the scope of Section 7.7.3.

**§ 7.6.5** Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement of the Contract Documents; and payments made in accordance with legal judgments against the Contractor resulting from such suits or claims and payments of settlements made with the Owner's consent. However, such costs of legal defenses, judgments and settlements shall not be included in the calculation of the Contractor's Fee or subject to the Guaranteed Maximum Price. If such royalties, fees and costs are excluded by the last sentence of Section 3.17 of AIA

**Init.**

**/**

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                        (1348813417)

**6**

Document A201–2007 or other provisions of the Contract Documents, then they shall not be included in the Cost of the Work.

**§ 7.6.6** Costs for electronic equipment and software, directly related to the Work with the Owner's prior approval.

**§ 7.6.7** Deposits lost for causes other than the Contractor's negligence or failure to fulfill a specific responsibility in the Contract Documents.

**§ 7.6.8** Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Contractor, reasonably incurred by the Contractor after the execution of this Agreement in the performance of the Work and with the Owner's prior approval, which shall not be unreasonably withheld.

**§ 7.6.9** Subject to the Owner's prior approval, expenses incurred in accordance with the Contractor's standard written personnel policy for relocation and temporary living allowances of the Contractor's personnel required for the Work.

**§ 7.6.10** That portion of the reasonable expenses of the Contractor's supervisory or administrative personnel incurred while traveling in discharge of duties connected with the Work.

### § 7.7 OTHER COSTS AND EMERGENCIES
**§ 7.7.1** Other costs incurred in the performance of the Work if, and to the extent, approved in advance in writing by the Owner.

**§ 7.7.2** Costs incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section 10.4 of AIA Document A201–2007.

**§ 7.7.3** Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Contractor and only to the extent that the cost of repair or correction is not recovered by the Contractor from insurance, sureties, Subcontractors, suppliers, or others.

### § 7.8 RELATED PARTY TRANSACTIONS
**§ 7.8.1** For purposes of Section 7.8, the term "related party" shall mean a parent, subsidiary, affiliate or other entity having common ownership or management with the Contractor; any entity in which any stockholder in, or management employee of, the Contractor owns any interest in excess of ten percent in the aggregate; or any person or entity which has the right to control the business or affairs of the Contractor. The term "related party" includes any member of the immediate family of any person identified above.

**§ 7.8.2** If any of the costs to be reimbursed arise from a transaction between the Contractor and a related party, the Contractor shall notify the Owner of the specific nature of the contemplated transaction, including the identity of the related party and the anticipated cost to be incurred, before any such transaction is consummated or cost incurred. If the Owner, after such notification, authorizes the proposed transaction, then the cost incurred shall be included as a cost to be reimbursed, and the Contractor shall procure the Work, equipment, goods or service from the related party, as a Subcontractor, according to the terms of Article 10. If the Owner fails to authorize the transaction, the Contractor shall procure the Work, equipment, goods or service from some person or entity other than a related party according to the terms of Article 10.

### ARTICLE 8   COSTS NOT TO BE REIMBURSED
**§ 8.1** The Cost of the Work shall not include the items listed below:
- .1 Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Section 7.2. or as may be provided in Article 15;
- .2 Expenses of the Contractor's principal office and offices other than the site office;
- .3 Overhead and general expenses, except as may be expressly included in Article 7;
- .4 The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work;

---

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                 (1348813417)

.5   Except as provided in Section 7.7.3 of this Agreement, costs due to the negligence or failure of the Contractor, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable to fulfill a specific responsibility of the Contract;

.6   Any cost not specifically and expressly described in Article 7; and

.7   Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded.

*(Paragraphs deleted)*

## ARTICLE 10   SUBCONTRACTS AND OTHER AGREEMENTS

§ 10.1 Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or by other appropriate agreements with the Contractor. The Owner may designate specific persons from whom, or entities from which, the Contractor shall obtain bids. The Contractor shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated especially for the Work and shall deliver such bids to the Architect. The Owner shall then determine, with the advice of the Contractor and the Architect, which bids will be accepted. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

*(Paragraph deleted)*

§ 10.3 Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner. If the Subcontract is awarded on a cost-plus a fee basis, the Contractor shall provide in the Subcontract for the Owner to receive the same audit rights with regard to the Subcontractor as the Owner receives with regard to the Contractor in Article 11, below.

## ARTICLE 11   ACCOUNTING RECORDS

The Contractor shall keep full and detailed records and accounts related to the cost of the Work and exercise such controls as may be necessary for proper financial management under this Contract and to substantiate all costs incurred. The accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's auditors shall, during regular business hours and upon reasonable notice, be afforded access to, and shall be permitted to audit and copy, the Contractor's records and accounts, including complete documentation supporting accounting entries, books, correspondence, instructions, drawings, receipts, subcontracts, Subcontractor's proposals, purchase orders, vouchers, memoranda and other data relating to this Contract. The Contractor shall preserve these records for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 12   PAYMENTS

### § 12.1 PROGRESS PAYMENTS

§ 12.1.1 Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect per the conditions in Exhibit B, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

§ 12.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

§ 12.1.3 Provided that a complete and correct Application for Payment in accordance with Exhibit "B" is received by the Owner not later than the 5th    day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the 25th    day of the same month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than Twenty ( 20 ) days after the Architect receives the Application for Payment.
*(Federal, state or local laws may require payment within a certain period of time.)*

§ 12.1.4 With each Application for Payment, the Contractor will provide Architect with a completed payout authorization, and make available any and all  back up documentation upon request, and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Contractor on account of the

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                (1348813417)

Init.

/

8

Cost of the Work equal or exceed (1) progress payments already received by the Contractor; less (2) that portion of those payments attributable to the Contractor's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

**§ 12.1.5** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Contractor's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Owner may require. This schedule, unless objected to by the Owner, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**§ 12.1.6** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work for which the Contractor has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

**§ 12.1.7** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1   Take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201–2007;

.2   Add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

.3   Add the Contractor's Fee, less retainage of Zero  percent (  0  %).The Contractor's Fee shall be computed upon the Cost of the Work at the rate stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, shall be an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work bears to a reasonable estimate of the probable Cost of the Work upon its completion;

.4   Subtract retainage of  Zero percent (  0 %) from that portion of the Work that the Contractor self-performs;

.5   Subtract the aggregate of previous payments made by the Owner;

.6   Subtract the shortfall, if any, indicated by the Contractor in the documentation required by Section 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and

.7   Subtract amounts, if any, for which the owner has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

**§ 12.1.8** The Owner and the Contractor shall agree upon a (1) mutually acceptable procedure for review and approval of payments to Subcontractors and (2) the percentage of retainage held on Subcontracts, and the Contractor shall execute subcontracts in accordance with those agreements.

**§ 12.1.9** In taking action on the Contractor's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 12.1.4 or other supporting data; that the Architect has made exhaustive or continuous on-site inspections; or that the Architect has made examinations to ascertain how or for what purposes the Contractor has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

**§ 12.2 FINAL PAYMENT**

**§ 12.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor, subject to conditions outline in Exhibit B, when

**Init.**

**/**

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                    (1348813417)

9

.1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements, if any, which extend beyond final payment;

.2    the Contractor has submitted a final accounting for the Cost of the Work and a final Application for Payment; and

.3    a final Certificate for Payment has been issued by the Architect.

**§ 12.2.2** The Owner's auditors will review and report in writing on the Contractor's final accounting within 60 days after delivery of the final accounting to the Architect by the Contractor. Based upon such Cost of the Work as the Owner's auditors report to be substantiated by the Contractor's final accounting, and provided the other conditions of Section 12.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's auditors, either issue to the Owner a final Certificate for Payment with a copy to the Contractor, or notify the Contractor and Owner in writing of the Architect's reasons for withholding a certificate as provided in Section 9.5.1 of the AIA Document A201–2007. The time periods stated in this Section 12.2.2 supersede those stated in Section 9.4.1 of the AIA Document A201–2007. The Architect is not responsible for verifying the accuracy of the Contractor's final accounting.

**§ 12.2.3** If the Owner's auditors report the Cost of the Work as substantiated by the Contractor's final accounting to be less than claimed by the Contractor, the Contractor shall be entitled to request mediation of the disputed amount without seeking an initial decision pursuant to Section 15.2 of A201–2007. A request for mediation shall be made by the Contractor within 30 days after the Contractor's receipt of a copy of the Architect's final Certificate for Payment. Failure to request mediation within this 30-day period shall result in the substantiated amount reported by the Owner's auditors becoming binding on the Contractor. Pending a final resolution of the disputed amount, the Owner shall pay the Contractor the amount certified in the Architect's final Certificate for Payment.

**§ 12.2.4** The Owner's final payment to the Contractor shall be made no later than 60 days after the issuance of the Architect's final Certificate for Payment, or as follows:

Final Payment is subject to the conditions outlined in Exhibit B.

**§ 12.2.5** If, subsequent to final payment and at the Owner's request, the Contractor incurs costs described in Article 7 and not excluded by Article 8 to correct defective or nonconforming Work, the Owner shall reimburse the Contractor such costs and the Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If the Contractor has participated in savings as provided in Section 5.2, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Contractor.

## ARTICLE 13   DISPUTE RESOLUTION
### § 13.1 INITIAL DECISION MAKER
The Architect will serve as Initial Decision Maker pursuant to Section 15.2 of AIA Document A201–2007, unless the parties appoint below another individual, not a party to the Agreement, to serve as Initial Decision Maker.
*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)*

### § 13.2 BINDING DISPUTE RESOLUTION
For any Claim subject to, but not resolved by mediation pursuant to Section 15.3 of AIA Document A201–2007, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:        (1348813417)

Init.

/

[  ]     Arbitration pursuant to Section 15.4 of AIA Document A201–2007

[ X ]    Litigation in a court of competent jurisdiction

[  ]     Other *(Specify)*


## ARTICLE 14   TERMINATION OR SUSPENSION

§ **14.1** Subject to the provisions of Section 14.2 below, the Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201–2007.

§ **14.2** If the Owner terminates the Contract for cause as provided in Article 14 of AIA Document A201–2007, the amount, if any, to be paid to the Contractor under Section 14.2.4 of AIA Document A201–2007 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

    .1    Take the Cost of the Work incurred by the Contractor to the date of termination;

    .2    Add the Contractor's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and

    .3    Subtract the aggregate of previous payments made by the Owner.

*(Paragraph deleted)*

§ **14.2.4** The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 14.2.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 14, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.


§ **14.4.1** The Owner shall have the absolute right to terminate Contractor for convenience for any reason and at any time during the course of this Agreement with a written notice of termination effective upon receipt by Contractor. Contractor shall be paid the reasonable value of the Work performed by Contractor prior to termination plus reasonable direct close-out costs, but in no event shall Subcontractor be entitled to unabsorbed overhead, anticipatory profit or damages of any kind or nature, direct or indirect, incidental or consequential. Owner may, in its sole discretion, utilize its right to terminate Contractor for convenience, in lieu of compliance with the terms regarding a termination for default.

In the event Owner terminates Contractor for any cause under the terms of this Agreement and it is later determined by a court of competent jurisdiction, by arbitration or other similar proceedings that such termination for cause was not justified, then such termination for cause shall automatically be converted to a termination for convenience under the terms of this Article.

§ **14.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall

    .1    cease operations as directed by the Owner in the notice;

    .2    take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

    .3    except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

§ **14.4.3** In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

---

**Init.**

**/**

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                          (1348813417)

**§ 14.4** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Section 14.3.2 of AIA Document A201–2007, except that the term "profit" shall be understood to mean the Contractor's Fee as described in Sections 5.1.1 and Section 6.4 of this Agreement

## ARTICLE 15   MISCELLANEOUS PROVISIONS

**§ 15.1** Where reference is made in this Agreement to a provision of AIA Document A201–2007 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**§ 15.2** Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located. *(Insert rate of interest agreed upon, if any.)*

0 % per annum

**§ 15.3** The Owner's representative:
*(Name, address and other information)*

Jim Jebbia,  Sr. Director – Facilities and Construction
Brian Bond,  Manager of Construction
1221 River Bend Drive, Suite 120
Dallas, TX  75247
 Telephone Number: (214)951-0962
 Fax Number: (214)630-4740

**§ 15.4** The Contractor's representative:
*(Name, address and other information)*

Dave Grabosky
8623 Commodity Circle
Orlando, FL 32819
Telephone Number: (407) 352 4443

**§ 15.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days' written notice to the other party.

**§ 15.6** Other provisions:

## ARTICLE 16   ENUMERATION OF CONTRACT DOCUMENTS

**§ 16.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated in the sections below.

**§ 16.1.1** The Agreement is this executed AIA Document A102–2007, Standard Form of Agreement Between Owner and Contractor.

**§ 16.1.2** The General Conditions are AIA Document A201–2007, General Conditions of the Contract for Construction.

Init.

/

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                      (1348813417)

**§ 16.1.3** The Supplementary and other Conditions of the Contract:

| Document | Title | Date | Pages |
|---|---|---|---|
| Supplemental Conditions | Exhibit B | N/A | 7 Pgs |

**§ 16.1.4** The Specifications:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Section | Title | Date | Pages |
|---|---|---|---|
| Exhibit C | Drawings and Specifications List. | | |

**§ 16.1.5** The Drawings: Will be provided prior to execution by the parties.
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Number | Title | Date |
|---|---|---|
| Exhibit C | Drawings and Specifications List | |

**§ 16.1.6** The Addenda, if any:

| Number | Date | Pages |
|---|---|---|

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 16.

**§ 16.1.7** Additional documents, if any, forming part of the Contract Documents:
   .1   AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed by the parties, or the following:

   .2   Other documents, if any, listed below:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2007 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

     1. Notice to Proceed dated (4/21/14)
     2. Exhibit A – Schedule of Values dated (6/10/14)
     3. Cost Saving List dated (6/10/14)
     4. Clarifications dated (6/10/14)
     5. Exhibit B – Supplemental Conditions
     6. Exhibit C – Drawings and Specifications List
     7. Exhibit D – Description of Division 1000 Costs
     8. Exhibit E – Insurance Requirements
     9. Exhibit F – Payout Authorization
     10. Exhibit G – GC Checklist for Closeout Requirements

## ARTICLE 17   INSURANCE AND BONDS
The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201–2007.

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes: (1348813417)

Init.
/

13

*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201–2007.)*

**Type of insurance or bond**                      **Limit of liability or bond amount ($0.00)**
See Exhibit E

This Agreement entered into as of the day and year first written above.

_____        _____
OWNER *(Signature)*                  CONTRACTOR *(Signature)*

Michael J. Brown                  Dave Grabosky
Vice President of Resort Development    President
*(Printed name and title)*                  *(Printed name and title)*

_____

Joe Conner
Chief Financial Officer

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                           (1348813417)

# SILVERLEAF RESORTS, INC.

RESORT DEVELOPMENT 1221
RIVER BEND DRIVE, SUITE 120
DALLAS, TX 75247-4919 P:
214.951.0962 F: 214.630.4740

SILVERLEAF
RESORTS

## FORMAL NOTICE TO PROCEED

FOR
OCR 29001C01
38-Unit Ocean Club
Galveston, TX

SILVERLEAF PROJECT NO. __29001C01__   CONTRACT NUMBER _2936_

### OWNER
**SILVERLEAF RESORTS, INC.**
**1221 RIVER BEND DRIVE, SUITE 120**
**DALLAS TEXAS 75247**

THIS DOCUMENT, WHEN FULLY EXECUTED, SHALL ACT AS AUTHORIZATION TO THE CONTRACTOR, **T&G Constructors**, TO BEGIN THE ABOVE REFERENCED PROJECT FOR THE SUM OF **$19,135,519.00**, AS STATED ON THE CONTRACT TO BE DATED **April 21, 2014**. START DATE OF THIS PROJECT IS HEREIN DEFINED AS NO LATER THAN, **April 21, 2014**. SUBSTANTIAL COMPLETION SHALL BE NO LATER THAN **August 12, 2015**.

**THE CONTRACTOR IS DIRECTED TO FURNISH THE FOLLOWING TO THE OFFICES SILVERLEAF RESORTS, TO THE ATTENTION OF BERNIE SONNET, CONSTRUCTION ACCOUNTING:**

1. **EVIDENCE OF COMPLIANCE WITH EXHIBIT "E" -INSURANCE REQUIREMENTS. (ATTACHED)**
2. **INSURANCE CERTIFICATE MUST BE ORIGINAL WITH SILVERLEAF RESORTS INC. AND SILVERLEAF CLUB NAMED AS ADDITIONAL CERTIFICATE HOLDER.**
3. **IF INSURANCE CERTIFICATE'S EXPIRATION OCCURS BEFORE PROJECT COMPLETION DATE, IT WILL BE THE RESPONSIBILTY OF THE CONTRACTOR TO FURNISH A NEW CERTIFICATE. FAILURE TO PROVIDE THIS WILL RESULT IN A PAYMENT REQUEST BEING DENIED UNTIL 30 DAYS AFTER A VALID CERTIFICATE IS RECEIVED IN THE SILVERLEAF OFFICES**
4. **WORK MAY NOT BEGIN UNTIL ALL VALID INSURANCE CERTIFICATES ARE ON FILE WITH SILVERLEAF.**

THE CONTRACTOR IS DIRECTED TO FURNISH THE FOLLOWING TO THE OWNER TO THE ATTENTION OF JIM JEBBIA:

APPROVED BY:

_____
MIKE BROWN
VICE PRESIDENT - RESORT DEVELOPMENT

ON:

_06/18/14_
DATE

# Additions and Deletions Report for
## AIA® Document A102™ – 2007

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note: This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 16:42:22 on 06/10/2014.

## PAGE 1

**AGREEMENT** made as of the Twenty-first day of April in the year Two Thousand Fourteen

...

Silverleaf Resorts, Inc.
1221 River Bend Drive, Suite 120
Dallas, TX 75247
Telephone Number: (214)951-0962
Fax Number: (214)630-4740

...

T&G Constructors
8623 Commodity Circle
Orlando, FL 32819
Telephone Number: (407) 352 4443
Fax Number: (407) 352 0778

...

OCR 29001C01 Ocean Club Resort
19418 San Luis Pass Road
Galveston, TX 77514
38-Unit, Section 1, Building 1

...

The Matrix Design Companies, Inc
6213 Skyline Drive, Suite 100
Houston, TX 77057
Telephone Number: (703)525-0424

## PAGE 3

The commencement date will be fixed in a notice to proceed; Dated (April 21, 2014)

...

**§ 4.3** The Contractor shall achieve Substantial Completion of the entire Work not later than Four Hundred Seventy Eight  ( 478 ) days from the date of commencement, or as follows:

...

Additions and Deletions Report for AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                          (1348813417)

Substantial Completion / Certificate of Occupancy Date: August 12, 2015
Owner Turnover Date: August 12, 2015

...

| | |
|---|---|
| Overhead | $1,041,682.00 |
| Fees & General Conditions | $1,029,590.00 |

...

1.    The GC shall be allowed a markup for Overhead and Profit (OH&P) on all approved Change Orders as follows:
   a.   For those Change Orders where the work is accomplished by the GC's own forces, the GC shall be allowed a maximum of Ten Percent (10%) Overhead and Five Percent (5%) Profit.  By definitions, Overhead includes all supervision, and no separate charges will be allowed.
   b.   For those change Orders where the work is accomplished by the GC's Subcontractors or Suppliers, the GC shall be allowed a maximum of Five Percent (5%) OH&P.
   c.   Change Orders where the work is accomplished by the GC's Subcontractors or Suppliers shall be inclusive of materials.  If GC opts to purchase materials for use by others, the GC shall be allowed a maximum of Five Percent (5%) OH&P.
2.   There shall be no markup allowed for any changes in costs related to the Preferred Vendor Program.  Any changes in these costs shall be passed on to the Owner at face value.

**PAGE 4**

**§ 5.1.4** Rental rates for Contractor-owned equipment shall not exceed  Seventy Five  percent ( 75 %) of the standard rate paid at the place of the Project.

...

§ 5.1.6 Time being of the essence, the GC shall be charged Liquidated Damages in the amount of One Thousand and 00/100 Dollars ( $1,000.00) per calendar day for every day which exceed the Date of Substantial Completion as specified herein or as amended by Change Orders as stipulated in Section I of Exhibit B. Conversely, the GC shall be awarded One Thousand and 00/100 dollars ($1,000.00) per calendar day for every day of completion earlier than the Date of Substantial Completion as specified herein or as amended by Change Orders as stipulated in Section I of Exhibit "B". The Change Order for Bonus/Liquidated Damages shall be submitted and approved prior to receipt of the Final Pay Request.

**§ 5.2.1** The Contract Sum is guaranteed by the Contractor not to exceed Nineteen Million One Hundred Thirty-five Thousand Five Hundred Nineteen Dollars and Zero Cents ($ 19,135,519.00 ), subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner.

...

 To the extent that the Cost of Work is less than the Guaranteed Maximum Price, the Construction Manager shall receive Seventy (70) percent of the savings and the Owner shall receive Thirty (30) percent of savings.

...

**Additions and Deletions Report for AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                     (1348813417)

*(State the numbers or other identification of accepted alternates. If bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when the amount expires.)(N/A)*

...

N/A                                     N/A

§ **5.2.4** Assumptions, if any, on which the Guaranteed Maximum Price is based: All Work included.

**PAGE 6**

§ **7.5.2** Rental charges for temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Contractor at the site and costs of transportation, installation, minor repairs, dismantling and removal. The total rental cost of any Contractor-owned item may not exceed the purchase price of any comparable item. ~~Rates of Contractor-owned equipment and quantities of equipment shall be subject to the Owner's prior approval.~~

...

§ **7.6.3** ~~Fees~~ Other than those included on the Exhibit "A" to be by owner; fees and assessments for the building permit and for other permits, licenses and inspections for which the Contractor is required by the Contract Documents to pay.

**PAGE 8**

~~ARTICLE 9   DISCOUNTS, REBATES AND REFUNDS~~
~~§ 9.1 Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included them in an Application for Payment and received payment from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be obtained.~~

~~§ 9.2 Amounts that accrue to the Owner in accordance with the provisions of Section 9.1 shall be credited to the Owner as a deduction from the Cost of the Work.~~

...

.

~~§ 10.2 When a specific bidder (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Contractor may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.~~

...

§ **12.1.1** Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the ~~Architect,~~ Architect per the conditions in Exhibit B, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

...

**Additions and Deletions Report for AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                  (1348813417)

3

**§ 12.1.3** Provided that ~~an Application for Payment is received by the Architect not later than the~~ a complete and correct Application for Payment in accordance with Exhibit "B" is received by the Owner not later than the 5th day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the 25th day of the same month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than ( ~~Twenty~~ ( 20 ) days after the Architect receives the Application for Payment.

...

**§ 12.1.4** With each Application for Payment, the Contractor ~~shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached,~~ will provide Architect with a completed payout authorization, and make available any and all back up documentation upon request, and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Contractor on account of the Cost of the Work equal or exceed (1) progress payments already received by the Contractor; less (2) that portion of those payments attributable to the Contractor's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

**§ 12.1.5** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Contractor's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the ~~Architect~~ Owner may require. This schedule, unless objected to by the ~~Architect,~~ Owner, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**PAGE 9**

   .3   Add the Contractor's Fee, less retainage of Zero percent ( 0 %).The Contractor's Fee shall be computed upon the Cost of the Work at the rate stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, shall be an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work bears to a reasonable estimate of the probable Cost of the Work upon its completion;

   .4   Subtract retainage of Zero percent ( 0 %) from that portion of the Work that the Contractor self-performs;

...

   .7   Subtract amounts, if any, for which the ~~Architect~~ owner has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

...

**§ 12.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the ~~Contractor~~ Contractor, subject to conditions outline in Exhibit B, when

**PAGE 10**

**§ 12.2.2** The Owner's auditors will review and report in writing on the Contractor's final accounting within ~~30~~ 60 days after delivery of the final accounting to the Architect by the Contractor. Based upon such Cost of the Work as the Owner's auditors report to be substantiated by the Contractor's final accounting, and provided the other conditions of Section 12.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's auditors, either issue to the Owner a final Certificate for Payment with a copy to the Contractor, or notify the Contractor and Owner in writing of the Architect's reasons for withholding a certificate as provided in Section 9.5.1 of the AIA Document A201–2007. The time periods stated in this Section 12.2.2 supersede those stated in Section 9.4.1 of the AIA Document A201–2007. The Architect is not responsible for verifying the accuracy of the Contractor's final accounting.

...

**Additions and Deletions Report for AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                                    (1348813417)

**§ 12.2.4** The Owner's final payment to the Contractor shall be made no later than ~~30~~ 60 days after the issuance of the Architect's final Certificate for Payment, or as follows:

Final Payment is subject to the conditions outlined in Exhibit B.

**PAGE 11**

　　　[ **X** ]　　Litigation in a court of competent jurisdiction

...

**§ 14.3** ~~The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 14.2.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 14, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.~~

**§ 14.2.4** The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 14.2.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 14, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

**§ 14.4.1** The Owner shall have the absolute right to terminate Contractor for convenience for any reason and at any time during the course of this Agreement with a written notice of termination effective upon receipt by Contractor. Contractor shall be paid the reasonable value of the Work performed by Contractor prior to termination plus reasonable direct close-out costs, but in no event shall Subcontractor be entitled to unabsorbed overhead, anticipatory profit or damages of any kind or nature, direct or indirect, incidental or consequential. Owner may, in its sole discretion, utilize its right to terminate Contractor for convenience, in lieu of compliance with the terms regarding a termination for default.

In the event Owner terminates Contractor for any cause under the terms of this Agreement and it is later determined by a court of competent jurisdiction, by arbitration or other similar proceedings that such termination for cause was not justified, then such termination for cause shall automatically be converted to a termination for convenience under the terms of this Article.

**§ 14.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall
　　　**.1**　　cease operations as directed by the Owner in the notice;
　　　**.2**　　take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and
　　　**.3**　　except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

**§ 14.4.3** In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

**§ 14.4** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Section 14.3.2 of AIA

**Additions and Deletions Report for AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(1348813417)

Document A201–2007, except that the term "profit" shall be understood to mean the Contractor's Fee as described in Sections 5.1.1 and Section 6.4 of this ~~Agreement.~~Agreement

**PAGE 12**

0 % per annum

...

Jim Jebbia,  Sr. Director – Facilities and Construction
Brian Bond,  Manager of Construction
1221 River Bend Drive, Suite 120
Dallas, TX  75247
 Telephone Number: (214)951-0962
 Fax Number: (214)630-4740

...

Dave Grabosky
8623 Commodity Circle
Orlando, FL 32819
Telephone Number: (407) 352 4443

**PAGE 13**

| Supplemental Conditions | Exhibit B | N/A | 7 Pgs |

...

| Exhibit C | Drawings and Specifications List. |

**§ 16.1.5** The Drawings: Will be provided prior to execution by the parties.

...

| Exhibit C | Drawings and Specifications List |

...

1.   Notice to Proceed dated (4/21/14)
2.   Exhibit A – Schedule of Values dated (6/10/14)
3.   Cost Saving List dated (6/10/14)
4.   Clarifications dated (6/10/14)
5.   Exhibit B – Supplemental Conditions
6.   Exhibit C – Drawings and Specifications List
7.   Exhibit D – Description of Division 1000 Costs
8.   Exhibit E – Insurance Requirements
9.   Exhibit F – Payout Authorization
10. Exhibit G – GC Checklist for Closeout Requirements

**PAGE 14**

See Exhibit E

Additions and Deletions Report for AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                                           (1348813417)

6

...

Michael J. Brown
Vice President of Resort Development
*(Printed name and title)*

Dave Grabosky
President
*(Printed name and title)*

~~*(Printed name and title)*~~
Joe Conner
Chief Financial Officer

~~*(Printed name and title)*~~

**Additions and Deletions Report for AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                           (1348813417)

## Certification of Document's Authenticity
*AIA® Document D401™ – 2003*

I, , hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 16:42:22 on 06/10/2014 under Order No. 5523426844_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A102™ – 2007, Standard Form of Agreement Between Owner and Contractor  where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____
*(Signed)*

Contract Administrator
_____
*(Title)*

_____ 6|9|14 _____
*(Dated)*

**AIA Document D401™ – 2003.** Copyright © 1992 and 2003 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:42:22 on 06/10/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                                      (1348813417)

 **Document A201™ – 2007**

## *General Conditions of the Contract for Construction*

for the following **PROJECT:**
*(Name and location or address)*
OCR 29001C01 Ocean Club Resort
19418 San Luis Pass Road
Galveston, TX 77514

**THE OWNER:**
*(Name, legal status and address)*
Silverleaf Resorts, Inc.
1221 River Bend Drive, Suite 120
Dallas, TX 75247

**THE ARCHITECT:**
*(Name, legal status and address)*
The Matrix Design Companies, Inc
6213 Skyline Drive, Suite 100
Houston, TX 77057

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

**TABLE OF ARTICLES**

1 GENERAL PROVISIONS

2 OWNER

3 CONTRACTOR

4 ARCHITECT

5 SUBCONTRACTORS

6 CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7 CHANGES IN THE WORK

8 TIME

9 PAYMENTS AND COMPLETION

10 PROTECTION OF PERSONS AND PROPERTY

11 INSURANCE AND BONDS

12 UNCOVERING AND CORRECTION OF WORK

13 MISCELLANEOUS PROVISIONS

14 TERMINATION OR SUSPENSION OF THE CONTRACT

15 CLAIMS AND DISPUTES

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes: (1198876727)

1

# INDEX
(Topics and numbers in bold are section headings.)

**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, **12.3**
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
**Access to Work**
**3.16**, 6.2.1, 12.1
Accident Prevention
10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5,
10.2.8, 13.4.2, 13.7, 14.1, 15.2
Addenda
1.1.1, 3.11
Additional Costs, Claims for
3.7.4, 3.7.5, 6.1.1, 7.3.7.5, 10.3, 15.1.4
**Additional Inspections and Testing**
9.4.2, 9.8.3, 12.2.1, **13.5**
Additional Insured
11.1.4
**Additional Time, Claims for**
3.2.4, 3.7.4, 3.7.5, 3.10.2, 8.3.2, **15.1.5**
**Administration of the Contract**
3.1.3, **4.2**, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13
**Allowances**
**3.8**, 7.3.8
All-risk Insurance
11.3.1, 11.3.1.1
**Applications for Payment**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5.1, 9.6.3, 9.7, 9.10, 11.1.3
Approvals
2.1.1, 2.2.2, 2.4, 3.1.3, 3.10.2, 3.12.8, 3.12.9, 3.12.10,
4.2.7, 9.3.2, 13.5.1
**Arbitration**
8.3.1, 11.3.10, 13.1, 15.3.2, **15.4**
**ARCHITECT**
**4**
**Architect**, Definition of
**4.1.1**
Architect, Extent of Authority
2.4, 3.12.7, 4.1, 4.2, 5.2, 6.3, 7.1.2, 7.3.7, 7.4, 9.2,
9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3, 12.1, 12.2.1,
13.5.1, 13.5.2, 14.2.2, 14.2.4, 15.1.3, 15.2.1
Architect, Limitations of Authority and Responsibility
2.1.1, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3,
4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, 7.4, 9.4.2,
9.5.3, 9.6.4, 15.1.3, 15.2
Architect's Additional Services and Expenses
2.4, 11.3.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4

Architect's Administration of the Contract
3.1.3, 4.2, 3.7.4, 15.2, 9.4.1, 9.5
Architect's Approvals
2.4, 3.1.3, 3.5, 3.10.2, 4.2.7
Architect's Authority to Reject Work
3.5, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.1.7, 1.5
Architect's Decisions
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, 6.3,
7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4.1, 9.5, 9.8.4, 9.9.1,
13.5.2, 15.2, 15.3
Architect's Inspections
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
Architect's Instructions
3.2.4, 3.3.1, 4.2.6, 4.2.7, 13.5.2
Architect's Interpretations
4.2.11, 4.2.12
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5,
3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16, 3.18,
4.1.2, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5,
9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.4.2, 13.5, 15.2
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.3.7
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for
Portions of the Work**
**5.2**
**Basic Definitions**
**1.1**
Bidding Requirements
1.1.1, 5.2.1, 1.4.1
Binding Dispute Resolution
9.7, 11.3.9, 11.3.10, 13.1, 15.2.5, 15.2.6.1, 15.3.1,
15.3.2, 15.4.1
**Boiler and Machinery Insurance**
**11.3.2**
Bonds, Lien
7.3.7.4, 9.10.2, 9.10.3
**Bonds, Performance, and Payment**
7.3.7.4, 9.6.7, 9.10.3, 11.3.9, **11.4**
Building Permit
3.7.1

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                           (1198876727)

Init.

/

2

**Capitalization**
**1.3**
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
**Certificates for Payment**
4.2.1, 4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7,
9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.3
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
**Change Orders**
1.1.1, 2.4, 3.4.2, 3.7.4, 3.8.2.3, 3.11, 3.12.8, 4.2.8,
5.2.3, 7.1.2, 7.1.3, **7.2**, 7.3.2, 7.3.6, 7.3.9, 7.3.10, 8.3.1,
9.3.1.1, 9.10.3, 10.3.2, 11.3.1.2, 11.3.4, 11.3.9, 12.1.2,
15.1.3
**Change Orders**, Definition of
**7.2.1**
**CHANGES IN THE WORK**
2.2.1, 3.11, 4.2.8, **7**, 7.2.1, 7.3.1, 7.4, 8.3.1, 9.3.1.1,
11.3.9
**Claims**, Definition of
**15.1.1**
**CLAIMS AND DISPUTES**
3.2.4, 6.1.1, 6.3, 7.3.9, 9.3.3, 9.10.4, 10.3.3, **15**, 15.4
Claims and Timely Assertion of Claims
15.4.1
**Claims for Additional Cost**
3.2.4, 3.7.4, 6.1.1, 7.3.9, 10.3.2, **15.1.4**
**Claims for Additional Time**
3.2.4, 3.7.4, 6.1.1, 8.3.2, 10.3.2, **15.1.5**
**Concealed or Unknown Conditions, Claims for**
**3.7.4**
Claims for Damages
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Claims Subject to Arbitration
15.3.1, 15.4.1
**Cleaning Up**
**3.15**, 6.3
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.2, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3,
6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.3.1, 11.3.6, 11.4.1,
15.1.4
**Commencement of the Work**, Definition of
**8.1.2**
**Communications Facilitating Contract**
**Administration**
3.9.1, **4.2.4**
Completion, Conditions Relating to
3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1,
9.10, 12.2, 13.7, 14.1.2
**COMPLETION, PAYMENTS AND**
**9**
Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 12.2,
13.7

Compliance with Laws
1.6, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 10.2.2,
11.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14.1.1,
14.2.1.3, 15.2.8, 15.4.2, 15.4.3
Concealed or Unknown Conditions
3.7.4, 4.2.8, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 6.1.1, 6.1.4
Consent, Written
3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1,
9.10.2, 9.10.3, 11.3.1, 13.2, 13.4.2, 15.4.4.2
**Consolidation or Joinder**
**15.4.4**
**CONSTRUCTION BY OWNER OR BY**
**SEPARATE CONTRACTORS**
1.1.4, **6**
**Construction Change Directive**, Definition of
**7.3.1**
**Construction Change Directives**
1.1.1, 3.4.2, 3.12.8, 4.2.8, 7.1.1, 7.1.2, 7.1.3, **7.3**,
9.3.1.1
Construction Schedules, Contractor's
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
**Contingent Assignment of Subcontracts**
**5.4**, 14.2.2.2
**Continuing Contract Performance**
**15.1.3**
**Contract**, Definition of
**1.1.2**
**CONTRACT, TERMINATION OR**
**SUSPENSION OF THE**
5.4.1.1, 11.3.9, **14**
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating
to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.3.6, 11.4.1
Contract Documents, Copies Furnished and Use of
1.5.2, 2.2.5, 5.3
**Contract Documents**, Definition of
**1.1.1**
**Contract Sum**
3.7.4, 3.8, 5.2.3, 7.2, 7.3, 7.4, **9.1**, 9.4.2, 9.5.1.4, 9.6.7,
9.7, 10.3.2, 11.3.1, 14.2.4, 14.3.2, 15.1.4, 15.2.5
**Contract Sum**, Definition of
**9.1**
Contract Time
3.7.4, 3.7.5, 3.10.2, 5.2.3, 7.2.1.3, 7.3.1, 7.3.5, 7.4,
8.1.1, 8.2.1, 8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2,
15.1.5.1, 15.2.5
**Contract Time**, Definition of
**8.1.1**
**CONTRACTOR**
**3**
**Contractor**, Definition of
**3.1**, 6.1.2

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                 (1198876727)

3

**Contractor's Construction Schedules**
**3.10**, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,
11.1.1, 11.3.7, 14.1, 14.2.1.1
**Contractor's Liability Insurance**
**11.1**
Contractor's Relationship with Separate Contractors
and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.3.7, 12.1.2, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2,
11.3.1.2, 11.3.7, 11.3.8
Contractor's Relationship with the Architect
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5,
3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.3, 4.2, 5.2, 6.2.2,
7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3,
11.3.7, 12, 13.5, 15.1.2, 15.2.1
Contractor's Representations
3.2.1, 3.2.2, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those Performing the
Work
3.3.2, 3.18, 5.3, 6.1.3, 6.2, 9.5.1, 10.2.8
Contractor's Review of Contract Documents
3.2
Contractor's Right to Stop the Work
9.7
Contractor's Right to Terminate the Contract
14.1, 15.1.6
Contractor's Submittals
3.10, 3.11, 3.12.4, 4.2.7, 5.2.1, 5.2.3, 9.2, 9.3, 9.8.2,
9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.4.2
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction
Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3,
7.3.5, 7.3.7, 8.2, 10, 12, 14, 15.1.3
Contractual Liability Insurance
11.1.1.8, 11.2
Coordination and Correlation
1.2, 3.2.1, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
1.5, 2.2.5, 3.11
Copyrights
1.5, **3.17**
Correction of Work
2.3, 2.4, 3.7.3, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, **12.2**
**Correlation and Intent of the Contract Documents**
**1.2**
**Cost**, Definition of
**7.3.7**
Costs
2.4, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3,
7.3.3.3, 7.3.7, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6, 11.3,
12.1.2, 12.2.1, 12.2.4, 13.5, 14

**Cutting and Patching**
**3.14**, 6.2.5
Damage to Construction of Owner or Separate
Contractors
3.14.2, 6.2.4, 10.2.1.2, 10.2.5, 10.4, 11.1.1, 11.3,
12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4, 11.3.1, 12.2.4
Damages, Claims for
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
**Date of Commencement of the Work**, Definition of
**8.1.2**
**Date of Substantial Completion**, Definition of
**8.1.3**
**Day**, Definition of
**8.1.4**
Decisions of the Architect
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 15.2, 6.3,
7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1,
13.5.2, 14.2.2, 14.2.4, 15.1, 15.2
**Decisions to Withhold Certification**
9.4.1, **9.5**, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance,
Rejection and Correction of
2.3, 2.4, 3.5, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2,
9.9.3, 9.10.4, 12.2.1
Definitions
1.1, 2.1.1, 3.1.1, 3.5, 3.12.1, 3.12.2, 3.12.3, 4.1.1,
15.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1
**Delays and Extensions of Time**
3.2, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, **8.3**, 9.5.1, 9.7,
10.3.2, 10.4, 14.3.2, 15.1.5, 15.2.5
Disputes
6.3, 7.3.9, 15.1, 15.2
**Documents and Samples at the Site**
**3.11**
**Drawings**, Definition of
**1.1.5**
Drawings and Specifications, Use and Ownership of
3.11
Effective Date of Insurance
8.2.2, 11.1.2
**Emergencies**
**10.4**, 14.1.1.2, 15.1.4
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2,
10.3.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1
Equipment, Labor, Materials or
1.1.3, 1.1.6, 3.4, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                  (1198876727)

4

Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3.1, 3.4.1, 3.5,
3.7.1, 3.10.1, 3.12, 3.14, 4.2, 6.2.2, 7.1.3, 7.3.5, 8.2,
9.5.1, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3.1, 15.1.3
Extensions of Time
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, 7.4, 9.5.1, 9.7, 10.3.2,
10.4, 14.3, 15.1.5, 15.2.5
**Failure of Payment**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Faulty Work
(See Defective or Nonconforming Work)
**Final Completion and Final Payment**
4.2.1, 4.2.9, 9.8.2, **9.10**, 11.1.2, 11.1.3, 11.3.1, 11.3.5,
12.3, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.4
Fire and Extended Coverage Insurance
11.3.1.1
**GENERAL PROVISIONS**
**1**
**Governing Law**
**13.1**
Guarantees (See Warranty)
**Hazardous Materials**
10.2.4, **10.3**
Identification of Subcontractors and Suppliers
5.2.1
**Indemnification**
3.17, **3.18**, 9.10.2, 10.3.3, 10.3.5, 10.3.6, 11.3.1.2,
11.3.7
**Information and Services Required of the Owner**
2.1.2, **2.2**, 3.2.2, 3.12.4, 3.12.10, 6.1.3, 6.1.4, 6.2.5,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.4, 13.5.1,
13.5.2, 14.1.1.4, 14.1.4, 15.1.3
**Initial Decision**
**15.2**
**Initial Decision Maker, Definition of**
1.1.8
Initial Decision Maker, Decisions
14.2.2, 14.2.4, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
Initial Decision Maker, Extent of Authority
14.2.2, 14.2.4, 15.1.3, 15.2.1, 15.2.2, 15.2.3, 15.2.4,
15.2.5
**Injury or Damage to Person or Property**
**10.2.8**, 10.4
Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3,
9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.4, 3.3.1, 3.8.1, 5.2.1, 7, 8.2.2, 12, 13.5.2
**Instruments of Service**, Definition of
**1.1.7**
Insurance
3.18.1, 6.1.1, 7.3.7, 9.3.2, 9.8.4, 9.9.1, 9.10.2, 11

**Insurance, Boiler and Machinery**
**11.3.2**
**Insurance, Contractor's Liability**
**11.1**
Insurance, Effective Date of
8.2.2, 11.1.2
**Insurance, Loss of Use**
**11.3.3**
**Insurance, Owner's Liability**
**11.2**
**Insurance, Property**
10.2.5, **11.3**
Insurance, Stored Materials
9.3.2
**INSURANCE AND BONDS**
**11**
Insurance Companies, Consent to Partial Occupancy
9.9.1
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
**Interest**
**13.6**
**Interpretation**
1.2.3, **1.4**, 4.1.1, 5.1, 6.1.2, 15.1.1
Interpretations, Written
4.2.11, 4.2.12, 15.1.4
Judgment on Final Award
15.4.2
**Labor and Materials, Equipment**
1.1.3, 1.1.6, **3.4**, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1,
10.2.2, 11.1.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6,
14, 15.2.8, 15.4
Liens
2.1.2, 9.3.3, 9.10.2, 9.10.4, 15.2.8
Limitations, Statutes of
12.2.5, 13.7, 15.4.1.1
Limitations of Liability
2.3, 3.2.2, 3.5, 3.12.10, 3.17, 3.18.1, 4.2.6, 4.2.7,
4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 10.2.5, 10.3.3, 11.1.2,
11.2, 11.3.7, 12.2.5, 13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7,
5.2, 5.3, 5.4.1, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3,
9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.3.1.5,
11.3.6, 11.3.10, 12.2, 13.5, 13.7, 14, 15
**Loss of Use Insurance**
**11.3.3**
Material Suppliers
1.5, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
**Materials, Hazardous**
10.2.4, **10.3**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                           (1198876727)

Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.5.1, 3.4.1, 3.5, 3.8.2, 3.8.3, 3.12, 3.13,
3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1.2, 10.2.4, 14.2.1.1, 14.2.1.2
Means, Methods, Techniques, Sequences and
Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
2.1.2, 15.2.8
**Mediation**
8.3.1, 10.3.5, 10.3.6, 15.2.1, 15.2.5, 15.2.6, **15.3**,
15.4.1
**Minor Changes in the Work**
1.1.1, 3.12.8, 4.2.8, 7.1, **7.4**
**MISCELLANEOUS PROVISIONS**
**13**
**Modifications**, Definition of
**1.1.1**
Modifications to the Contract
1.1.1, 1.1.2, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7,
10.3.2, 11.3.1
**Mutual Responsibility**
**6.2**
**Nonconforming Work, Acceptance of**
9.6.6, 9.9.3, **12.3**
Nonconforming Work, Rejection and Correction of
2.3, 2.4, 3.5, 4.2.6, 6.2.4, 9.5.1, 9.8.2, 9.9.3, 9.10.4,
12.2.1
Notice
2.2.1, 2.3, 2.4, 3.2.4, 3.3.1, 3.7.2, 3.12.9, 5.2.1, 9.7,
9.10, 10.2.2, 11.1.3, 12.2.2.1, 13.3, 13.5.1, 13.5.2,
14.1, 14.2, 15.2.8, 15.4.1
**Notice, Written**
2.3, 2.4, 3.3.1, 3.9.2, 3.12.9, 3.12.10, 5.2.1, 9.7, 9.10,
10.2.2, 10.3, 11.1.3, 11.3.6, 12.2.2.1, **13.3**, 14, 15.2.8,
15.4.1
**Notice of Claims**
3.7.4, 10.2.8, **15.1.2**, 15.4
Notice of Testing and Inspections
13.5.1, 13.5.2
Observations, Contractor's
3.2, 3.7.4
Occupancy
2.2.2, 9.6.6, 9.8, 11.3.1.5
Orders, Written
1.1.1, 2.3, 3.9.2, 7, 8.2.2, 11.3.9, 12.1, 12.2.2.1, 13.5.2,
14.3.1
**OWNER**
**2**
**Owner**, Definition of
**2.1.1**
**Owner, Information and Services Required of the**
2.1.2, **2.2**, 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.3, 13.5.1,
13.5.2, 14.1.1.4, 14.1.4, 15.1.3

Owner's Authority
1.5, 2.1.1, 2.3, 2.4, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2,
4.1.3, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3, 7.2.1,
7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.6.4, 9.9.1,
9.10.2, 10.3.2, 11.1.3, 11.3.3, 11.3.10, 12.2.2, 12.3,
13.2.2, 14.3, 14.4, 15.2.7
Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.4
**Owner's Liability Insurance**
**11.2**
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
**Owner's Right to Carry Out the Work**
**2.4**, 14.2.2
**Owner's Right to Clean Up**
**6.3**
**Owner's Right to Perform Construction and to**
**Award Separate Contracts**
**6.1**
**Owner's Right to Stop the Work**
**2.3**
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2
**Ownership and Use of Drawings, Specifications**
**and Other Instruments of Service**
1.1.1, 1.1.6, 1.1.7, **1.5**, 2.2.5, 3.2.2, 3.11, 3.17, 4.2.12,
5.3
**Partial Occupancy or Use**
9.6.6, **9.9**, 11.3.1.5
**Patching, Cutting and**
**3.14**, 6.2.5
Patents
3.17
**Payment, Applications for**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5, 9.6.3, 9.7, 9.8.5, 9.10.1,
14.2.3, 14.2.4, 14.4.3
**Payment, Certificates for**
4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1,
9.10.3, 13.7, 14.1.1.3, 14.2.4
**Payment, Failure of**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Payment, Final
4.2.1, 4.2.9, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 12.3,
13.7, 14.2.4, 14.4.3
**Payment Bond, Performance Bond and**
7.3.7.4, 9.6.7, 9.10.3, **11.4**
**Payments, Progress**
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
**PAYMENTS AND COMPLETION**
**9**
Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 14.2.1.2
PCB
10.3.1

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                     (1198876727)

6

**Performance Bond and Payment Bond**
7.3.7.4, 9.6.7, 9.10.3, **11.4**
**Permits, Fees, Notices and Compliance with Laws**
2.2.2, **3.7**, 3.13, 7.3.7.4, 10.2.2
**PERSONS AND PROPERTY, PROTECTION OF**
**10**
Polychlorinated Biphenyl
10.3.1
**Product Data**, Definition of
**3.12.2**
**Product Data and Samples, Shop Drawings**
3.11, **3.12**, 4.2.7
**Progress and Completion**
4.2.2, **8.2**, 9.8, 9.9.1, 14.1.4, 15.1.3
**Progress Payments**
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
**Project**, Definition of
**1.1.4**
Project Representatives
4.2.10
**Property Insurance**
10.2.5, **11.3**
**PROTECTION OF PERSONS AND PROPERTY**
**10**
Regulations and Laws
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1,
10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14,
15.2.8, 15.4
Rejection of Work
3.5, 4.2.6, 12.2.1
Releases and Waivers of Liens
9.10.2
Representations
3.2.1, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1, 9.8.2,
9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.2, 4.2.10, 5.1.1, 5.1.2,
13.2.1
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 5.3, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
**Review of Contract Documents and Field**
**Conditions by Contractor**
**3.2**, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and
Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and Samples
by Contractor
3.12
**Rights and Remedies**
1.1.2, 2.3, 2.4, 3.5, 3.7.4, 3.15.2, 4.2.6, 5.3, 5.4, 6.1,
6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2, 12.2.4,
**13.4**, 14, 15.4
**Royalties, Patents and Copyrights**
**3.17**

Rules and Notices for Arbitration
15.4.1
**Safety of Persons and Property**
**10.2**, 10.4
**Safety Precautions and Programs**
3.3.1, 4.2.2, 4.2.7, 5.3, **10.1**, 10.2, 10.4
**Samples**, Definition of
**3.12.3**
**Samples, Shop Drawings, Product Data and**
3.11, **3.12**, 4.2.7
**Samples at the Site, Documents and**
**3.11**
**Schedule of Values**
**9.2**, 9.3.1
Schedules, Construction
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 12.1.2
**Shop Drawings**, Definition of
**3.12.1**
**Shop Drawings, Product Data and Samples**
3.11, **3.12**, 4.2.7
**Site, Use of**
**3.13**, 6.1.1, 6.2.1
Site Inspections
3.2.2, 3.3.3, 3.7.1, 3.7.4, 4.2, 9.4.2, 9.10.1, 13.5
Site Visits, Architect's
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
4.2.6, 12.2.1, 13.5
**Specifications**, Definition of
**1.1.6**
**Specifications**
1.1.1, **1.1.6**, 1.2.2, 1.5, 3.11, 3.12.10, 3.17, 4.2.14
Statute of Limitations
13.7, 15.4.1.1
Stopping the Work
2.3, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4
**Subcontractor**, Definition of
**5.1.1**
**SUBCONTRACTORS**
**5**
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2, 9.6.7
**Subcontractual Relations**
**5.3**, 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 14.1, 14.2.1
Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.7, 9.2, 9.3, 9.8,
9.9.1, 9.10.2, 9.10.3, 11.1.3
Submittal Schedule
3.10.2, 3.12.5, 4.2.7
**Subrogation, Waivers of**
6.1.1, **11.3.7**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                      (1198876727)

Init.

/

7

**Substantial Completion**
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, **9.8**, 9.9.1, 9.10.3, 12.2, 13.7
**Substantial Completion**, Definition of
**9.8.1**
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, 3.5, 7.3.8
**Sub-subcontractor**, Definition of
**5.1.2**
Subsurface Conditions
3.7.4
**Successors and Assigns**
**13.2**
**Superintendent**
**3.9**, 10.2.6
**Supervision and Construction Procedures**
1.2.2, **3.3**, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.7, 8.2, 8.3.1, 9.4.2, 10, 12, 14, 15.1.3
Surety
5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2, 15.2.7
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
**Suspension by the Owner for Convenience**
**14.3**
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract
5.4.1.1, 14
**Taxes**
3.6, 3.8.2.1, 7.3.7.4
**Termination by the Contractor**
**14.1**, 15.1.6
**Termination by the Owner for Cause**
5.4.1.1, **14.2**, 15.1.6
**Termination by the Owner for Convenience**
**14.4**
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2
**TERMINATION OR SUSPENSION OF THE CONTRACT**
**14**
**Tests and Inspections**
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 10.3.2, 11.4.1, 12.2.1, **13.5**
**TIME**
**8**
**Time, Delays and Extensions of**
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, **8.3**, 9.5.1, 9.7, 10.3.2, 10.4, 14.3.2, 15.1.5, 15.2.5

Time Limits
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 12.2, 13.5, 13.7, 14, 15.1.2, 15.4
**Time Limits on Claims**
3.7.4, 10.2.8, **13.7**, 15.1.2
Title to Work
9.3.2, 9.3.3
**Transmission of Data in Digital Form**
**1.6**
**UNCOVERING AND CORRECTION OF WORK**
**12**
**Uncovering of Work**
**12.1**
Unforeseen Conditions, Concealed or Unknown
3.7.4, 8.3.1, 10.3
Unit Prices
7.3.3.2, 7.3.4
Use of Documents
1.1.1, 1.5, 2.2.5, 3.12.6, 5.3
**Use of Site**
**3.13**, 6.1.1, 6.2.1
**Values, Schedule of**
**9.2**, 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
9.10.5, 13.4.2, 15.1.6
Waiver of Claims by the Owner
9.9.3, 9.10.3, 9.10.4, 12.2.2.1, 13.4.2, 14.2.4, 15.1.6
Waiver of Consequential Damages
14.2.4, 15.1.6
Waiver of Liens
9.10.2, 9.10.4
**Waivers of Subrogation**
6.1.1, **11.3.7**
**Warranty**
3.5, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2, 13.7
Weather Delays
15.1.5.2
**Work**, Definition of
**1.1.3**
Written Consent
1.5.2, 3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2, 15.4.4.2
Written Interpretations
4.2.11, 4.2.12
Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 12.2.2, 12.2.4, **13.3**, 14, 15.4.1
Written Orders
1.1.1, 2.3, 3.9, 7, 8.2.2, 12.1, 12.2, 13.5.2, 14.3.1, 15.1.2

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                          (1198876727)

8

## ARTICLE 1 GENERAL PROVISIONS
### § 1.1 BASIC DEFINITIONS
### § 1.1.1 THE CONTRACT DOCUMENTS
The Contract Documents are enumerated in the Agreement between the Owner and Contractor (hereinafter the Agreement) and consist of the Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include the advertisement or invitation to bid, Instructions to Bidders, sample forms, other information furnished by the Owner in anticipation of receiving bids or proposals, the Contractor's bid or proposal, or portions of Addenda relating to bidding requirements.

### § 1.1.2 THE CONTRACT
The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and the Architect or the Architect's consultants or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

### § 1.1.3 THE WORK
The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

### § 1.1.4 THE PROJECT
The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by separate contractors.

### § 1.1.5 THE DRAWINGS
The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

### § 1.1.6 THE SPECIFICATIONS
The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

### § 1.1.7 INSTRUMENTS OF SERVICE
Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials.

### § 1.1.8 INITIAL DECISION MAKER
The Initial Decision Maker is the person identified in the Agreement to render initial decisions on Claims in accordance with Section 15.2 and certify termination of the Agreement under Section 14.2.2.

### § 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS
### § 1.2.1 The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:** (1198876727)

9

§ **1.2.2** Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

§ **1.2.3** Unless otherwise stated in the Contract Documents, words that have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

§ **1.3 CAPITALIZATION**
Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

§ **1.4 INTERPRETATION**
In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

§ **1.5 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE**
§ **1.5.1** The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and will retain all common law, statutory and other reserved rights, including copyrights. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' reserved rights.

§ **1.5.2** The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce the Instruments of Service provided to them solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers may not use the Instruments of Service on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants.

§ **1.6 TRANSMISSION OF DATA IN DIGITAL FORM**
If the parties intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions, unless otherwise already provided in the Agreement or the Contract Documents.

**ARTICLE 2   OWNER**
§ **2.1 GENERAL**
§ **2.1.1** The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

§ **2.1.2** The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

§ **2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER**
§ **2.2.1** Prior to commencement of the Work, the Contractor may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. Thereafter, the Contractor may only request such evidence if (1) the Owner fails to make payments to the Contractor as the Contract Documents require; (2) a change in the Work materially changes the Contract Sum; or (3) the Contractor identifies in writing a reasonable concern regarding the Owner's ability to make payment when due. The Owner shall furnish such evidence as a condition precedent to commencement or continuation of the Work or the

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                       (1198876727)

portion of the Work affected by a material change. After the Owner furnishes the evidence, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

§ **2.2.2** Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, including those required under Section 3.7.1, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

§ **2.2.3** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

§ **2.2.4** The Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Contractor's performance of the Work with reasonable promptness after receiving the Contractor's written request for such information or services.

§ **2.2.5** Unless otherwise provided in the Contract Documents, the Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.

## § 2.3 OWNER'S RIGHT TO STOP THE WORK
If the Contractor fails to correct Work that is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or repeatedly fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 6.1.3.

## § 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK
If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a ten-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

## ARTICLE 3    CONTRACTOR
## § 3.1 GENERAL
§ **3.1.1** The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The term "Contractor" means the Contractor or the Contractor's authorized representative.

§ **3.1.2** The Contractor shall perform the Work in accordance with the Contract Documents.

§ **3.1.3** The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons or entities other than the Contractor.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                        (1198876727)

Init.

/

### § 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR

§ **3.2.1** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

§ **3.2.2** Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Architect any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect may require. It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional, unless otherwise specifically provided in the Contract Documents.

§ **3.2.3** The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect may require.

§ **3.2.4** If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall make Claims as provided in Article 15. If the Contractor fails to perform the obligations of Sections 3.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. If the Contractor performs those obligations, the Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.

### § 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES

§ **3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any loss or damage arising solely from those Owner-required means, methods, techniques, sequences or procedures.

§ **3.3.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for, or on behalf of, the Contractor or any of its Subcontractors.

§ **3.3.3** The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

### § 3.4 LABOR AND MATERIALS

§ **3.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                     (1198876727)

12

**§ 3.4.2** Except in the case of minor changes in the Work authorized by the Architect in accordance with Sections 3.12.8 or 7.4, the Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order or Construction Change Directive.

**§ 3.4.3** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Work. The Contractor shall not permit employment of unfit persons or persons not properly skilled in tasks assigned to them.

**§ 3.5 WARRANTY**
The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

**§ 3.6 TAXES**
The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

**§ 3.7 PERMITS, FEES, NOTICES AND COMPLIANCE WITH LAWS**
**§ 3.7.1** Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit as well as for other permits, fees, licenses, and inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured after execution of the Contract and legally required at the time bids are received or negotiations concluded.

**§ 3.7.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to performance of the Work.

**§ 3.7.3** If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

**§ 3.7.4 Concealed or Unknown Conditions.** If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if the Architect determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Contractor in writing, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may proceed as provided in Article 15.

**§ 3.7.5** If, in the course of the Work, the Contractor encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Contract Documents, the Contractor shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be made as provided in Article 15.

Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:** (1198876727)

13

### § 3.8 ALLOWANCES

**§ 3.8.1** The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

**§ 3.8.2** Unless otherwise provided in the Contract Documents,

    .1    Allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

    .2    Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances; and

    .3    Whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

**§ 3.8.3** Materials and equipment under an allowance shall be selected by the Owner with reasonable promptness.

### § 3.9 SUPERINTENDENT

**§ 3.9.1** The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor.

**§ 3.9.2** The Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the name and qualifications of a proposed superintendent. The Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to the proposed superintendent or (2) that the Architect requires additional time to review. Failure of the Architect to reply within the 14 day period shall constitute notice of no reasonable objection.

**§ 3.9.3** The Contractor shall not employ a proposed superintendent to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not change the superintendent without the Owner's consent, which shall not unreasonably be withheld or delayed.

### § 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES

**§ 3.10.1** The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

**§ 3.10.2** The Contractor shall prepare a submittal schedule, promptly after being awarded the Contract and thereafter as necessary to maintain a current submittal schedule, and shall submit the schedule(s) for the Architect's approval. The Architect's approval shall not unreasonably be delayed or withheld. The submittal schedule shall (1) be coordinated with the Contractor's construction schedule, and (2) allow the Architect reasonable time to review submittals. If the Contractor fails to submit a submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.

**§ 3.10.3** The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

### § 3.11 DOCUMENTS AND SAMPLES AT THE SITE

The Contractor shall maintain at the site for the Owner one copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to indicate field changes and selections made during construction, and one copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work as a record of the Work as constructed.

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                    (1198876727)

**14**

## § 3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

§ **3.12.1** Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

§ **3.12.2** Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

§ **3.12.3** Samples are physical examples that illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

§ **3.12.4** Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. Their purpose is to demonstrate the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents for those portions of the Work for which the Contract Documents require submittals. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals that are not required by the Contract Documents may be returned by the Architect without action.

§ **3.12.5** The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors.

§ **3.12.6** By submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents to the Owner and Architect that the Contractor has (1) reviewed and approved them, (2) determined and verified materials, field measurements and field construction criteria related thereto, or will do so and (3) checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

§ **3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

§ **3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

§ **3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice, the Architect's approval of a resubmission shall not apply to such revisions.

§ **3.12.10** The Contractor shall not be required to provide professional services that constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                       (1198876727)

completeness of the services, certifications and approvals performed or provided by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance and design criteria specified in the Contract Documents.

## § 3.13 USE OF SITE
The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

## § 3.14 CUTTING AND PATCHING
**§ 3.14.1** The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly. All areas requiring cutting, fitting and patching shall be restored to the condition existing prior to the cutting, fitting and patching, unless otherwise required by the Contract Documents.

**§ 3.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

## § 3.15 CLEANING UP
**§ 3.15.1** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials from and about the Project.

**§ 3.15.2** If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and Owner shall be entitled to reimbursement from the Contractor.

## § 3.16 ACCESS TO WORK
The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

## § 3.17 ROYALTIES, PATENTS AND COPYRIGHTS
The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

## § 3.18 INDEMNIFICATION
**§ 3.18.1 TO THE FULLEST EXTENT PERMITTED BY LAW THE CONTRACTOR SHALL INDEMNIFY AND HOLD HARMLESS THE OWNER, ARCHITECT, ARCHITECT'S CONSULTANTS, AND AGENTS AND EMPLOYEES OF ANY OF THEM FROM AND AGAINST CLAIMS, DAMAGES, LOSSES AND EXPENSES, INCLUDING BUT NOT LIMITED TO ATTORNEYS' FEES, ARISING OUT OF OR RESULTING FROM PERFORMANCE OF THE WORK, PROVIDED THAT SUCH CLAIM, DAMAGE, LOSS OR EXPENSE IS ATTRIBUTABLE TO BODILY INJURY, SICKNESS, DISEASE OR DEATH, OR TO INJURY TO OR DESTRUCTION OF TANGIBLE PROPERTY (OTHER THAN THE WORK ITSELF), BUT ONLY TO THE EXTENT CAUSED BY THE NEGLIGENT ACTS OR OMISSIONS OF THE CONTRACTOR, A SUBCONTRACTOR, ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY THEM OR ANYONE FOR WHOSE ACTS THEY MAY BE LIABLE, REGARDLESS OF WHETHER OR**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                              (1198876727)

16

**NOT SUCH CLAIM, DAMAGE, LOSS OR EXPENSE IS CAUSED IN PART BY A PARTY INDEMNIFIED HEREUNDER FOR ITS OWN NEGLIGENCE. SUCH OBLIGATION SHALL NOT BE CONSTRUED TO NEGATE, ABRIDGE, OR REDUCE OTHER RIGHTS OR OBLIGATIONS OF INDEMNITY THAT WOULD OTHERWISE EXIST AS TO A PARTY OR PERSON DESCRIBED IN THIS SECTION 3.18.**

**§ 3.18.2** In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

## ARTICLE 4   ARCHITECT
### § 4.1 GENERAL
**§ 4.1.1** The Owner shall retain an architect lawfully licensed to practice architecture or an entity lawfully practicing architecture in the jurisdiction where the Project is located. That person or entity is identified as the Architect in the Agreement and is referred to throughout the Contract Documents as if singular in number.

**§ 4.1.2** Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

**§ 4.1.3** If the employment of the Architect is terminated, the Owner shall employ a successor architect as to whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the Architect.

### § 4.2 ADMINISTRATION OF THE CONTRACT
**§ 4.2.1** The Architect will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate for Payment. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

**§ 4.2.2** The Architect will visit the site at intervals appropriate to the stage of construction, or as otherwise agreed with the Owner, to become generally familiar with the progress and quality of the portion of the Work completed, and to determine in general if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not have control over, charge of, or responsibility for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.

**§ 4.2.3** On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and report to the Owner (1) known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor, and (2) defects and deficiencies observed in the Work. The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

### § 4.2.4 COMMUNICATIONS FACILITATING CONTRACT ADMINISTRATION
Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

**§ 4.2.5** Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                     (1198876727)

Init.

/

17

**§ 4.2.6** The Architect has authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

**§ 4.2.7** The Architect will review and approve, or take other appropriate action upon, the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**§ 4.2.8** The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Section 7.4. The Architect will investigate and make determinations and recommendations regarding concealed and unknown conditions as provided in Section 3.7.4.

**§ 4.2.9** The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; issue Certificates of Substantial Completion pursuant to Section 9.8; receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor pursuant to Section 9.10; and issue a final Certificate for Payment pursuant to Section 9.10.

**§ 4.2.10** If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

**§ 4.2.11** The Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

**§ 4.2.12** Interpretations and decisions of the Architect will be consistent with the intent of, and reasonably inferable from, the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions rendered in good faith.

**§ 4.2.13** The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

**§ 4.2.14** The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.

## ARTICLE 5   SUBCONTRACTORS
### § 5.1 DEFINITIONS
**§ 5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                         (1198876727)

and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

§ **5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

## § 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK
§ **5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to any such proposed person or entity or (2) that the Architect requires additional time for review. Failure of the Owner or Architect to reply within the 14-day period shall constitute notice of no reasonable objection.

§ **5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

§ **5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

§ **5.2.4** The Contractor shall not substitute a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitution.

## § 5.3 SUBCONTRACTUAL RELATIONS
By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

## § 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS
§ **5.4.1** Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner, provided that
.1    assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements that the Owner accepts by notifying the Subcontractor and Contractor in writing; and
.2    assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                          (1198876727)

When the Owner accepts the assignment of a subcontract agreement, the Owner assumes the Contractor's rights and obligations under the subcontract.

§ **5.4.2** Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

§ **5.4.3** Upon such assignment to the Owner under this Section 5.4, the Owner may further assign the subcontract to a successor contractor or other entity. If the Owner assigns the subcontract to a successor contractor or other entity, the Owner shall nevertheless remain legally responsible for all of the successor contractor's obligations under the subcontract.

## ARTICLE 6   CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
### § 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS
§ **6.1.1** The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Article 15.

§ **6.1.2** When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

§ **6.1.3** The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

§ **6.1.4** Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights that apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

### § 6.2 MUTUAL RESPONSIBILITY
§ **6.2.1** The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

§ **6.2.2** If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

§ **6.2.3** The Contractor shall reimburse the Owner for costs the Owner incurs that are payable to a separate contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a separate contractor's delays, improperly timed activities, damage to the Work or defective construction.

§ **6.2.4** The Contractor shall promptly remedy damage the Contractor wrongfully causes to completed or partially completed construction or to property of the Owner or separate contractors as provided in Section 10.2.5.

§ **6.2.5** The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                      (1198876727)

## § 6.3 OWNER'S RIGHT TO CLEAN UP
If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.

## ARTICLE 7   CHANGES IN THE WORK
### § 7.1 GENERAL
**§ 7.1.1** Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

**§ 7.1.2** A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

**§ 7.1.3** Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

### § 7.2 CHANGE ORDERS
**§ 7.2.1** A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect stating their agreement upon all of the following:
- .1   The change in the Work;
- .2   The amount of the adjustment, if any, in the Contract Sum; and
- .3   The extent of the adjustment, if any, in the Contract Time.

### § 7.3 CONSTRUCTION CHANGE DIRECTIVES
**§ 7.3.1** A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

**§ 7.3.2** A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

**§ 7.3.3** If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:
- .1   Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;
- .2   Unit prices stated in the Contract Documents or subsequently agreed upon;
- .3   Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or
- .4   As provided in Section 7.3.7.

**§ 7.3.4** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

**§ 7.3.5** Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                      (1198876727)

**§ 7.3.6** A Construction Change Directive signed by the Contractor indicates the Contractor's agreement therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**§ 7.3.7** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the Architect shall determine the method and the adjustment on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an amount for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a reasonable amount. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.7 shall be limited to the following:

.1    Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

.2    Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3    Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4    Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5    Additional costs of supervision and field office personnel directly attributable to the change.

**§ 7.3.8** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.9** Pending final determination of the total cost of a Construction Change Directive to the Owner, the Contractor may request payment for Work completed under the Construction Change Directive in Applications for Payment. The Architect will make an interim determination for purposes of monthly certification for payment for those costs and certify for payment the amount that the Architect determines, in the Architect's professional judgment, to be reasonably justified. The Architect's interim determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 15.

**§ 7.3.10** When the Owner and Contractor agree with a determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Architect will prepare a Change Order. Change Orders may be issued for all or any part of a Construction Change Directive.

## § 7.4 MINOR CHANGES IN THE WORK
The Architect has authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes will be effected by written order signed by the Architect and shall be binding on the Owner and Contractor.

## ARTICLE 8    TIME
## § 8.1 DEFINITIONS
**§ 8.1.1** Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

**§ 8.1.2** The date of commencement of the Work is the date established in the Agreement.

**§ 8.1.3** The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

**§ 8.1.4** The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                          (1198876727)

Init.

/

## § 8.2 PROGRESS AND COMPLETION

§ 8.2.1 Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

§ 8.2.2 The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance.

§ 8.2.3 The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

## § 8.3 DELAYS AND EXTENSIONS OF TIME

§ 8.3.1 If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner; or by changes ordered in the Work; or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control; or by delay authorized by the Owner pending mediation and arbitration; or by other causes that the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

§ 8.3.2 Claims relating to time shall be made in accordance with applicable provisions of Article 15.

§ 8.3.3 This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

## ARTICLE 9   PAYMENTS AND COMPLETION
## § 9.1 CONTRACT SUM

The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

## § 9.2 SCHEDULE OF VALUES

Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit to the Architect, before the first Application for Payment, a schedule of values allocating the entire Contract Sum to the various portions of the Work and prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

## § 9.3 APPLICATIONS FOR PAYMENT

§ 9.3.1 At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment prepared in accordance with the schedule of values, if required under Section 9.2, for completed portions of the Work. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and shall reflect retainage if provided for in the Contract Documents.

§ 9.3.1.1 As provided in Section 7.3.9, such applications may include requests for payment on account of changes in the Work that have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

§ 9.3.1.2 Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

§ 9.3.2 Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon

Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                                       (1198876727)

compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

**§ 9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

## § 9.4 CERTIFICATES FOR PAYMENT
**§ 9.4.1** The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

**§ 9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

## § 9.5 DECISIONS TO WITHHOLD CERTIFICATION
**§ 9.5.1** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of

    .1    defective Work not remedied;
    .2    third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;
    .3    failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;
    .4    reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;
    .5    damage to the Owner or a separate contractor;
    .6    reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or
    .7    repeated failure to carry out the Work in accordance with the Contract Documents.

**§ 9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

**§ 9.5.3** If the Architect withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or material or equipment suppliers to whom the

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                                (1198876727)

Init.

/

Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, the Owner shall notify the Architect and the Architect will reflect such payment on the next Certificate for Payment.

## § 9.6 PROGRESS PAYMENTS

**§ 9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**§ 9.6.2** The Contractor shall pay each Subcontractor no later than seven days after receipt of payment from the Owner the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**§ 9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**§ 9.6.4** The Owner has the right to request written evidence from the Contractor that the Contractor has properly paid Subcontractors and material and equipment suppliers amounts paid by the Owner to the Contractor for subcontracted Work. If the Contractor fails to furnish such evidence within seven days, the Owner shall have the right to contact Subcontractors to ascertain whether they have been properly paid. Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor, except as may otherwise be required by law.

**§ 9.6.5** Contractor payments to material and equipment suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

**§ 9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**§ 9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

## § 9.7 FAILURE OF PAYMENT

If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by binding dispute resolution, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

## § 9.8 SUBSTANTIAL COMPLETION

**§ 9.8.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

**§ 9.8.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes: (1198876727)

**§ 9.8.3** Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

**§ 9.8.4** When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion that shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**§ 9.8.5** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

### § 9.9 PARTIAL OCCUPANCY OR USE
**§ 9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.3.1.5 and authorized by public authorities having jurisdiction over the Project. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

**§ 9.9.2** Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

**§ 9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

### § 9.10 FINAL COMPLETION AND FINAL PAYMENT
**§ 9.10.1** Upon receipt of the Contractor's written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

**§ 9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                                                 (1198876727)

26

Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

**§ 9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

**§ 9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from
    **.1**    liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;
    **.2**    failure of the Work to comply with the requirements of the Contract Documents; or
    **.3**    terms of special warranties required by the Contract Documents.

**§ 9.10.5** Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10   PROTECTION OF PERSONS AND PROPERTY
**§ 10.1 SAFETY PRECAUTIONS AND PROGRAMS**
The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

**§ 10.2 SAFETY OF PERSONS AND PROPERTY**
**§ 10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to
    **.1**    employees on the Work and other persons who may be affected thereby;
    **.2**    the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and
    **.3**    other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

**§ 10.2.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

**§ 10.2.3** The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

**§ 10.2.4** When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

**§ 10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                                            (1198876727)

whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

§ **10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

§ **10.2.7** The Contractor shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

§ **10.2.8 INJURY OR DAMAGE TO PERSON OR PROPERTY**
If either party suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

§ **10.3 HAZARDOUS MATERIALS**
§ **10.3.1** The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials. If the Contractor encounters a hazardous material or substance not addressed in the Contract Documents and if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

§ **10.3.2** Upon receipt of the Contractor's written notice, the Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to cause it to be rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. By Change Order, the Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up.

§ **10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), except to the extent that such damage, loss or expense is due to the fault or negligence of the party seeking indemnity.

§ **10.3.4** The Owner shall not be responsible under this Section 10.3 for materials or substances the Contractor brings to the site unless such materials or substances are required by the Contract Documents. The Owner shall be responsible for materials or substances required by the Contract Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                                  (1198876727)

§ **10.3.5** The Contractor shall indemnify the Owner for the cost and expense the Owner incurs (1) for remediation of a material or substance the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to perform its obligations under Section 10.3.1, except to the extent that the cost and expense are due to the Owner's fault or negligence.

§ **10.3.6** If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

§ **10.4 EMERGENCIES**
In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 15 and Article 7.

**ARTICLE 11   INSURANCE AND BONDS**
§ **11.1 CONTRACTOR'S LIABILITY INSURANCE**
§ **11.1.1** The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations and completed operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

.1   Claims under workers' compensation, disability benefit and other similar employee benefit acts that are applicable to the Work to be performed;
.2   Claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;
.3   Claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;
.4   Claims for damages insured by usual personal injury liability coverage;
.5   Claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;
.6   Claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;
.7   Claims for bodily injury or property damage arising out of completed operations; and
.8   Claims involving contractual liability insurance applicable to the Contractor's obligations under Section 3.18.

§ **11.1.2** The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from the date of commencement of the Work until the date of final payment and termination of any coverage required to be maintained after final payment, and, with respect to the Contractor's completed operations coverage, until the expiration of the period for correction of Work or for such other period for maintenance of completed operations coverage as specified in the Contract Documents.

§ **11.1.3** Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work and thereafter upon renewal or replacement of each required policy of insurance. These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. An additional certificate evidencing continuation of liability coverage, including coverage for completed operations, shall be submitted with the final Application for Payment as required by Section 9.10.2 and thereafter upon renewal or replacement of such coverage until the expiration of the time required by Section 11.1.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness.

§ **11.1.4** Whether or not required by other provisions of this Contract Documents the Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, the Architect and the Architect's consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes: (1198876727)

or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations. Such commercial liability coverage shall be broad enough to cover Contractor's Indemnity obligations under Section 3.18.1 hereof.

## § 11.2 OWNER'S LIABILITY INSURANCE
The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

## § 11.3 PROPERTY INSURANCE
§ 11.3.1 Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.3 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

§ 11.3.1.1 Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

§ 11.3.1.2 If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance that will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

§ 11.3.1.3 If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

§ 11.3.1.4 This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

§ 11.3.1.5 Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

## § 11.3.2 BOILER AND MACHINERY INSURANCE
The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

## § 11.3.3 LOSS OF USE INSURANCE
The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes: (1198876727)

Init.

/

30

against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.

§ **11.3.4** If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

§ **11.3.5** If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

§ **11.3.6** Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.3. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

§ **11.3.7 WAIVERS OF SUBROGATION**
The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

§ **11.3.8** A loss insured under the Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.3.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

§ **11.3.9** If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or as determined in accordance with the method of binding dispute resolution selected in the Agreement between the Owner and Contractor. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

§ **11.3.10** The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved in the manner selected by the Owner and Contractor as the method of binding dispute resolution in the Agreement. If the Owner and Contractor have selected arbitration as the method of binding dispute resolution, the Owner as fiduciary shall make settlement with insurers or, in the case of a dispute over distribution of insurance proceeds, in accordance with the directions of the arbitrators.

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                (1198876727)

## § 11.4 PERFORMANCE BOND AND PAYMENT BOND
**§ 11.4.1** The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.

**§ 11.4.2** Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished.

## ARTICLE 12   UNCOVERING AND CORRECTION OF WORK
### § 12.1 UNCOVERING OF WORK
**§ 12.1.1** If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if requested in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

**§ 12.1.2** If a portion of the Work has been covered that the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, such costs and the cost of correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

### § 12.2 CORRECTION OF WORK
### § 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION
The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

### § 12.2.2 AFTER SUBSTANTIAL COMPLETION
**§ 12.2.2.1** In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4.

**§ 12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion of the Work.

**§ 12.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

**§ 12.2.3** The Contractor shall remove from the site portions of the Work that are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

**§ 12.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work that is not in accordance with the requirements of the Contract Documents.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                              (1198876727)
Init. /    32

**§ 12.2.5** Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

## § 12.3 ACCEPTANCE OF NONCONFORMING WORK
If the Owner prefers to accept Work that is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

## ARTICLE 13   MISCELLANEOUS PROVISIONS
### § 13.1 GOVERNING LAW
The Contract shall be governed by the law of the place where the Project is located except that, if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.

## § 13.2 SUCCESSORS AND ASSIGNS
**§ 13.2.1** The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

**§ 13.2.2** The Owner may, without consent of the Contractor, assign the Contract to a lender providing construction financing for the Project, if the lender assumes the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

## § 13.3 WRITTEN NOTICE
Written notice shall be deemed to have been duly served if delivered in person to the individual, to a member of the firm or entity, or to an officer of the corporation for which it was intended; or if delivered at, or sent by registered or certified mail or by courier service providing proof of delivery to, the last business address known to the party giving notice.

## § 13.4 RIGHTS AND REMEDIES
**§ 13.4.1** Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

**§ 13.4.2** No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach there under, except as may be specifically agreed in writing.

## § 13.5 TESTS AND INSPECTIONS
**§ 13.5.1** Tests, inspections and approvals of portions of the Work shall be made as required by the Contract Documents and by applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of public authorities. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of (1) tests, inspections or approvals that do not become requirements until after bids are received or negotiations concluded, and (2) tests, inspections or approvals where building codes or applicable laws or regulations prohibit the Owner from delegating their cost to the Contractor.

**§ 13.5.2** If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                      (1198876727)

approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

§ **13.5.3** If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

§ **13.5.4** Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

§ **13.5.5** If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

§ **13.5.6** Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

§ **13.6 INTEREST**
Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

§ **13.7 TIME LIMITS ON CLAIMS**
The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with the requirements of the final dispute resolution method selected in the Agreement within the time period specified by applicable law, but in any case not more than 10 years after the date of Substantial Completion of the Work. The Owner and Contractor waive all claims and causes of action not commenced in accordance with this Section 13.7.

**ARTICLE 14   TERMINATION OR SUSPENSION OF THE CONTRACT**
§ **14.1 TERMINATION BY THE CONTRACTOR**
§ **14.1.1** The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

> .1   Issuance of an order of a court or other public authority having jurisdiction that requires all Work to be stopped;
> .2   An act of government, such as a declaration of national emergency that requires all Work to be stopped;
> .3   Because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or
> .4   The Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Section 2.2.1.

§ **14.1.2** The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work by the Owner as described in Section 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

§ **14.1.3** If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed, including reasonable overhead and profit, costs incurred by reason of such termination, and damages.

§ **14.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                            (1198876727)

the Contractor because the Owner has repeatedly failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

## § 14.2 TERMINATION BY THE OWNER FOR CAUSE
§ **14.2.1** The Owner may terminate the Contract if the Contractor

.1      repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

.2      fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;

.3      repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; or

.4      otherwise is guilty of substantial breach of a provision of the Contract Documents.

§ **14.2.2** When any of the above reasons exist, the Owner, upon certification by the Initial Decision Maker that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

.1      Exclude the Contractor from the site and take possession of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

.2      Accept assignment of subcontracts pursuant to Section 5.4; and

.3      Finish the Work by whatever reasonable method the Owner may deem expedient. Upon written request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

§ **14.2.3** When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

§ **14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Initial Decision Maker, upon application, and this obligation for payment shall survive termination of the Contract.

## § 14.2.5 CONVERSION OF CAUSE TO CONVENIENCE
In the event Owner terminates Contractor for any cause under the terms of this Agreement and it is later determined by a court of competent jurisdiction, by arbitration or other similar proceeding that such termination for cause was not justified, then such termination for cause shall automatically be converted to a termination for convenience under the terms of this Article.

## § 14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE
§ **14.3.1** The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

§ **14.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent

.1      that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or

.2      that an equitable adjustment is made or denied under another provision of the Contract.

## § 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE
§ **14.4.1** The Owner shall have the absolute right to terminate Contractor for convenience for any reason and at any time during the course of this Agreement with a written notice of termination effective upon receipt by Contractor. Contractor shall be paid the reasonable value of the Work performed by Contractor prior to termination plus anticipatory profit or damages of any kind or nature, direct or indirect, incidental consequential. Owner may, in its sole

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                                      (1198876727)

discretion, utilize its right to terminate Contractor for convenience, in lieu of compliance with the terms regarding a termination for default.

§ **14.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall

  .1  cease operations as directed by the Owner in the notice;

  .2  take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

  .3  except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

§ **14.4.3** In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

## ARTICLE 15    CLAIMS AND DISPUTES
### § 15.1 CLAIMS
### § 15.1.1 DEFINITION
A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim.

### § 15.1.2 NOTICE OF CLAIMS
Claims by either the Owner or Contractor must be initiated by written notice to the other party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

### § 15.1.3 CONTINUING CONTRACT PERFORMANCE
Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents. The Architect will prepare Change Orders and issue Certificates for Payment in accordance with the decisions of the Initial Decision Maker.

### § 15.1.4 CLAIMS FOR ADDITIONAL COST
If the Contractor wishes to make a Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.4.

### § 15.1.5 CLAIMS FOR ADDITIONAL TIME
§ **15.1.5.1** If the Contractor wishes to make a Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary.

§ **15.1.5.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

### § 15.1.6 CLAIMS FOR CONSEQUENTIAL DAMAGES
The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes

  .1  damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                      (1198876727)

**36**

  **.2**  damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.6 shall be deemed to preclude an award of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.

## § 15.2 INITIAL DECISION

§ **15.2.1** Claims, excluding those arising under Sections 10.3, 10.4, 11.3.9, and 11.3.10, shall be referred to the Initial Decision Maker for initial decision. The Architect will serve as the Initial Decision Maker, unless otherwise indicated in the Agreement. Except for those Claims excluded by this Section 15.2.1, an initial decision shall be required as a condition precedent to mediation of any Claim arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Initial Decision Maker with no decision having been rendered. Unless the Initial Decision Maker and all affected parties agree, the Initial Decision Maker will not decide disputes between the Contractor and persons or entities other than the Owner.

§ **15.2.2** The Initial Decision Maker will review Claims and within ten days of the receipt of a Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Initial Decision Maker is unable to resolve the Claim if the Initial Decision Maker lacks sufficient information to evaluate the merits of the Claim or if the Initial Decision Maker concludes that, in the Initial Decision Maker's sole discretion, it would be inappropriate for the Initial Decision Maker to resolve the Claim.

§ **15.2.3** In evaluating Claims, the Initial Decision Maker may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Initial Decision Maker in rendering a decision. The Initial Decision Maker may request the Owner to authorize retention of such persons at the Owner's expense.

§ **15.2.4** If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either (1) provide a response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting data will be furnished or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim in whole or in part.

§ **15.2.5** The Initial Decision Maker will render an initial decision approving or rejecting the Claim, or indicating that the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the reasons therefor; and (3) notify the parties and the Architect, if the Architect is not serving as the Initial Decision Maker, of any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.

§ **15.2.6** Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.2.6.1.

§ **15.2.6.1** Either party may, within 30 days from the date of an initial decision, demand in writing that the other party file for mediation within 60 days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation within the time required, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.

§ **15.2.7** In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

§ **15.2.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                         (1198876727)

**37**

### § 15.3 MEDIATION

**§ 15.3.1** Claims, disputes, or other matters in controversy arising out of or related to the Contract except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.6 shall be subject to mediation as a condition precedent to binding dispute resolution.

**§ 15.3.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

**§ 15.3.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

### § 15.4 ARBITRATION

**§ 15.4.1** If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

**§ 15.4.1.1** A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the Claim.

**§ 15.4.2** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

**§ 15.4.3** The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

### § 15.4.4 CONSOLIDATION OR JOINDER

**§ 15.4.4.1** Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation, (2) the arbitrations to be consolidated substantially involve common questions of law or fact, and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).

**§ 15.4.4.2** Either party, at its sole discretion, may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration, provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent.

**§ 15.4.4.3** The Owner and Contractor grant to any person or entity made a party to an arbitration conducted under this Section 15.4, whether by joinder or consolidation, the same rights of joinder and consolidation as the Owner and Contractor under this Agreement.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                                          (1198876727)

**38**

# Additions and Deletions Report for
## AIA® Document A201™ – 2007

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note: This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 20:00:12 on 06/05/2014.

### PAGE 1

OCR 29001C01 Ocean Club Resort
19418 San Luis Pass Road
Galveston, TX 77514

...

Silverleaf Resorts, Inc.
1221 River Bend Drive, Suite 120
Dallas, TX  75247

...

*(Name, legal status and address)*
The Matrix Design Companies, Inc
6213 Skyline Drive, Suite 100
Houston, TX 77057

### PAGE 16

§ 3.18.1 To the fullest extent permitted by law the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this Section TO THE FULLEST EXTENT PERMITTED BY LAW THE CONTRACTOR SHALL INDEMNIFY AND HOLD HARMLESS THE OWNER, ARCHITECT, ARCHITECT'S CONSULTANTS, AND AGENTS AND EMPLOYEES OF ANY OF THEM FROM AND AGAINST CLAIMS, DAMAGES, LOSSES AND EXPENSES, INCLUDING BUT NOT LIMITED TO ATTORNEYS' FEES, ARISING OUT OF OR RESULTING FROM PERFORMANCE OF THE WORK, PROVIDED THAT SUCH CLAIM, DAMAGE, LOSS OR EXPENSE IS ATTRIBUTABLE TO BODILY INJURY, SICKNESS, DISEASE OR DEATH, OR TO INJURY TO OR DESTRUCTION OF TANGIBLE PROPERTY (OTHER THAN THE WORK ITSELF), BUT ONLY TO THE EXTENT CAUSED BY THE NEGLIGENT ACTS OR OMISSIONS OF THE CONTRACTOR, A SUBCONTRACTOR, ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY THEM OR ANYONE FOR WHOSE ACTS THEY MAY BE LIABLE, REGARDLESS OF WHETHER OR NOT SUCH CLAIM, DAMAGE, LOSS OR EXPENSE IS CAUSED IN PART BY A PARTY INDEMNIFIED HEREUNDER FOR ITS OWN NEGLIGENCE. SUCH OBLIGATION SHALL NOT BE CONSTRUED TO NEGATE, ABRIDGE, OR REDUCE OTHER RIGHTS OR OBLIGATIONS OF INDEMNITY THAT WOULD OTHERWISE EXIST AS TO A PARTY OR PERSON DESCRIBED IN THIS SECTION 3.18.

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum possible extent under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
**User Notes:**                                                                                                           (1198876727)

1

**PAGE 29**

**§ 11.1.4** ~~The~~ Whether or not required by other provisions of this Contract Documents the Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, the Architect and the Architect's consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations. Such commercial liability coverage shall be broad enough to cover Contractor's Indemnity obligations under Section 3.18.1 hereof.

**PAGE 35**

**§ 14.2.5 CONVERSION OF CAUSE TO CONVENIENCE**
In the event Owner terminates Contractor for any cause under the terms of this Agreement and it is later determined by a court of competent jurisdiction, by arbitration or other similar proceeding that such termination for cause was not justified, then such termination for cause shall automatically be converted to a termination for convenience under the terms of this Article.

...

**§ 14.4.1** The Owner ~~may, at any time, terminate the Contract for the Owner's convenience and without cause.~~ shall have the absolute right to terminate Contractor for convenience for any reason and at any time during the course of this Agreement with a written notice of termination effective upon receipt by Contractor. Contractor shall be paid the reasonable value of the Work performed by Contractor prior to termination plus anticipatory profit or damages of any kind or nature, direct or indirect, incidental consequential. Owner may, in its sole discretion, utilize its right to terminate Contractor for convenience, in lieu of compliance with the terms regarding a termination for default.

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                                                (1198876727)

## Certification of Document's Authenticity
*AIA® Document D401™ – 2003*

I,  , hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 20:00:12 on 06/05/2014 under Order No. 5523426844_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A201™ – 2007, General Conditions of the Contract for Construction, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

Joann Galindo
_____
*(Signed)*

Contract Administrator
_____
*(Title)*

6/9/14
_____
*(Dated)*

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:00:12 on 06/05/2014 under Order No.5523426844_1 which expires on 04/21/2015, and is not for resale.
User Notes:                                                                      (1198876727)

1



# EXHIBIT A
## Silverleaf Resorts - Ocean Club Resort - Galveston, TX

Date: 6/10/2014

| ITEM | DESCRIPTION OF WORK | CONTRACT SOV | SRI PURCHASE | NOTES |
|---|---|---|---|---|
| | | SCHEDULE OF VALUES | | |
| | 01000-General Conditions | | | |
| 01001 | Fees & General Conditions | 1,029,590 | | |
| 01001 | Liability Insurance | | | |
| 01001 | Overhead & Profit | 1,041,682 | | |
| | Subtotal General Conditions | 2,071,272 | | |
| | 02000-Sitework | | | |
| 02320 | Earthwork | 96,989 | | credit for gravel parking area complete. |
| 02455 | Piling | 715,968 | | |
| 02500 | Paving and Surfacing | 108,000 | | |
| 02580 | Pavement Marking | 9,180 | | |
| 02720 | Site Utilities | 273,598 | | |
| 02750 | Sidewalks | 22,000 | | |
| 02800 | Monument Signs | - | | By Owner |
| 02800 | Wooden Ramps / Deck for Dune Walkovers | - | | By Owner |
| 02830 | Fences and Gates | - | | NIC |
| 02900 | Landscaping / Irrigation | - | | By Owner |
| | Subtotal 02000-Sitework | 1,225,735 | | |
| | 03000-Concrete | | | |
| 03400 | Concrete - Form, Pour & Finish | 2,699,992 | | |
| 03450 | Precast Stair Treads | 77,407 | | |
| 03452 | Precast Stair Treads(Labor) | 24,797 | | |
| | Subtotal 03000-Concrete | 2,802,196 | | |
| | 04000-Masonry | | | |
| 04200 | Masonry Units | 126,192 | | |
| 04731 | Quartz Surface Fabrications | 106,450 | | |
| | Subtotal 04000-Masonry | 232,642 | | |
| | 05000-Metals | | | |
| 05060 | Steel | 844,656 | | |
| 05720 | Railings & Handrails | 438,107 | | |
| | Subtotal 05000-Metals | 1,282,763 | | |
| | 06000-Carpentry | | | |
| 06050 | Rough Carpentry(Material) | 2,541,868 | | All metal framing and drywall |
| 06100 | Rough Carpentry(Labor) | - | | |
| 06170 | Wood Joists & Trusses | - | | NIC |
| | Subtotal Rough Carpentry | 2,541,868 | | |
| 06200 | Finish Carpentry | 157,647 | | |
| 06202 | Finish Carpentry(Labor) | - | | Included in 6200 |
| | Subtotal Finish Carpentry | 157,647 | | |
| 06410 | Cabinets | 92,751 | | |
| 06415 | Countertops | - | | Included in 04731 |
| | Subtotal Cabinets | 92,751 | | |
| | Subtotal 06000-Carpentry | 2,792,266 | | |
| | 07000-Moisture Protection | | | |
| 07141 | Waterproofing | 179,593 | | |
| 07210 | Insulation | 231,936 | | |
| 07915 | Caulking & Sealants | 47,091 | | Includes expansion joint covers |
| | Subtotal Moisture Protection | 458,620 | | |
| 07500 | TPO Roofing | 360,218 | | |
| 07610 | Metal Roofing | - | | Included in 7500 |
| | Subtotal Roofing | 360,218 | | |
| | Subtotal 07000-Moisture Protection | 818,838 | | |
| | 08000-Doors & Windows | | | |
| 08150 | Doors | 198,157 | | Includes Installation |
| 08330 | Rolling Counter Doors | 2,895 | | |
| 08400 | Entrances & Storefront | 609,613 | | |
| 08500 | Windows | - | | |
| 08710 | Finish Hardware | 38,390 | | |
| 08712 | Electronic Locks | 27,550 | | |
| | Subtotal 08000-Doors & Windows | 874,606 | | |
| | 09000-Finishes | | | |
| 09200 | Stucco | 1,469,900 | | |
| 09250 | Gypsum Board | - | | Included in 6050 |
| 09270 | Tape, Bed & Texture | - | | Included in 6050 |
| | Subtotal Drywall | 1,469,900 | | |
| 09310 | Tile Flooring | 449,261 | | |
| 09640 | Wood flooring | - | | Included in 9310 |
| 09687 | Carpet | - | | |
| | Subtotal Floor Coverings | 449,261 | | |



# EXHIBIT A

## Silverleaf Resorts - Ocean Club Resort - Galveston, TX

Date: 6/10/2014

| ITEM | DESCRIPTION OF WORK | CONTRACT SOV | SRI PURCHASE | NOTES |
|---|---|---|---|---|
| | | SCHEDULE OF VALUES | | |
| 09510 | Acoustical Ceilings | - | | NIC |
| 09910 | Paint | 169,270 | | |
| 09950 | Wall Coverings | - | | NIC |
| | Subtotal ACT, Paint, Wallcoverings | 169,270 | | |
| | Subtotal 09000-Finishes | 2,088,431 | | |
| | 10000-Specialties | | | |
| 10300 | Fireplaces | | | NIC |
| 10302 | Fireplaces(Labor) | | | NIC |
| | Subtotal Fireplaces | - | | |
| 10520 | Fire Extinguishers | 3,913 | | |
| 10713 | Aluminum Framing Systems | 17,488 | | |
| 10732 | Cabanas | 68,737 | | |
| 10800 | Toilet & Bath Accessories/Partitions | 29,971 | | |
| 10826 | Bathroom Mirrors | - | | Included in 10800 |
| 10916 | Closet & Linen Shelving and Knox Box | 2,052 | | |
| | Subtotal 10000-Specialties | 122,161 | | |
| | 11000-Residential Equipment | | | |
| 11452 | Appliances | | | By Owner |
| 11452 | Appliances (Labor to Install) | 19,656 | | |
| | Subtotal 11000-Residential Equipment | 19,656 | | |
| | 12000 -Furnishings | | | |
| 12300 | FF&E Install | - | | NIC |
| | Subtotal 12000 Furnishings | - | | |
| | 13000-Special Construction | | | |
| 13150 | Swimming Pools | 670,001 | | |
| | Subtotal 13000-Special Construction | 670,001 | | |
| | 14000-Conveying Systems | | | |
| 14235 | Elevator | 276,443 | | |
| | Subtotal 14000-Conveying Systems | 276,443 | | |
| | 15000-Mechanical | | | |
| 15300 | Fire Protection Systems | 297,120 | | |
| | Subtotal Fire Protection | 297,120 | | |
| 15400 | Plumbing Systems | 1,319,750 | | |
| 15410 | Plumbing Fixtures | - | | Included in 15400 |
| | Subtotal Plumbing | 1,319,750 | | |
| 15700 | HVAC Systems | 752,052 | | |
| | Subtotal HVAC | 752,052 | | |
| | Subtotal 15000-Mechanical | 2,368,922 | | |
| | 16000-Electrical | | | |
| 16100 | Electrical Systems | 1,484,513 | | |
| 16150 | Alarm & Detection Systems | - | | Included in 16100 |
| 16500 | Low Voltage Cabling | - | | Included in 16100 |
| 16500 | Light fixtures | - | | Included in 16100 |
| | Subtotal 16000-Electrical | 1,484,513 | | |
| | 5500-Signs | | | |
| 55113 | Building and unit identification signs | - | | NIC |
| 55113 | Labor to install signs | - | | NIC |
| | Subtotal 55000-Signs | 5,075 | | |
| | Subtotal Contract SOV | 19,135,519 | | |
| | Impact Fees | | | By Owner |
| | Permits | | | By Owner |
| | Testing | | | By Owner |
| | Builders Risk Cost | - | | By Owner |
| | Contractor Budget Contingency | - | | NIC |
| **Total Contract SOV with Builders Risk and Budget Contingency Incl.** | | 19,135,519 | | |



**Ocean Club Resort**
Cost Savings
6/10/2014
Estimated approximate values

| Site Work | | Value | 5/2/2014 Control | | 5/9/2014 | 6/10/2014 |
|---|---|---|---|---|---|---|
| | 1 | Asphalt paving in lieu of concrete paving - excluding parking garage | -29740 | $ (28,995) | Revise plans | 0 | 0 |
| | 2 | Add additional 1" to the thickness of outside concrete paving and eliminate lime stabilization | -16480 | no | | 0 | 0 |
| | 3 | Eliminate the aluminum louvers at parking garage level | -126960 | $ (170,060) | Addendum #2 | 0 | 0 |
| | 4 | Remove Lift Station and fencing. | -115390 | $ (116,210) | Addendum #2 | 0 | 0 |
| | 5 | Relocate Electrical Transformer to lift station location and add Concrete Duct Bank | -21090 | $ (31,060) | Addendum #2 | 0 | 0 |
| | 6 | Remove all site fencing and gates | | $ (15,154) | Revise Plans | -58251 | -58251 |
| | 7 | Remove two gravel parking lots and all associated work | -38085 | $ (38,985) | Clarifications | -113615 | -113615 |
| Structure | | | | | | |
| | 1 | Shift unit tower (010, 009, 022, 021, 034, 033) to line up with unit tower (004, 003, 019, 020, 031, 032 ) - no stagger in bldg hom. | -69960 | no | | no | no |
| | | Also shift balconies back with unit shift - no enlargement in balconies.  Do the same with the unit tower on the other end | | | | | |
| | | of the building. | | | | | |
| | | Save exterior wall framing and exterior cladding.    * enhances view for units between col lines | | | | | |
| | | Save railings    C & D and M & N - panoramic view of ocean. | | | | | |
| | | Save exterior elevated walk way sections | | | | | |
| | 2 | Eliminate two stair towers # 1 A-6 ( col line B & col line 6-7 and col line P & col line 6-7 ) flip the elevator 1 location w/stair? | -44500 | no | | no | no |
| | | and elevator 3 w/stair 3 to keep the distance of travel closer to end units- Based on America's Stair | | | | | |
| | 3 | Remove center elevator and masonry shaft. | -122500 | no | | no | no |
| | 4 | Eliminate the barrel roof features and go with Standing seam hip roofs, gable roofs or shed roofs in these location. | -10000 | no | | no | no |
| | 5 | Alternate Stair System - American with American precast treads | -534407 | no | | no | no |
| | 6 | Frame stairs with wide flange in lieu of tube steel | -65800 | $ (95,500) | Addendum #3 | 0 | 0 |
| | 7 | Reduce overall pool patio size | -22500 | no | | no | no |
| | 8 | Modify curtain wall center core rear of building | -60600 | $ - | Addendum #3 | -60000 | no |
| | 9 | Relocate pool equipment room to ground floor and not roof. | -7500 | no | | no | no |
| Finishes | | | | | | |
| | 1 | Eliminating all Glass Handrails and use Aluminum Railing | -543367 | $ (543,367) | Addendum #3 | 0 | 0 |
| | 2 | Eliminate all Glass Handrails (except at pool area - Beach side ) - use Alumn Railing | -620565 | no | | no | no |
| | 3 | Eliminate all Glass Handrails (except at pool area - Beach side and balconies ) - use Alumn Railing | -387803 | no | | no | no |
| | 4 | Alternate Glass railing system  in lieu of CH Lawrence | TBD | no | | no | no |
| | 5 | No powder coat use anodized aluminum finish at rails | -21256 | no | | no | no |
| | 6 | Alternate Quartz Countertops | -82509 | $ (82,999) | Submittal | 0 | 0 |
| | 7 | VE Cabinets | No Bid | $ (27,744) | Submittal | 0 | 0 |
| | 8 | Fixed Storefront in lieu of casement windows- Verify Code requirements | -45201 | no | | no | no |
| | 9 | Add Wine windows in lieu of casement windows | -19882 | $ (75,500) | Addendum #3 | 0 | 0 |
| | 10 | Masonite swing patio door with fixed panel in lieu Specified/Sliding patio doors | -113421 | $ (287,470) | Addendum #3 | 0 | 0 |
| | 11 | Grey glass for windows in lieu of Low-E glass-Verify Energy calculations | -19258 | no | | no | no |
| | 12 | 9/16" impact glass  in lieu of 1-5/16" if it meets wind load requirements | -48147 | no | | no | no |
| | 13 | Add Integral mini blinds in glass in lieu of Owner furnished mini blinds | 79572 | no | | no | no |
| | 14 | Modify soffit finish to skim coat at walkways | TBD | no | | no | no |
| | 15 | Change doorglass  to 7/16" particle board | -21900 | no | | no | no |
| | 16 | Alternate Interior doors at Units | -13660 | $ (13,600) | Submittal | 0 | 0 |
| | 17 | Carpet in bedrooms in lieu of Wood | -74370 | $ (68,710) | Addendum #3 | 0 | 0 |
| | 18 | Carpet in living and dining in lieu of wood | -81410 | no | | no | no |
| | 19 | Alternate wood flooring at living and Dining | -46966 | $ (9,255) | Submittal | 0 | 0 |
| | 20 | Delete glass tile pool surface | -44175 | no | | no | no |
| | 21 | Glass tile to Porcelain tile | -6379 | $ - | | 0 | 0 |
| | 22 | Alternate K-13 SPF system to underside of deck. | -19245 | $ - | | -19245 | -19245 |
| | 23 | Add Spray-Lock SCP-327 waterproofing per Item 130. | 77895 | Addendum 2 | | 0 | 0 |
| | 24 | Remove coffered ceilings in 22 units | | $ (6,952) | Do not delete | 6952 | 6952 |
| Amenities | | | | | | |
| | 1 | Delete Cabanas | -68736 | no | | no | no |
| | 2 | Delete the four CMU planters from the Pool deck area from CIC scope - Clay Potted plants as a FFE item | -6000 | no | | no | no |
| | 3 | Delete aluminum trellis - see sheet A1.11 & A5.11 | -17480 | no | | no | no |
| | 4 | Cost of stamped deck finish vs. acrylic decking pattern | -26000 | Addendum 2 | Addendum #2 | 0 | 0 |
| | 5 | Remove Infinity edge detail | -28600 | no | | no | no |
| | 6 | Remove swim-up Bar in pool | -6200 | no | | no | no |
| | 7 | Remove UV system at pool & Spa | -25700 | no | | no | no |
| | 8 | Remove divider at spa | -18500 | no | | no | no |
| MEP | | | | | | |
| | 1 | Alt HVAC Equipment manufacturer | -59000 | $ (25,000) | Submittal | 0 | 0 |
| | 2 | Flex Ductwork vs metal Ductwork | | $ (26,000) | Revise Plans | 0 | 0 |
| | 3 | VE Light Fixture Package | -22000 | $ (22,000) | Submittal | 0 | 0 |
| | 4 | Alternate plumbing fixtures | -51525 | no | | no | no |
| MISC | | | | | | |
| | | | | | | no | no |
| | 1 | Owner to furnish carpet in bedrooms see finishes 17 | | | | no | no |
| | 2 | Owner to furnish only cabinets in units by Armstrong | | | Clarifications | -358546 | -358546 |
| | 3 | Owner to pay for temporary utilities(electric,water,gas) | | | Clarifications | -31000 | -31000 |
| | 4 | Owner to install all signage | | | Clarifications | -5100 | -5100 |
| | 5 | | | | | | |



## Silverleaf
## Ocean Club Resort - Clarifications
### 6/10/14

Division 1
- All Impact fees, user fees, Municipal fees, stand by fees and utility fees are not included.
- All material testing and Threshold Inspection Services to be "By Owner".
- Removal of hazardous materials is not included.
- Any unforeseen underground conditions that impair pile installation is not included.
- General liability insurance is included.
- Builders Risk insurance is not included.
- Bond is not provided.
- All Permit Fees are to be "By Owner".
- Tax is included for material.
- All Water and Electric charges are provided "By Owner".
- All utility set up fees to be paid for by Owner.
- T&G is not responsible for ADA Compliancy.
- The Owner shall provide initial boundary survey for Contractors Surveyors reference.
- Work is to be performed per plans and specifications unless otherwise noted on clarifications and/or Bid analysis tabs.
- Propane storage tank is by owner.
- Proposal is based on cost savings list dated 6/10/14.
- Clarifications will supersede addendum #3.

Division 2
- Existing gravel from parking area to be used as temporary parking.
- Gravel parking lots complete are removed from this contract.
- All Landscaping and Irrigation for new and existing is "By Owner"
- Both new dune walkovers are to be "By Owner".
- Modification to existing dune walkover is "By Owner".
- Traffic Light Modification is excluded – to be "By Owner" and TXDOT
- No import of fill material is included. On site material to be used.
- All concrete paving will be 7" thick at parking areas and 8" thick at drive areas. The requirement for cement stabilization of the soil is not included due to the added 1" thickness of the concrete.
- No pile installation recorder is included.
- No vehicle or man gates and fencing are included at the ground level.

Division 3
- Pool deck topping is included per specifications with standard pattern, color and finish.
- Concrete parking areas under the building is being considered as paving, not Slab on Grade
- Underside of Concrete deck in the parking garage will be formed using Grade "B" forms in the areas that are not covered by spray insulation.  Grade "C" forms will be used in the insulated areas.





### Division 5
- All railings except at pool are KayCan same as ambassador building at Orlando Breeze.
- Includes 184 LF of glass rail at pool deck per attached sketch A1.10 and A1.11.

### Division 6
- Running and standing molding to be paint grade.
- Proposal is based on alternate quartz countertops.
- All cabinet material for the units will be paid by the Owner. Contractor to include labor for installation.

### Division 7
- Spray on dissipating curing compound by KUREZ DR VOX at elevated slabs is included.
- No Spray-lok liquid penetrating waterproofing included.
- Insulation under deck is a K-13 SPF system.

### Division 8 – Glass/Glazing
- Windows are per addendum #3.
- Patio Doors are per attached specifications sheets.
- Curtain wall/storefront to be by Tru-lite.
- Screens are included at operable windows only. No screens included at patio doors.
- Proposal is based on alternate door manufacturer and style.

### Division 9
- All plastering accessories to be zinc alloy or PVC
- Carpet is included in bedrooms with a 24/sy allowance for the carpet and glue.
- No painting included for concrete columns or ceiling in ground level parking area.
- No painting is included over the Sto Stucco System.
- Mold resistant drywall is included per plans.
- Proposal is based on alternate wood flooring.

### Division 10
- Aluminum louvers are excluded.
- Interior signage to be owner furnished and installed.
- Marquee sign, including the structure is not included.

### Division 11
- Appliances for the 38 units including their associated pigtails, vents, and hoses are to be "Owner Furnished and Contractor Installed".
- All Bar Equipment is to be "By Owner".

### Division 12
- FF&E supply and installation is not included.

### Division 13
- Two dolphins at the pool are "By Owner".
- The logo at pool bottom is included as 7'6" x 8' with a 3" stem water jet cut non-skid single color mosaic tile.

### Division 14
- Elevator to be Schlinder 3300 Series. See attached quote for specifications





Division 15
- HVAC equipment is based on an alternate manufacturer.
- R-6 insulated flex duct work is used in lieu of metal round duct work. Need to modify drawings.

Division 16
- Muzak is included with the following scope per attached proposal dated May1, 2014 from MOOD.
- Security system is not included.
- There is 80 LF of concrete duct bank included.
- Bid is based on alternate light fixtures to be approved.
- No lightning protection included.



# EXHIBIT B

## Supplemental Conditions to The AIA Document A201 - 2007

### Progress Payments Contracts

For the purpose of this document, the General Contractor shall be referred to as GC and the Owner (Silverleaf Resorts, Inc. and Resort Development) shall be referred to as SRI.

## I. Change Orders

A.   Prior to performing any additional work, the GC is required to submit and receive approval for performing that work. If additional work is required, the GC shall make a request in writing using the attached Request for Change Order (RFCO) form. If approved, the GC will be instructed to prepare AIA G701- 2001 Change Order and submit to SRI for processing. In order to have approval for a Change Order, the GC must submit adequate documentation that supports the request for change. Additional work is herein defined as any work directed by an RFCO, SRI Field Directive, AIA G709 Work Changes Proposal Request, AIA G710 Architect's Supplemental Instructions, AIA G714 Construction Change Directive, AIA G716 Request for Information or any other document or request, written or verbal which causes a price variance from the original SOV. The Owner reserves the right to accept the RFCO as is or request that the GC proceed with the work on a time and material basis per Paragraph E following. Receipt of the signed RFCO exhibits approval by SRI for the GC to proceed with the work. *An RFCO must be submitted in writing within thirty days of recognition and notification to the Owner of a condition giving rise to a claim for additional work. Failure to submit all costs and requests for extension of time required for this change prior to the expiration of this thirty day period will result in denial of said claim.*

B.   When an RFCO is submitted where more than one line item on the SOV is affected, the GC shall provide a spreadsheet which shows an accurate breakdown of the total cost by line item.

C.   The actual Change Order once submitted shall have attachments of the approved RFCO(s) that contain supporting documentation outlined above.

D.   A Field Authorization may also be issued for minor work done where the value of the work does not exceed $2,500.00. A signed copy of that Field Authorization, along with other supporting documents, must be submitted with the Change Order. This Section does not relieve the GC's responsibilities noted in Article 10 of the AIA Document A201-2007 - Electronic Format General Conditions of the Contract for Construction of a Small Project. The signed Field Authorization will serve as the GC's notice to proceed with the covered work.

E.   SRI shall process and return an executed RFCO to the GC for implementation in a timely manner.

F.   If the RFCO is accepted as Cost Plus, the RFCO shall be approved and marked: Approved as Cost Plus. This shall notify the GC that the amount submitted is a guideline and that the final cost shall be determined by the total of all third party invoices submitted for the work to include all materials, labor, subcontractors and taxes. The GC shall be allowed a markup for Overhead & Profit in accordance with the provisions of the Contract.

G.   Time extensions due to inclement weather shall be requested via RFCO and must be submitted within thirty (30) days of the occurrence of the lost time.

1.   Requests for time extensions after this thirty day period expires will be denied. Substantiation of claims must be documented as follows:

a. The GC must submit preliminary requests via the weekly electronic mail update. A copy of this notice must be attached to the request to verify the date.

b. Dates for potential requests must be claimed during the report for the week of occurrences.

c. Electronically date stamped digital photographs must accompany such requests which justify such extension.

d. Either a weather report or Daily Job Log must be submitted to substantiate such claims.

2. Under no circumstances will any Change Orders to General Conditions be granted for weather delays or change in scope of work or material delivery delays beyond control of the Owner, other than a warning or an event resulting in access to the Project being restricted by local authorities. Only those amounts indicated in the Contract will be allowed.

3. Should the Owner elect to delay the project for any reason, the GC will receive written notice from the Owner at which time the GC shall provide a detailed accounting of expenses which shall be commensurate with the length and timing of the delay. Once approved by the Owner, the GC shall submit the appropriate RFCO to cover these costs. When given notice to resume work, the GC shall submit the appropriate RFCO to cover the costs of re mobilization.

4. All time extensions and subsequent calculations for Bonus / Liquidated Damages are made based on calendar days.

5. This Section does not relieve the GC's responsibilities noted in Article 11 of the AIA DOCUMENT A201-2007 - ELECTRONIC FORMAT GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION OF A SMALL PROJECT.

## II. APPLICATION AND CERTIFICATES FOR PAYMENT

A. The GC shall prepare applications for payment utilizing AIA DOCUMENT G702 APPLICATION AND CERTIFICATE FOR PAYMENT and G703 - CONTINUATION SHEET ("DRAW"). No other form will be accepted. This will be done as outlined in Section 12 of the AIA DOCUMENT A105-2007 - ELECTRONIC FORMAT GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION OF A SMALL PROJECT.

B. The GC shall submit an updated Subcontractor list upon substantial changes and with each Draw. At no time will any Draw be recognized for a subcontractor not currently on file or shown on this list. The Subcontractor list must identify the subcontractor by the Cost Code applicable to the work being performed.

C. The Change Orders, once approved, shall be listed as a sub heading under the category to which it applies, showing the original amount and the Change Order amount in the Schedule of Values. The revised amount for that line item shall include the Change Order amount. Example:

| A. | B. | C. |
|---|---|---|
| 11452 | Appliances | 15,690.00 |
| | Original | 15,349.00 |
| | C O # 3 | 341.00 |

D. Under no circumstances will Change Orders be included on any Draw until approved and a signed copy is returned to the GC.

E. A fully completed Conditional Waiver and Release on Progress Payment by the GC from current Draw period shall be attached to the Draw. If this form is not used, the replacement form must be a conditional waiver. Incomplete lien release submittals shall be deducted from current Draw. A copy of each Change Order must be included in each Draw.

F.      The Draw Period shall be determined by the amount of work that has been done. Only the amount covering the work shown on the schedule will be considered, except for MATERIAL STORED ON SITE. The following stipulations will also apply.

     1.    All MATERIAL STORED ON SITE shall be shown in the Column F, MATERIALS STORED ON SITE of the AIA G703 form. The amount shown in Column E, WORK COMPLETED THIS PERIOD will represent only that work that is in place and completed.

     2.    As a prerequisite for Draw # 1, the GC must submit documentation to SRI that verifies satisfactory completion of materials testing as outlined in the Contract Documents.

     3.    Except for Draw # 1 which may include up to 20% of the 01001 FEES AND GENERAL CONDITIONS for startup costs, at no time shall the total of 01001 FEES AND GENERAL CONDITIONS exceed the total percent complete for the Project for the work shown in Columns D + E, WORK COMPLETED on the AIA G703 Form.

     4.    Except for the Final Request for Payment, the total of any Draw shall not exceed 90% of the Contract Amount. The cost used in the calculations shall include any potential amounts due from the GC resulting from Liquidated Damages.

     5.    Upon proper notification to SRI, the GC shall have the option of combining two or more Draws.

     6.    Stipulations for Final Draw are as noted in IV CONTRACT CLOSEOUT, PARAGRAPH B following.

G.      GC shall prepare a pencil draft of the Draw package and transmit via electronically to SRI to the attention of the Director of Construction. This pencil draft of the Draw is to include the AIA G702, AIA G703 and copies of all Change Orders. The GC will be notified in writing of approval or corrections to be made prior to submittal of the payable copy.

H.      The GC shall make such corrections as required and submit two original and executed copies of the Draw request via express mail to SRI. All copies must contain supporting documents. If the GC does not require an approved copy for his files, only two copies must be submitted. The Architect shall forward his inspection letter of compliance to SRI which will become a part of the file.

I.      Draw amounts shall be paid to the GC within twenty (20) days of receipt of completed Draw by SRI. Incomplete Draws will be returned unprocessed.

J.      All Allowance Items shall be reconciled via Change Order. Reconciliation of these items must be done prior to its submittal for payment or inclusion on a Draw. Reconciliation shall include all invoices from the vendor. Prior to submission of Draw of that item, the GC shall present a final accounting, along with an appropriate Change Order that will balance the Allowance Item to zero. In no event, will the GC be allowed to exceed ANY Allowance Item. If the specified work exceeds an Allowance amount, the GC must request permission, substantiated by three valid quotations for the line item. Approval by SRI must be made prior to proceeding with the Work.

## III. PROJECT COMMUNICATIONS

A.      Once the General Contractor has received the executed Contract Documents, ALL Project communication shall be directed to and received from the assigned Owner's Representative reporting to the Director of Construction. The GC shall not request nor shall he abide by any information for the Project other than that transmitted by the Owner's Representative.

B.      Clarifications, supplemental instructions and general information from SRI or Architect shall be transmitted to the GC utilizing Change Directive forms approved by the Architect or SRI deems proper.

C.      The GC shall request information from SRI utilizing a Contractor's Request for Information form or by such form the Architect or SRI deems proper.

D.      The GC shall promptly supply all Shop Drawings and Submittals to the Owner's Representative. No work is to be installed prior to approval by SRI.

    1.    Any oversight Architect for items on the Submittals shall not relieve the GC or any of its Subcontractors from finishing the building in accordance with all items specified on the construction documents, in the specifications, or by code.

E.    The GC shall maintain a Daily Job Log that remains open and accessible to the Architect or SRI and contains daily weather conditions, work descriptions and a labor breakdown by trade, or any information SRI deems necessary. All of the information is to enable review of potential and previously authorized Change Orders and provide satisfactory backup thereto.

F.    The GC shall provide an interim schedule upon request, which indicates compliance with the anticipated completion date. A "Remarks" column must be shown, indicating a narrative on the work that is presently being done and a percent complete for each project.

G.    The GC shall transmit a daily/weekly job progress report, including percent complete to the Owner's Representative and Architect via email at noon Thursday of each week.

    1.    A minimum of four (4) project digital photographs shall be included as a part of this report. Photographs must provide a representation of the actual progress and must contain an electronic date stamp. Additional photographs may be required.

    2.    This report shall be electronically filed no later than noon every Thursday.

    3.    Failure to provide such reports may delay the inspection process and will be considered a violation of the terms of the Contract.

H.    PROJECT CONTROL: Once the GC has performed final finishes of any type, the project must be maintained in a secure condition when workers are not present. This requires that all doors and windows must be properly secured and locked. All locks used on the doors must be keyed alike, with the only key remaining in possession of the GC. Only the Architect and SRI's Construction Representatives will be allowed in these finished areas prior to acceptance. Any interim inspections by the Architect or Owner's Representative require the presence of the GC.

I.    INSPECTIONS: All inspections require an advanced notice of three weeks. First time inspections will be paid for by SRI. Any additional job site inspections required by Consultants for non-completion of installation or noncompliance of drawings or code thru no fault of SRI or at the request of the GC will be paid by the GC. This includes any and all expenses to include air fare, lodging, meals, transportation, and fees

J.    SUBSTANTIAL COMPLETION / OCCUPANCY DATE: Has been established as August 12, 2015. The definition of Substantial Completion shall be the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use with only the punch list remaining. This is to include all Life Safety items. The GC must provide sufficient manpower, tools, equipment and materials to meet that date. There will be no exceptions granted for the extension of that date, other than those circumstances stipulated in the Contract Documents. A Certificate of Occupancy must be received from the governing authority (City of Galveston) in order for Occupancy Date to have been established.

    a.    The GC will have performed a pre-punch and remedied all deficiencies. Only after the pre-punch and completion of those punch items will SRI deem that the facility is ready for Substantial Completion inspection by SRI and Architect.

    b.    SRI and the Architect will provide a Substantial Completion punch list to determine if the building meets the conditions required to issue a Certificate of Substantial Completion.

    c.    The Architect will provide an inspection that will certify that the building has been constructed in compliance with the plans and specifications and meets all local codes and conditions.

    2.    SRI will pay for the travel expenses of the Consultants for the first Substantial Completion visit only. Any follow-up visits required due to project not being substantially complete will be at the expense of the GC.

3.  An AIA DOCUMENT G704-2000 CERTIFICATE OF SUBSTANTIAL COMPLETION must be issued by SRI. Document will be signed by the Architect, SRI and the GC and establish the exact number of days used to calculate the amount of required by the BONUS/LIQUIDATED DAMAGES clause.

4.  A copy of the remedied Punch List provided by the Architect and SRI must be attached to the CERTIFICATE OF SUBSTANTIAL COMPLETION if any.

K.  FINAL INSPECTION: The GC shall promptly notify the Owner's Representatives at least Fourteen [14] days prior to the OWNER TURNOVER DATE to conduct a Final Inspection of the finished work. At the time of this final inspection the GC shall provide sufficient men and material to remedy those minor deficiencies prior to final acceptance by SRI. Also, prior to the Final Inspection, the GC will have satisfied all inspections required for Occupancy by local codes and requirements. A copy of the OCCUPANCY PERMIT or inspection tags will be required to begin the inspection. A completed SRI FINAL INSPECTION ACCEPTANCE Form will be required as part of the final Payment Application. This Section does not relieve the GC of requirements stated in SECTION 01700 - CONTRACT CLOSEOUT of the Specifications.

L.  Successful completion of this inspection will evidence the authority of the GC to apply for and receive the Retainage or Final Draw per the Contract Documents.

M.  FINAL ACCEPTANCE: Once SRI has accepted the portion of the facility being inspected, the GC will remove the construction lock, allowing Operations to install their mastered locks. Once these conditions are met, that portion of the work will be deemed accepted by SRI, relieving the GC of any additional liability or responsibility except for warranty work as outlined elsewhere in the Project Documents.

# IV. CONTRACT CLOSEOUT

A.  GC shall request consideration for Final Inspection Fourteen [14] days prior to anticipated project completion date. Request shall be submitted in writing to the Owner's Representative [electronic communication is acceptable].

B.  Prior to the submission of the final Draw, the GC shall submit to the Owner's Representative, two [2] 3-ring binders containing all information required on the Table of Contents supplied by the SRI Owner's Representative which shall include, but not be limited to the names and contact information of all prime subcontractors, all warranty information, all operational manuals and/or information and all warranties and guarantees. The GC and their sub-contractors will arrange a mutually agreed time with the OCR site engineering team in order to provide training to the site engineers for all systems and equipment installed by the GC team. The training will continue a sufficient length of time to ensure that once the contracting team has vacated the property, the OCR site engineers will fully understand how best to operate all systems and equipment. The GC will provide 24 / 7 emergency contact phones/emails for all relevant sub-contractors so the OCR team can immediately contact the necessary party as the need arises. In addition, the GC shall submit a final "as-built" drawing, showing all of the utilities and their connections and their dimensions from building. No final payment will be made until these Manuals, and plans are received and approved.

C.  Within thirty [30] calendar days after date of SRI acceptance of FINAL INSPECTION documentation and issuance to the GC an AIA G704, CERTIFICATE OF SUBSTANTIAL COMPLETION, the GC shall submit final Application and Certificate for Payment as previously directed.

1.  A fully executed Conditional Waiver and Release on Progress Payment shall be included with the final application package.  Only the General Contractor's affidavit requires certification by a Notary. In addition, Conditional or Final Lien Waivers must be submitted for the following subcontractors or vendors unless the work is performed by GC's own forces, in which case a statement must be included that replaces the Lien Waiver for all Subcontractors.

2.  All SRI Projects will automatically close 120 days from the DATE OF OCCUPANCY. There will be no further considerations for any payments or adjustments once the Projects have been closed.

3.  As a recap of the previous conditions, the following documents MUST be submitted with the final APPLICATION FOR PAYMENT:

   a.  Notarized submittal of the AIA DOCUMENT G702 APPLICATION AND CERTIFICATE FOR PAYMENT and G703 - CONTINUATION SHEET as noted in Section II Paragraph A. above.

   b.  An executed and notarized copy of the SRI AFFIDAVIT OF PAYMENT OF DEBTS AND CLAIMS AND RELEASE OF LIENS as noted in Section II Paragraph D. above.

   c.  Copies of ALL approved Change Orders, including the reconciliation Change Order for the BONUS/LIQUIDATED DAMAGES CLAUSE, noted in Section III Paragraph I.2.d.above.

   d.  Unless previously submitted as required in Section IV Paragraph B above, the GC shall submit two copies of the Project Manual that includes:
      [1]  A final list of all subcontractors and vendors and their contact information
      [2]  All warranties, product information and operating instructions.
      [3]  One hard copy plus a digital file of as-built building plan.

   e.  An executed copy of the AIA DOCUMENT G704-2000 CERTIFICATE OF SUBSTANTIAL COMPLETION and Punch List as required in Section III Paragraph I.2 above.

   f.  The original documentation of the CERTIFICATE OF OCCUPANCY issued by the local governing authorities.

   g.  An executed copy of the SRI FINAL INSPECTION ACCEPTANCE form.

D.  SRI will hold a Warranty Inspection one month before the first Anniversary Date of the receipt of the Certificate of Occupancy.

1.  The GC must provide a representative to inspect the Project with an SRI Representative and note the deficient items that are covered under the one year warranty.

2.  SRI shall notify the GC in writing that certain items require repair and/or replacement within three working days after the inspection.

3.  The GC shall have fifteen (15) working days to repair such items and report same to SRI.

4.  The GC shall not be responsible for:
   a.  dust, debris or cleaning of the work,
   b.  improperly operated elements of the work,
   c.  improperly maintained elements of the work or
   d.  normal wear and tear.

# V. ADDITIONAL REQUIREMENTS

A.  Silverleaf Resorts, Inc. has a strong commitment to maintaining an alcohol- and drug-free workplace. GC shall be responsible for ensuring that all employees and Subcontractors adhere to this policy. GC shall make it a condition of all subcontracts that any site personnel reasonably suspected to be under the influence of drugs or alcohol shall be immediately removed from the premises and subject to testing. Testing shall be conducted upon suspicion of GC or upon request by SRI, and immediately following any incident.

B.  Upon receiving notice of a recorded lien from any Subcontractor, Silverleaf Resorts, Inc. will notify the General Contractor immediately. The General Contractor shall have Seven (7) days

from the date notice is received to do one of the following:
1. Provide SRI with a RECORDED Release of Lien from Subcontractor.
2. Provide SRI with a RECORDED Lien Release Bond for the amount of the lien filed.

Should the GC fail to provide one of the above items within Seven (7) days, Silverleaf Resorts, Inc. reserves the right to bond around the lien, and will back charge the Contractor 150% of the lien amount and deduct that amount from the Contract, in order to avoid clouding the title to SRI property.

ROUTING: Overnight

**LETTER OF TRANSMITTAL**

| | | | |
|---|---|---|---|
| **TO:** | Silverleaf Resorts Inc.<br>1221 Riverbend Dr. Suite 120<br>Dallas, Texas 75247<br>Tel: (214) 631-1166 Ext 4614<br>Cell: (214) 934-9314<br>Fax: (214) 630-4740<br>E-mail: szell@sriae.com | **DATE:** | May 23, 2014 |
| **ATTN:** | Scott G. Zell<br>Director of Design | **RE:** | Silverleaf Resorts Inc.<br>Ocean Club – Galveston, TX |

**We are transmitting herewith the following:**

| QUANTITY | DESCRIPTION | | |
|---|---|---|---|
| One (1) | Half-Size - Complete Set Drawings | Addendum3 | dated 5/23/14 |
| One (1) | Set Revised Spec Sections | Addendum3 | dated 5/23/14 |

**REMARKS**: Enclosed drawings (289 sheets) and specs. Complete drawing sets and revised specs (5 sections) are issued to Silverleaf. Only revised drawings (69 sheets) and specs (5 sections) are issued to A/E team and T&G Constructors. T&G will receive a CD with all drawings and all spec sections.

Sincerely,

*Ken Cvejanovich*

Ken Cvejanovich
Matrix Design, Inc.

cc:    Jim Jebbia  – Silverleaf Resorts Inc. 1221 Riverbend Dr. Suite 120, Dallas, Texas 75247
       (1) ½ Size Complete Set Drawings, (1) Set Revised Spec Sections

       Brian Bond – Silverleaf Resorts Inc. 1221 Riverbend Dr. Suite 120, Dallas, Texas 75247
       (1) ½ Size Complete Set Drawings, (1) Set Revised Spec Sections

       John Irvin  – Silverleaf Resorts Inc. 1221 Riverbend Dr. Suite 120, Dallas, Texas 75247
       (1) Full Size (Partial) Set Drawings, (1) ½ Size (Partial) Set Drawings, (1) Set Revised Spec Sections

       Ken Cvejanovich – Matrix Design Architects, 6001 Savoy Drive, Suite 120 Houston, TX 77036
       (1) Full Size (Partial) Set Drawings, (1) ½ Size (Partial) Set Drawings, (1) Set Revised Spec Sections

       Randy Visser, PHA Consulting Engineers, Inc., 1101 East Arapaho, Suite 130, Richardson, TX  75081
       (1) ½ Size (Partial) Set Drawings,   (1) Set Revised Spec Sections

       Jarrod Hamilton, Sterling Engineering Group, Inc., 14025 West Road, Houston, TX  75041
       (1) ½ Size (Partial) Set Drawings,   (1) Revised Spec Sections

       Marcus Michna, Shelmark Engineering LLC, 921 FM 517 Road East, Dickenson, TX  77539
       (1) ½ Size (Partial) Set Drawings,   (1) Set Revised Spec Sections

       Darren Bevard, Counsilman-Hunsaker, 10733 Sunset Office Drive, Suite 400, St Louis, MO  63127
       (1) ½ Size (Partial) Set Drawings,   (1) Set Revised Spec Sections

       Steve McCawley, Hughes Associates, Inc. 200 Chisholm Place, Suite 230, Plano, TX 75075
       (1) ½ Size (Partial) Set Drawings,   (1) Set Revised Spec Sections

       Rosairy Colondres, T&G Constructors, 8623 Commodity Circle, Orlando, FL 32819
       (1) Full Size  (Partial) Set Drawings, (1) ½ Size  (Partial) Set Drawings,  (1)  Set Revised Spec Sections,   (1)
       CD with all Drawings / all Specs in PDF format.

6001 SAVOY DRIVE, SUITE 120        HOUSTON, TEXAS 77036        713-522-1666   713-522-6260 fax



# Change Bulletin #3

| | |
|---|---|
| Date of Issue: | **5-23-14 - Addendum 3** |
| Issued by: | **Matrix Design, Inc.** |
| | 6001 Savoy Dr, Ste 120 |
| | Houston, TX 77036 |

SILVERLEAF
RESORTS



MATRIX SPENCER

---

| | |
|---|---|
| **Owner:** | Silverleaf Resorts, Inc. |
| **Resort:** | Ocean Club Resort, Galveston, TX |
| **Project Description:** | 38 Unit, Section 1, Building 1 |
| **SRI Project Number:** | 29001C01 |

---

| | |
|---|---|
| **General Contractor:** | T & G Constructors, Inc. |
| | 13714 Neutron Road |
| | Dallas, TX 75244 |

---

These additions, revisions, and clarifications to the Drawings and Project Manual shall govern and are themselves a part of the Bidding Documents for the Work.

CB3.1 **G0.00** COVER SHEET:
    a. Revised addresses.
CB3.2 **G0.01** INDEX OF DRAWINGS:
    a. Revised issue dates.
CB3.3 **AS0.02** SITE PLAN:
    a. Revised concrete paving to asphalt.
    b. Omitted fencing.
    c. Omitted louver screening at garage.
CB3.4 **AS1.01** SITE DETAILS:
    a. Added detail at gate for exit hardware note and lath.
    b. Omitted rolling gates.
    c. Added parking control arm gate.
CB3.5 **C1.00** CIVIL SITE PLAN
    a. Revised location of transformer pad.
CB3.6 **C5.00** CIVIL PAVING PLAN
    a. Revised concrete paving to asphalt.
CB3.7 **C5.00** CIVIL PAVING DETAILS
    a. Revised paving details for asphalt.
CB3.8 **A1.00** COMPOSITE FLOOR PLAN:
    a. Omitted fencing; except at stairs.
    b. Omitted louver screening at garage.
    c. Revised some parking striping.
CB3.9 **A1.06** GROUND FLOOR PLAN – AREA A
    a. Omitted fencing; except at stairs.
    b. Omitted louver screening at garage.
    c. Revised some parking striping.
    d. Paving beyond garage revised to asphalt.
CB3.10 **A1.07** GROUND FLOOR PLAN – AREA B
    a. Omitted fencing; except at stairs.
    b. Omitted louver screening at garage.
    c. Revised some parking striping.
    d. Paving beyond garage revised to asphalt.
CB3.11 **A1.30** UNIT PLANS - TYPICAL
    a. Revise flooring in bedrooms to carpet

      b.   Revise door to balcony from sliding glass to swing with sidelight.
      c.   Revise guardrail to aluminum with picket in-fill in lieu of glass.
      d.   Revise casement windows to vinyl except as noted.

CB3.12   **A3.00, A3.01, A3.02, A3.03, A3.04, A3.05, and A3.06** EXTERIOR ELEVATIONS:
      a.   Revise guardrails from aluminum/glass to aluminum w/ picket in-fill.
      b.   Omitted fencing; except at stairs.
      c.   Omitted louver screening at garage.

CB3.13   **A4.00** ROOM FINISH SCHEDULE:
      a.   Revised bedroom flooring to carpet.

CB3.14   **A4.01** DOOR SCHEDULES:
      a.   Revised sliding glass door 16P to patio swing.
      b.   Revised exterior door DP rating to +50/-55.

CB3.15   **A4.02** WINDOW SCHEDULES
      a.   Revised window Types A, B, C to Jeld-Wen vinyl casement.
      b.   Added window Type C2; Kawneer aluminum casement.

CB3.16   **A4.03** WINDOW DETAILS:
      a.   Revised details at casement windows to vinyl.
      b.   Revised details to change from sliding glass door to swing door.

CB3.17   **A5.02** WALL SECTIONS / DETAILS:
      a.   Revised various details at stairs and guardrails.

CB3.18   **A5.03** WALL SECTIONS / DETAILS:
      a.   Revised various details at stairs and guardrails.
      b.   Revised various details at patio door.

CB3.19   **A5.04** WALL SECTIONS / DETAILS:
      a.   Revised various details at guardrails.

CB3.20   **A5.05** WALL SECTIONS / DETAILS:
      a.   Revised various details at guardrails.
      b.   Omitted louver screening at garage.

CB3.21   **A5.06** WALL SECTIONS / DETAILS:
      a.   Revised various details at stairs and guardrails.

CB3.22   **A5.10** WALL SECTIONS / DETAILS:
      a.   Revised various details at guardrails.

CB3.23   **A5.11** WALL SECTIONS / DETAILS
      a.   Revised various details at guardrails.
      b.   Omitted louver screening at garage.

CB3.24   **A6.01, A6.02, A6.03, A6.04, A6.05, A6.07, A6.08, A6.09 and A6.10** STAIR SECTIONS / DETAILS
      a.   Revised steel shapes for columns, beams and stringers.
      b.   Revised guardrails to aluminum picket in-fill in lieu of glass.
      c.   Revised dimensions accordingly.

CB3.25   **A7.10** INTERIOR ELEVATIONS
      a.   Revised casework at Kitchen.

CB3.26   **A7.11** INTERIOR ELEVATIONS
      a.   Revised casework at Kitchen 2.
      b.   Revised center jamb at casement windows.

CB3.27   **A7.15** INTERIOR ELEVATIONS
      a.   Revised center jamb at casement windows.

CB3.28   **A7.17** INTERIOR ELEVATIONS
      a.   Revised casework at Breakroom 132 and Bar 209.

CB3.29   **A7.18** INTERIOR ELEVATIONS
      a.   Revised guardrail at Lounge 211.

CB3.30   **S1.00, S1.01, S1.02, S1.03, S1.10, S1.11, S1.12, S1.13** FRAMING PLANS
      a.   Revised stair framing: beams, columns and stringers.

CB3.31   **S2.11, S2.12, S2.13, S2.21, S2.22, S2.23, S2.31, S2.33** FRAMING PLANS
      a.   Revised stair framing: beams, columns and stringers.

CB3.32   **S5.1A, S5.1B, S5.1C** STAIR DETAILS
      a.   Revised stair framing: beams, columns and stringers.

CB3.33   **E1.01** BUILDING GROUND FLOOR
    a.   Revised the location of all stairwell gate reader to the outside of the gates.
    b.   Revised exit signs in the garage by the stairwells.
    c.   Revised the main switch note to refer to the C9.00 sheet for transformer pad location.
    d.   Revised the gate power for the new gate system.
    e.   Added stairwell light to the back of the building.
    f.   Added light to the elevator shaft in the left side of building and the middle elevator.
CB3.34   **E1.02** BUILDING GROUND FLOOR
    a.   Revised the location of all stairwell gate reader to the outside of the gates.
    b.   Revised exit signs in the garage by the stairwells.
    c.   Revised the gate power for the new gate system.
    d.   Added stairwell light to the back of the building.
    e.   Added light to the elevator shaft in the right side of building and the middle elevator.
CB3.35   **E1.09** BUILDING FOURTH FLOOR – SEC A ELECTRICAL PLAN
    a.   Added elevator shaft light and note to the elevator.
CB3.36   **E1.10** BUILDING FOURTH FLOOR – SEC B ELECTRICAL PLAN
    a.   Added elevator shaft light and note to the elevator.
CB3.37   **E2.02** BUILDING FIRST FLOOR ENLARGED PUBLIC AREA POWER PLAN
    a.   Removed lift station electrical panel in the housekeeping room.
CB3.38   **E4.02** ELECTRICAL BUILDING LOADS AND PANELS
    a.   Removed lift station panel from the MDP panel.
CB3.39   **E4.03** ELECTRICAL BUILDING LOADS AND PANELS
    a.   Removed lift station panel from sheet.
CB3.40   **SPEC** TOC: TABLE OF CONTENTS
    a.   Revised addresses.
    b.   Revised / new sections highlighted.
CB3.41   **SPEC** 00005: PROJECT DIRECTORY
    a.   Revised addresses.
CB3.42   **SPEC** 05720: HANDRAILS AND GUARDRAILS
    a.   Revised section entirely.
CB3.43   **SPEC** 08500: VINYL WINDOWS
    a.   New section.
CB3.44   **SPEC** 09687: CARPET
    a.   New section.

---

**Attachments:** (List of attached documents that support description.)

**Drawings:**   Sheets listed above (69 sheets).
**Specifications:** Spec sections listed above (5 sections).

---

## End of Change Bulletin #3

**DRAWING LIST**
**SILVERLEAF RESORTS, INC.**
*Ocean Club 29001C01*
*Galveston, Texas*

ADDENDUM 3:  DATE: MAY 23, 2014

| Sheet No. | Sheet Name | Rev. # | Date |
|---|---|---|---|
| GENERAL:  BY MATRIX SPENCER | | | |
| G0.00 | COVER SHEET | 2 | 5-23-14 |
| G0.01 | INDEX SHEET | 3 | 5-23-14 |
| G0.02 | NOTE TO CONTRACTOR | | 11-25-13 |
| G0.03 | SYMBOLS, NOTES | | 11-25-13 |
| G0.04 | CODE SUMMARY | 1 | 2-7-14 |
| G1.02 | FAIR HOUSING GUIDELINES | 2 | 3-28-14 |
| G1.04 | UL DETAILS | | 11-25-13 |
| G1.05 | TYPICAL FIRE STOP SEALS | | 11-25-13 |
| G1.06 | TYPICAL FIRE STOP SEALS | | 11-25-13 |
| G1.07 | BUILDING SIGNAGE | 1 | 2-7-14 |
| G1.08 | BUILDING SIGNAGE - PLANS | | 11-25-13 |
| G1.09 | BUILDING SIGNAGE - PLANS | | 11-25-13 |
| | | | |
| ARCHITECTURAL SITE:  BY MATRIX SPENCER | | | |
| AS0.00 | TOPOGRAPHIC SURVEY (FOR INFORMATION ONLY) | | 11-25-13 |
| AS0.02 | ARCHITECTURAL SITE PLAN | 3 | 5-23-14 |
| AS1.01 | SITE DETAILS | 2 | 5-23-14 |
| | | | |
| CIVIL:  BY SHELMARK | | | |
| C0.00 | CIVIL NOTES | | 11-25-13 |
| C1.00 | CIVIL SITE PLAN | 2 | 5-23-14 |
| C1.01 | CIVIL DEMO | | 11-25-13 |
| C2.00 | CIVIL SWPPP | | 11-25-13 |
| C2.01 | CIVIL SWPPP DETAILS | | 11-25-13 |
| C3.00 | CIVIL WATER & SANITARY PLAN | 1 | 3-28-14 |
| C3.01 | CIVIL OFF-SITE PROPANE SITE PLAN | | 11-25-13 |
| C3.02 | CIVIL WATER DETAILS | | 11-25-13 |
| C3.03 | CIVIL WATER DETAILS | | 11-25-13 |
| C3.04 | CIVIL UTILITARY DETAILS | | 11-25-13 |
| C4.00 | CIVIL DRAINAGE & GRADING PLAN | 1 | 3-28-14 |
| C4.01 | CIVIL DRAINAGE CALCULATIONS | | 11-25-13 |
| C4.02 | CIVIL STORM DETAILS | | 11-25-13 |
| C4.03 | CIVIL STORM DETAILS | | 11-25-13 |

**DRAWING LIST**
**SILVERLEAF RESORTS, INC.**
*Ocean Club 29001C01*
*Galveston, Texas*

ADDENDUM 3:   DATE: MAY 23, 2014

| Sheet No. | Sheet Name | Rev. # | Date |
|-----------|-----------|--------|------|
| C4.04 | TRENCH SAFETY DETAILS | | 11-25-13 |
| C5.00 | CIVIL PAVING PLAN | 3 | 5-23-14 |
| C5.01 | CIVIL PAVING DETAILS | 2 | 5-23-14 |
| C5.02 | CIVIL TRAFFIC – LEFT TURN LANE | | 11-25-13 |
| C6.00 | CIVIL TRAFFIC CONTROL | | 11-25-13 |
| C7.00 | CIVIL PUMP STATION SITE PLAN | | OMITTED |
| C7.01 | CIVIL PUMP STATION NOTES | | OMITTED |
| C7.02 | CIVIL PUMP STATION SECTIONS | | OMITTED |
| C7.03 | CIVIL PUMP STATION DETAILS | | OMITTED |
| C7.04 | CIVIL PUMP STATION DETAILS | | OMITTED |
| C8.00 | TXDOT UTILITY PLAN AND PROFILE | | 11-25-13 |
| C9.00 | TRANSFORMER PAD PLAN | 2 | 3-28-14 |
| C9.01 | TRANSFORMER PAD SECTION | 2 | 3-28-14 |
| C9.02 | TRANSFORMER PAD DETAILS | 1 | 3-28-14 |
| C9.03 | TRANSFORMER PAD DETAILS & NOTES | | 11-25-13 |
| C10.01 | DUNE WALKOVER PLAN | 2 | 3-28-14 |
| C10.02 | EXISTING DUNE WALKOVER MODIFICATION PLAN | 1 | 2-7-14 |
| C10.03 | DUNE WALKOVER SECTIONS | 1 | 2-7-14 |
| C10.04 | DUNE WALKOVER SECTIONS | NEW | 3-28-14 |
| C10.05 | DUNE WALKOVER SECTIONS | NEW | 3-28-14 |
| | | | |
| **ARCHITECTURAL: BY MATRIX SPENCER** | | | |
| A1.00 | FLOOR PLAN – GROUND FLOOR - COMPOSITE | 3 | 5-23-14 |
| A1.01 | FLOOR PLAN – FIRST FLOOR - COMPOSITE | 1 | 2-7-14 |
| A1.02 | FLOOR PLAN – SECOND FLOOR - COMPOSITE | | 11-25-13 |
| A1.03 | FLOOR PLAN – THIRD FLOOR - COMPOSITE | | 11-25-13 |
| A1.04 | FLOOR PLAN – FOURTH FLOOR - COMPOSITE | | 11-25-13 |
| A1.05 | ROOF PLAN - COMPOSITE | | 11-25-13 |
| A1.06 | FLOOR PLAN – GROUND FLOOR – AREA A | 3 | 5-23-14 |
| A1.07 | FLOOR PLAN – GROUND FLOOR – AREA B | 3 | 5-23-14 |
| A1.10 | FLOOR PLAN – FIRST FLOOR – AREA A | 2 | 3-28-14 |
| A1.11 | FLOOR PLAN – FIRST FLOOR – AREA B | 2 | 3-28-14 |
| A1.14 | FLOOR PLAN – SECOND FLOOR – AREA A | 1 | 2-7-14 |
| A1.15 | FLOOR PLAN – SECOND FLOOR – AREA B | | 11-25-13 |

**DRAWING LIST**
**SILVERLEAF RESORTS, INC.**
*Ocean Club 29001C01*
*Galveston, Texas*

**ADDENDUM 3:   DATE: MAY 23, 2014**

| Sheet No. | Sheet Name | Rev. # | Date |
|---|---|---|---|
| A1.16 | FLOOR PLAN – THIRD FLOOR – AREA A | | 11-25-13 |
| A1.17 | FLOOR PLAN – THIRD FLOOR – AREA B | | 11-25-13 |
| A1.18 | FLOOR PLAN – FOURTH FLOOR – AREA A | 1 | 2-7-14 |
| A1.19 | FLOOR PLAN – FOURTH FLOOR – AREA B | 1 | 2-7-14 |
| A1.20 | FLOOR PLAN – ROOF – AREA A | 1 | 2-7-14 |
| A1.21 | FLOOR PLAN – ROOF – AREA B | 1 | 2-7-14 |
| A1.30 | UNIT PLANS - TYPICAL | 2 | 5-23-14 |
| A1.31 | ENLARGED FLOOR PLANS – TYPICAL UNIT | 1 | 2-7-14 |
| A1.32 | ENLARGED FLOOR PLANS – COMMON AREAS | 1 | 2-7-14 |
| A2.06 | REFLECTED CEILING PLAN – GROUND FLOOR – AREA A | | 11-25-13 |
| A2.07 | REFLECTED CEILING PLAN – GROUND FLOOR – AREA B | | 11-25-13 |
| A2.10 | REFLECTED CEILING PLAN – FIRST FLOOR – AREA A | | 11-25-13 |
| A2.11 | REFLECTED CEILING PLAN – FIRST FLOOR – AREA B | | 11-25-13 |
| A2.14 | REFLECTED CEILING PLAN – SECOND FLOOR – AREA A | | 11-25-13 |
| A2.15 | REFLECTED CEILING PLAN – SECOND FLOOR – AREA B | | 11-25-13 |
| A2.16 | REFLECTED CEILING PLAN – THIRD FLOOR – AREA A | | 11-25-13 |
| A2.17 | REFLECTED CEILING PLAN – THIRD FLOOR – AREA B | | 11-25-13 |
| A2.18 | REFLECTED CEILING PLAN – FOURTH FLOOR – AREA A | | 11-25-13 |
| A2.19 | REFLECTED CEILING PLAN – FOURTH FLOOR – AREA B | | 11-25-13 |
| A2.20 | REFLECTED CEILING PLAN – TYPICAL UNITS | 1 | 3-28-14 |
| A2.21 | CEILING DETAILS | | 11-25-13 |
| A3.00 | EXTERIOR ELEVATIONS | 3 | 5-23-14 |
| A3.01 | EXTERIOR ELEVATIONS | 2 | 5-23-14 |
| A3.02 | EXTERIOR ELEVATIONS / BUILDING SECTIONS | 3 | 5-23-14 |
| A3.03 | EXTERIOR ELEVATIONS / BUILDING SECTIONS | 3 | 5-23-14 |
| A3.04 | EXTERIOR ELEVATIONS / BUILDING SECTIONS | 3 | 5-23-14 |
| A3.05 | EXTERIOR ELEVATIONS / BUILDING SECTIONS | 2 | 5-23-14 |
| A3.06 | EXTERIOR ELEVATIONS / BUILDING SECTIONS | 2 | 5-23-14 |
| A4.00 | ROOM FINISH SCHEDULES | 2 | 5-23-14 |
| A4.01 | DOOR SCHEDULES | 3 | 5-23-14 |
| A4.02 | WINDOW SCHEDULES | 2 | 5-23-14 |
| A4.03 | DOOR / WINDOW DETAILS | 3 | 5-23-14 |
| A4.04 | DOOR / WINDOW DETAILS | 2 | 3-28-14 |
| A5.00 | TYPICAL FLOOR / ROOF / WALL ASSEMBLIES | 2 | 3-28-14 |
| A5.01 | WALL SECTIONS & DETAILS | 2 | 3-28-14 |

U:\1 Resort Development\OCR\29001C01 - Ocean Club\2 PLANS & SPECS\Issuances\14 05 23 Addendum
3\Dwg List-Addendum #3-5-23-14.doc
Silverleaf Ocean Club Building #/1

3 of 10

DRAWING LIST
**SILVERLEAF RESORTS, INC.**
*Ocean Club 29001C01*
*Galveston, Texas*

ADDENDUM 3:   DATE: MAY 23, 2014

| Sheet No. | Sheet Name | Rev. # | Date |
|---|---|---|---|
| A5.02 | WALL SECTIONS & DETAILS | 3 | 5-23-14 |
| A5.03 | WALL SECTIONS & DETAILS | 3 | 5-23-14 |
| A5.04 | WALL SECTIONS & DETAILS | 3 | 5-23-14 |
| A5.05 | WALL SECTIONS & DETAILS | 2 | 5-23-14 |
| A5.06 | WALL SECTIONS & DETAILS | 2 | 5-23-14 |
| A5.07 | WALL SECTIONS & DETAILS | 2 | 3-28-14 |
| A5.08 | WALL SECTIONS & DETAILS | 2 | 3-28-14 |
| A5.09 | WALL SECTIONS & DETAILS | 2 | 3-28-14 |
| A5.10 | WALL SECTIONS & DETAILS | 3 | 5-23-14 |
| A5.11 | WALL SECTIONS & DETAILS | 3 | 5-23-14 |
| A5.12 | WALL SECTIONS & DETAILS | 1 | 2-7-14 |
| A5.20 | FLASHING DETAILS | 1 | 2-7-14 |
| A5.21 | ROOF DETAILS | 1 | 3-28-14 |
| A6.01 | STAIR SECTIONS & DETAILS | 3 | 5-23-14 |
| A6.02 | STAIR SECTIONS & DETAILS | 3 | 5-23-14 |
| A6.03 | STAIR SECTIONS & DETAILS | 3 | 5-23-14 |
| A6.04 | STAIR / ELEVATOR SECTIONS & DETAILS | 2 | 5-23-14 |
| A6.05 | STAIR / ELEVATOR SECTIONS & DETAILS | 3 | 5-23-14 |
| A6.06 | STAIR / ELEVATOR SECTIONS & DETAILS | 1 | 2-7-14 |
| A6.07 | STAIR / ELEVATOR SECTIONS & DETAILS | 1 | 5-23-14 |
| A6.08 | STAIR / ELEVATOR SECTIONS & DETAILS | 2 | 5-23-14 |
| A6.09 | STAIR / ELEVATOR SECTIONS & DETAILS | 2 | 5-23-14 |
| A6.10 | STAIR / ELEVATOR SECTIONS & DETAILS | 2 | 5-23-14 |
| A7.10 | TYPICAL UNIT INTERIOR ELEVATIONS | 2 | 5-23-14 |
| A7.11 | TYPICAL UNIT INTERIOR ELEVATIONS | 2 | 5-23-14 |
| A7.12 | TYPICAL UNIT INTERIOR ELEVATIONS | 1 | 2-7-14 |
| A7.13 | COMMON AREA INTERIOR ELEVATIONS | 1 | 2-7-14 |
| A7.14 | COMMON AREA INTERIOR ELEVATIONS | 1 | 2-7-14 |
| A7.15 | COMMON AREA INTERIOR ELEVATIONS | 3 | 5-23-14 |
| A7.16 | COMMON AREA INTERIOR ELEVATIONS | 1 | 2-7-14 |
| A7.17 | COMMON AREA INTERIOR ELEVATIONS | 2 | 5-23-14 |
| A7.18 | COMMON AREA INTERIOR ELEVATIONS | 2 | 5-23-14 |
| A7.19 | COMMON AREA INTERIOR ELEVATIONS | 1 | 2-7-14 |
| A7.25 | APPLIANCE & ACCESSORY SCHEDULE | 1 | 2-7-14 |
| A8.00 | INTERIOR DETAILS | 1 | 2-7-14 |

U:\1 Resort Development\OCR\29001C01 - Ocean Club\2 PLANS & SPECS\Issuances\14 05 23 Addendum
3\Dwg List-Addendum #3-5-23-14.doc
**Silverleaf Ocean Club Building #/1**

DRAWING LIST
**SILVERLEAF RESORTS, INC.**
*Ocean Club 29001C01*
*Galveston, Texas*

ADDENDUM 3:  DATE: MAY 23, 2014

| Sheet No. | Sheet Name | Rev. # | Date |
|---|---|---|---|
| A8.01 | INTERIOR DETAILS | 2 | 3-28-14 |
| A8.10 | PLUMBING FIXTURE SPECS | 1 | 2-7-14 |
| A8.11 | PLUMBING FIXTURE SPECS | 1 | 2-7-14 |
|  |  |  |  |
| **STRUCTURAL:  BY STERLING DESIGN GROUP** |  |  |  |
| S0.00 | DESIGN CRITERIA |  | 11-25-13 |
| S0.01 | GENERAL NOTES | 1 | 3-28-14 |
| S0.01A | GENERAL NOTES | 1 | 3-28-14 |
| S0.02 | WIND PRESSURE ON COMPANENTS & CLADDING | 1 | 2-7-14 |
| S1.00 | OVERALL FOUNDATION PLAN | 2 | 5-23-14 |
| S1.01 | PARTIAL FOUNDATION PLAN – GROUND FLOOR | 2 | 5-23-14 |
| S1.02 | PARTIAL FOUNDATION PLAN – GROUND FLOOR | 2 | 5-23-14 |
| S1.03 | PARTIAL FOUNDATION PLAN – GROUND FLOOR | 3 | 5-23-14 |
| S1.10 | OVERALL FRAMING PLAN– FIRST FLOOR | 3 | 5-23-14 |
| S1.10R | OVERALL REINFORCEMENT PLAN – FIRST FLOOR | 1 | 2-7-14 |
| S1.10T | OVERALL TENDON PLAN – FIRST FLOOR | 1 | 2-7-14 |
| S1.11 | PARTIAL FRAMING PLAN – FIRST FLOOR | 3 | 5-23-14 |
| S1.11R | PARTIAL REINFORCMENT PLAN – FIRST FLOOR | 1 | 2-7-14 |
| S1.11T | PARTIAL TENDON PLAN – FIRST FLOOR | 1 | 2-7-14 |
| S1.12 | PARTIAL FRAMING PLAN – FIRST FLOOR | 3 | 5-23-14 |
| S1.12R | PARTIAL REINFORCMENT PLAN – FIRST FLOOR | 1 | 2-7-14 |
| S1.12T | PARTIAL TENDON PLAN – FIRST FLOOR | 1 | 2-7-14 |
| S1.13 | PARTIAL FRAMING PLAN – FIRST FLOOR | 3 | 5-23-14 |
| S1.13R | PARTIAL REINFORCMENT PLAN – FIRST FLOOR | 1 | 2-7-14 |
| S1.13T | PARTIAL TENDON PLAN – FIRST FLOOR | 1 | 2-7-14 |
| S1.14A | POOL FRAMING, TENDON & REINFORCEMENT PLAN | 1 | 2-7-14 |
| S1.14B | POOL FRAMING, TENDON & REINFORCEMENT PLAN | 1 | 2-7-14 |
| S1.20 | FOUNDATION DETAILS | 2 | 3-28-14 |
| S1.20A | FOUNDATION DETAILS | 2 | 3-28-14 |
| S1.20B | FOUNDATION DETAILS | NEW | 3-28-14 |
| S1.21 | ELEVATED CONCRETE DETAILS | 2 | 3-28-14 |
| S2.11 | PARTIAL FRAMING PLAN – SECOND FLOOR | 3 | 5-23-14 |
| S2.12 | PARTIAL FRAMING PLAN – SECOND FLOOR | 3 | 5-23-14 |
| S2.13 | PARTIAL FRAMING PLAN – SECOND FLOOR | 3 | 5-23-14 |
| S2.21 | PARTIAL FRAMING PLAN – THIRD FLOOR | 3 | 5-23-14 |

U:\1 Resort Development\OCR\29001C01 - Ocean Club\2 PLANS & SPECS\Issuances\14 05 23 Addendum 3\Dwg List-Addendum #3-5-23-14.doc
Silverleaf Ocean Club Building #/1

5 of 10

DRAWING LIST
**SILVERLEAF RESORTS, INC.**
*Ocean Club 29001C01*
*Galveston, Texas*

ADDENDUM 3:   DATE: MAY 23, 2014

| Sheet No. | Sheet Name | Rev. # | Date |
|-----------|------------|--------|------|
| S2.22 | PARTIAL FRAMING PLAN – THIRD FLOOR | 3 | 5-23-14 |
| S2.23 | PARTIAL FRAMING PLAN – THIRD FLOOR | 3 | 5-23-14 |
| S2.31 | PARTIAL FRAMING PLAN – FOURTH FLOOR | 3 | 5-23-14 |
| S2.32 | PARTIAL FRAMING PLAN – FOURTH FLOOR | 2 | 3-28-14 |
| S2.33 | PARTIAL FRAMING PLAN – FOURTH FLOOR | 3 | 5-23-14 |
| S3.11 | PARTIAL SHEARWALL PLAN – FIRST FLOOR | 1 | 3-28-14 |
| S3.12 | PARTIAL SHEARWALL PLAN – FIRST FLOOR | 1 | 3-28-14 |
| S3.13 | PARTIAL SHEARWALL PLAN – FIRST FLOOR | 1 | 3-28-14 |
| S3.21 | PARTIAL SHEARWALL PLAN – SECOND FLOOR | 1 | 3-28-14 |
| S3.22 | PARTIAL SHEARWALL PLAN – SECOND FLOOR | 1 | 3-28-14 |
| S3.23 | PARTIAL SHEARWALL PLAN – SECOND FLOOR | 1 | 3-28-14 |
| S3.31 | PARTIAL SHEARWALL PLAN – THIRD FLOOR | 1 | 3-28-14 |
| S3.32 | PARTIAL SHEARWALL PLAN – THIRD FLOOR | 1 | 3-28-14 |
| S3.33 | PARTIAL SHEARWALL PLAN – THIRD FLOOR | 1 | 3-28-14 |
| S3.41 | PARTIAL SHEARWALL PLAN – FOURTH FLOOR | 1 | 3-28-14 |
| S3.42 | PARTIAL SHEARWALL PLAN – FOURTH FLOOR | 1 | 3-28-14 |
| S3.43 | PARTIAL SHEARWALL PLAN – FOURTH FLOOR | 1 | 3-28-14 |
| S4.11 | PARTIAL FRAMING PLAN – ROOF | 1 | 3-28-14 |
| S4.12 | PARTIAL FRAMING PLAN – ROOF | 1 | 3-28-14 |
| S4.13 | PARTIAL FRAMING PLAN – ROOF | 1 | 3-28-14 |
| S5.1A | DESIGN CRITERIA – STAIR DETAILS | 1 | 5-23-14 |
| S5.1B | DESIGN CRITERIA – STAIR DETAILS | 1 | 5-23-14 |
| S5.1C | DESIGN CRITERIA – STAIR DETAILS | 1 | 5-23-14 |
| S5.11 | DESIGN CRITERIA | 1 | 3-28-14 |
| S5.11A | DESIGN CRITERIA | 2 | 3-28-14 |
| S5.12 | DESIGN CRITERIA | 1 | 3-28-14 |
| S6.13 | PT BEAM ELEVATION | 1 | 2-7-14 |
| S6.14 | PT BEAM ELEVATION | 1 | 2-7-14 |
| S6.15 | RB ELEVATION | 1 | 2-7-14 |
| S6.16 | RB ELEVATION | 1 | 2-7-14 |
| S6.17 | RB ELEVATION | 1 | 2-7-14 |
| S6.18 | DUCTWORK COORDINATIOM | 1 | 2-7-14 |
| S7.01 | FOUNDATION SECTION / DETAILS | | 11-25-13 |
| S7.02 | FOUNDATION SECTION / DETAILS | | 11-25-13 |
| S7.02A | CONCRETE STANDARD DETAILS | NEW | 3-28-14 |

DRAWING LIST
SILVERLEAF RESORTS, INC.
*Ocean Club 29001C01*
*Galveston, Texas*

ADDENDUM 3:   DATE: MAY 23, 2014

| Sheet No. | Sheet Name | Rev. # | Date |
|---|---|---|---|
| S7.02B | CONCRETE STANDARD DETAILS | NEW | 3-28-14 |
| S7.02C | CONCRETE STANDARD DETAILS | NEW | 3-28-14 |
| S7.03 | FOUNDATION SECTION / DETAILS | | 11-25-13 |
| S7.04 | SHEARWALL SECTION / DETAILS | 2 | 3-28-14 |
| S7.05 | GENERAL STEEL DETAILS | 1 | 3-28-14 |
| | | | |
| **MECHANICAL / PLUMBING:  BY PHA CONSULTING ENGINEERS** | | | |
| MP1.01 | MECH / PLUMBING GROUND FLOOR PLAN – AREA A | 1 | 2-7-14 |
| MP1.02 | MECH / PLUMBING GROUND FLOOR PLAN – AREA B | 2 | 3-28-14 |
| MP1.03 | MECH / PLUMBING FIRST FLOOR PLAN – AREA A | | 11-25-13 |
| MP1.04 | MECH / PLUMBING FIRST FLOOR PLAN – AREA B | 1 | 3-28-14 |
| MP1.05 | MECH / PLUMBING FIRST FLOOR PLAN – AREA A (SEWER CEILING PLAN) | 1 | 2-7-14 |
| MP1.06 | MECH / PLUMBING FIRST FLOOR PLAN – AREA B (SEWER CEILING PLAN) | 2 | 3-28-14 |
| MP1.07 | MECH / PLUMBING SECOND FLOOR PLAN – AREA A | | 11-25-13 |
| MP1.08 | MECH / PLUMBING SECOND FLOOR PLAN – AREA B | | 11-25-13 |
| MP1.09 | MECH / PLUMBING SECOND FLOOR PLAN – AREA A (SEWER CEILING PLAN) | | 11-25-13 |
| MP1.10 | MECH / PLUMBING SECOND FLOOR PLAN – AREA B (SEWER CEILING PLAN) | | 11-25-13 |
| MP1.11 | MECH / PLUMBING THIRD FLOOR PLAN – AREA A | | 11-25-13 |
| MP1.12 | MECH / PLUMBING THIRD FLOOR PLAN – AREA B | | 11-25-13 |
| MP1.13 | MECH / PLUMBING FOURTH FLOOR PLAN – AREA A | 1 | 2-7-14 |
| MP1.14 | MECH / PLUMBING FOURTH FLOOR PLAN – AREA B | 1 | 2-7-14 |
| MP1.15 | MECH / PLUMBING ROOF PLAN – AREA A | 2 | 3-28-14 |
| MP1.16 | MECH / PLUMBING ROOF PLAN – AREA B | 2 | 3-28-14 |
| | | | |
| **MECHANICAL:  BY PHA CONSULTING ENGINEERS** | | | |
| M2.01 | MECH FIRST FLOOR – ENLARGED PUBLIC AREA | 1 | 2-7-14 |
| M2.02 | MECH SECOND FLOOR – ENLARGED PUBLIC AREA | | 11-25-13 |
| M2.03 | MECH THIRD FLOOR – ENLARGED PUBLIC AREA | | 11-25-13 |
| M3.01 | MECH UNIT PLANS – 1ST, 2ND, 3RD & 4TH FLOORS | | 11-25-13 |
| M4.01 | MECH DETAILS | 1 | 2-7-14 |
| M4.02 | MECH DETAILS | 1 | 2-7-14 |
| M4.03 | MECH BUILDING LOADS & SCHEDULES | 2 | 3-28-14 |

U:\1 Resort Development\OCR\29001C01 - Ocean Club\2 PLANS & SPECS\Issuances\14 05 23 Addendum 3\Dwg List-Addendum #3-5-23-14.doc
Silverleaf Ocean Club Building #/1

7 of 10

DRAWING LIST
SILVERLEAF RESORTS, INC.
Ocean Club 29001C01
Galveston, Texas

ADDENDUM 3:   DATE: MAY 23, 2014

| Sheet No. | Sheet Name | Rev. # | Date |
|---|---|---|---|
| | | | |
| **PLUMBING:  BY PHA CONSULTING ENGINEERS** | | | |
| P3.01 | PLUMBING – UNIT PLAN | | 11-25-13 |
| P4.01 | PLUMBING SCHEDULES AND LOADS | 1 | 2-7-14 |
| P4.02 | PLUMBING DETAILS | 1 | 3-28-14 |
| P4.03 | PLUMBING DOMESTIC WATER RISERS | | 11-25-13 |
| P4.04 | PLUMBING SEWER RISERS | | 11-25-13 |
| | | | |
| **ELECTRICAL:  BY PHA CONSULTING ENGINEERS** | | | |
| E0.01 | ELECTRICAL SITE PLAN – PHOTOMETRIC PLAN | | 11-25-13 |
| E1.01 | ELECTRICAL GROUND FLOOR PLAN – AREA A | 3 | 5-23-14 |
| E1.02 | ELECTRICAL GROUND FLOOR PLAN – AREA B | 3 | 5-23-14 |
| E1.03 | ELECTRICAL FIRST FLOOR PLAN – AREA A | 1 | 2-7-14 |
| E1.04 | ELECTRICAL FIRST FLOOR PLAN – AREA B | 1 | 2-7-14 |
| E1.05 | ELECTRICAL SECOND FLOOR PLAN – AREA A | 1 | 2-7-14 |
| E1.06 | ELECTRICAL SECOND FLOOR PLAN – AREA B | 1 | 2-7-14 |
| E1.07 | ELECTRICAL THIRD FLOOR PLAN – AREA A | 1 | 2-7-14 |
| E1.08 | ELECTRICAL THIRD FLOOR PLAN – AREA B | 1 | 2-7-14 |
| E1.09 | ELECTRICAL FOURTH FLOOR PLAN – AREA A | 2 | 5-23-14 |
| E1.10 | ELECTRICAL FOURTH FLOOR PLAN – AREA B | 2 | 5-23-14 |
| E2.01 | ELECTRICAL FIRST FLOOR –PUBLIC AREAS - LIGHTING | | 11-25-13 |
| E2.02 | ELECTRICAL FIRST FLOOR –PUBLIC AREAS - POWER | 3 | 5-23-14 |
| E2.03 | ELECTRICAL SECOND FLOOR –PUBLIC AREAS – LIGHTING & POWER | 1 | 3-28-14 |
| E2.04 | ELECTRICAL THIRD FLOOR –PUBLIC AREAS –LIGHTING & POWER | 1 | 3-28-14 |
| E3.01 | ELECTRICAL – UNIT PLANS | 2 | 3-28-14 |
| E4.01 | ELECTRICAL – UNIT PANELS AND LIGHT SCHEDULE | 2 | 3-28-14 |
| E4.02 | ELECTRICAL – BUILDING LOADS AND PANELS (HDP, HP1, HP2, HP3) | 2 | 5-23-14 |
| E4.03 | ELECTRICAL – PANELS (HP4, HP5, HP6, LS) | 1 | 5-23-14 |
| E4.04 | ELECTRICAL – PANELS (A1, A2, AM1, AM2) | 2 | 3-28-14 |
| E4.05 | ELECTRICAL – PANELS (EL1, EL2, EL3, P) | | 11-25-13 |
| E4.06 | ELECTRICAL – RISER DIAGRAM  & ELEVATOR NOTES | 1 | 2-7-14 |
| E4.07 | ELECTRICAL – DETAILS AND SYMBOLS | | 11-25-13 |
| E4.08 | ELECTRICAL – DETAILS & PENETRATION DETAILS | 1 | 2-7-14 |

U:\1 Resort Development\OCR\29001C01 - Ocean Club\2 PLANS & SPECS\Issuances\14 05 23 Addendum 3\Dwg List-Addendum #3-5-23-14.doc
**Silverleaf Ocean Club Building #1**

8 of 10

DRAWING LIST
SILVERLEAF RESORTS, INC.
*Ocean Club 29001C01*
*Galveston, Texas*

ADDENDUM 3:  DATE: MAY 23, 2014

| Sheet No. | Sheet Name | Rev. # | Date |
|---|---|---|---|
| | | | |
| **FIRE ALARM & FIRE PROTECTION:  BY HUGHES ASSOCIATES, INC.** | | | |
| FP.0 | FIRE PROTECTION NOTES AND SCHEDULES | 1 | 2-7-14 |
| FP.1 | FIRE PROTECTION PLAN – GROUND FLOOR - COMPOSITE | 1 | 2-7-14 |
| FP.2 | FIRE PROTECTION PLAN – FIRST FLOOR - COMPOSITE | 1 | 2-7-14 |
| FP.3 | FIRE PROTECTION PLAN – SECOND FLOOR - COMPOSITE | 1 | 2-7-14 |
| FP.4 | FIRE PROTECTION PLAN – THIRD FLOOR - COMPOSITE | 1 | 2-7-14 |
| FP.5 | FIRE PROTECTION PLAN – FOURTH FLOOR - COMPOSITE | 1 | 2-7-14 |
| FP.6 | FIRE PROTECTION DETAILS | | 11-25-13 |
| FA.0 | FIRE ALARM RISER AND SEQUENCE OF OPERATION | 1 | 3-28-14 |
| FA.1 | FIRE ALARM GROUND FLOOR PLAN | | 11-25-13 |
| FA.2 | FIRE ALARM FIRST FLOOR PLAN | 1 | 2-7-14 |
| FA.3 | FIRE ALARM SECOND FLOOR PLAN | | 11-25-13 |
| FA.4 | FIRE ALARM THIRD FLOOR PLAN | 1 | 2-7-14 |
| FA.5 | FIRE ALARM FOURTH FLOOR PLAN | | 11-25-13 |
| | | | |
| **POOL:  BY COUNSELMAN-HUNSACKER CONSULTANTS** | | | |
| SP0.0 | POOL REFERENCE PLAN | | 11-25-13 |
| SP1.00 | LEISURE POOL PLAN | | 11-25-13 |
| SP1.01 | LEISURE POOL SECTION | | 11-25-13 |
| SP1.02 | LEISURE POOL DETAILS | | 11-25-13 |
| SP1.03 | LEISURE POOL DETAILS | 1 | 2-7-14 |
| SP2.00 | SPA PLAN AND SECTION | 1 | 2-7-14 |
| SP2.01 | SPA DETAILS | | 11-25-13 |
| SP2.02 | POOL DETAILS | | 11-25-13 |
| SP3.00 | LEISURE POOL LOCATION POINT PLAN | | 11-25-13 |
| SP3.01 | SPA LOCATION POINT PLAN | | 11-25-13 |
| SP4.00 | POOL PIPING PLAN | | 11-25-13 |
| SP4.01 | SPA PIPING PLAN | | 11-25-13 |
| SP5.00 | POOL MECHANICAL ROOM PLAN AND NOTES | | 11-25-13 |
| SP5.01 | POOL BALANCE TANK PLAN & SECTIONS | | 11-25-13 |
| SP5.02 | POOL MECHANICAL DETAILS | | 11-25-13 |
| SP5.03 | POOL MECHANICAL DETAILS | | 11-25-13 |
| SP5.04 | POOL MECHANICAL DETAILS | | 11-25-13 |

**DRAWING LIST**
**SILVERLEAF RESORTS, INC.**
*Ocean Club 29001C01*
*Galveston, Texas*

**ADDENDUM 3:  DATE: MAY 23, 2014**

| Sheet No. | Sheet Name | Rev. # | Date |
|-----------|------------|--------|------|
| SP5.05 | POOL MECHANICAL DETAILS | | 11-25-13 |
| SP5.06 | POOL MECHANICAL DETAILS | | 11-25-13 |
| SP6.00 | POOL SYSTEM SCHEMATICS | | 11-25-13 |
| SP6.01 | SPA SYSTEM SCHEMATICS | | 11-25-13 |
| SP7.00 | POOL STRUCTURAL PLAN | 1 | 2-7-14 |
| SP7.01 | SPA STRUCTURAL DETAILS | 1 | 2-7-14 |
| SP7.02 | POOL STRUCTURAL DETAILS | 1 | 2-7-14 |
| SP7.03 | POOL STRUCTURAL DETAILS | 1 | 2-7-14 |
| | | | |

SPECIFICATION LIST
**SILVERLEAF RESORTS, INC.**
*Ocean Club 29001C01*
*Galveston, Texas*

**ADDENDUM 3:   DATE: MAY 23, 2014**

| Section No. | Description | Rev. # | Date |
|---|---|---|---|
| **GENERAL** | | | |
| T.O.C. | Table of Contents | 3 | 5-23-14 |
| Notice | Notice N1-N2 | | 11-25-13 |
| ITB | Instruction to Bidders | | 11-25-13 |
| Exhibit E | Insurance Requirements | | 11-25-13 |
| 00005 | Project Directory | 1 | 5-23-14 |
| **Division 1- General Requirements** | | | |
| 01010 | Summary of Work | | 11-25-13 |
| 01011 | Design Criteria | | 11-25-13 |
| 01016 | Contractors Use of Premises | | 11-25-13 |
| 01041 | Project Coordination | | 11-25-13 |
| 01090 | Reference Standards | | 11-25-13 |
| 01300 | Submittals | | 11-25-13 |
| 01400 | Quality Control | | 11-25-13 |
| 01410 | Testing Laboratory Services | | 11-25-13 |
| 01500 | Construction Facilities and Temporary Controls | | 11-25-13 |
| 01600 | Material and Equipment | | 11-25-13 |
| 01700 | Cleaning, Adjustments, & Systems Demonstrations | | 11-25-13 |
| **Division 2 - Sitework** | | | |
| 02010 | Geotechnical Report | | 11-25-13 |
| 02050 | Demolition | | 11-25-13 |
| 02161 | Trench Safety | | 11-25-13 |
| 02200 | Excavation, Backfilling and Compacting | | 11-25-13 |
| 02233 | Clearing and Grubbing | | 11-25-13 |
| 02252 | Cement Stabilized Sand | | 11-25-13 |
| 02521 | Concrete Paving | | 3-28-14 |
| 02600 | Cast-in-Place Manholes | | 11-25-13 |
| 02601 | Precast Manholes | | 11-25-13 |
| 02603 | Frames Grates Rings and Covers | | 11-25-13 |
| 02664 | Water Distribution Mains | | 11-25-13 |
| 02675 | Disinfection of Water Lines | | 11-25-13 |
| 02720 | Storm Sewers | | 11-25-13 |
| 02730 | Gravity Sanitary Sewers | | 11-25-13 |
| 02731 | Sanitary Sewer Force Main | | 11-25-13 |

U:\1 Resort Development\OCR\29001C01 - Ocean Club\2 PLANS & SPECS\Issuances\14 05 23 Addendum 3\04 Spec List-Addendum #3-5-23-14.doc
**Silverleaf Ocean Club Building #1**

1 of 5

SPECIFICATION LIST
SILVERLEAF RESORTS, INC.
*Ocean Club 29001C01*
*Galveston, Texas*

ADDENDUM 3:   DATE: MAY 23, 2014

| Section No. | Description | Rev. # | Date |
|---|---|---|---|
| 02822 | Ornamental Fencing and Gates | 1 | 2-7-14 |
| **Division 3 - Concrete** | | | |
| 03001 | Concrete (Site) | 1 | 3-28-14 |
| 03100 | Concrete Formwork | | 3-28-14 |
| 03210 | Reinforcing Steel | | 3-28-14 |
| 03300 | Cast-in-Place Concrete | | 3-28-14 |
| 03530 | Concrete Topping | | 3-28-14 |
| 03559 | Penetrating Colloidal Concrete Treatment | | 3-28-14 |
| **Division 4 – Masonry** | | | |
| 04200 | Unit Masonry | | 11-25-13 |
| 04731 | Quartz Surface Fabrications | | 11-25-13 |
| **Division 5 – Metal** | | | |
| 05410 | Cold-Formed Metal Framing | | 11-25-13 |
| 05500 | Metal Fabrications | | 11-25-13 |
| 05510 | Prefabricated Metal Stairs | | 11-25-13 |
| 05513 | Alternating Tread Aluminum Stairs | 1 | 2-7-14 |
| 05720 | Handrails and Guardrails | 3 | 5-23-14 |
| **Division 6 – Wood and Plastics** | | | |
| 06050 | Framing Carpentry | | 11-25-13 |
| 06200 | Finish Carpentry | | 11-25-13 |
| 06410 | Cabinets | | 11-25-13 |
| 06650 | Cultured Marble | | 11-25-13 |
| **Division 7 – Thermal and Moisture Protection** | | | |
| 07110 | Sheet Membrane Waterproofing | 1 | 2-7-14 |
| 07141 | Cold Fluid – Applied Waterproofing | 1 | 2-7-14 |
| 07210 | Insulation | | 11-25-13 |
| 07218 | Spray Foam Insulation | 1 | 2-7-14 |
| 07540 | Thermoplastic (TPO) Membrane Roofing | 2 | 3-28-14 |
| 07610 | Metal Roofing | 1 | 2-7-14 |
| 07710 | Gutters and Downspouts | | 11-25-13 |
| 07900 | Joint Sealants | 1 | 2-7-14 |
| 07950 | Expansion Control | | 11-25-13 |
| **Division 8 – Doors and Windows** | | | |
| 08100 | Steel Doors and Frames | 1 | 2-7-14 |

SPECIFICATION LIST
**SILVERLEAF RESORTS, INC.**
*Ocean Club 29001C01*
*Galveston, Texas*

ADDENDUM 3:   DATE: MAY 23, 2014

| Section No. | Description | Rev. # | Date |
|---|---|---|---|
| 08150 | Fiberglass and Composite Wood Doors and Frames | 1 | 2-7-14 |
| 08321 | Sliding Aluminum-Framed Glass Doors | | 11-25-13 |
| 08330 | Rolling Counter Doors | | 11-25-13 |
| 08410 | Aluminum Entrances and Storefront | | 11-25-13 |
| 08441 | Glazed Aluminum Curtainwall | 1 | 2-7-14 |
| 08500 | Vinyl Windows | | 5-23-14 |
| 08520 | Aluminum Windows | 1 | 2-7-14 |
| 08710 | Door Hardware | 2 | 3-28-14 |
| 08800 | Glazing | 1 | 2-7-14 |
| **Division 9 – Finishes** | | | |
| 09221 | Portland Cement Stucco | 2 | 3-28-14 |
| 09260 | Gypsum Board | | 2-7-14 |
| 09300 | Tile Floor | | 11-25-13 |
| 09307 | Tile Wall | | 11-25-13 |
| 09550 | Wood Flooring | | 11-25-13 |
| 09650 | Rubber Flooring | | 11-25-13 |
| 09687 | Carpet | | 5-23-14 |
| 09900 | Painting | | 11-25-13 |
| **Division 10 – Specialties** | | | |
| 10155 | Toilet Compartments | | 11-25-13 |
| 10731 | Aluminum Framing Systems | 2 | 3-28-14 |
| 10732 | Cabanas | 2 | 3-28-14 |
| 10800 | Toilet Room Accessories | | 11-25-13 |
| 10916 | Shelving Systems | | 11-25-13 |
| **Division 11 – Equipment** | | | |
| 11452 | Residential Appliances | | 11-25-13 |
| **Division 12 – Furnishings** | | | |
| | Not Used | | |
| **Division 13 – Special Construction** | | | |
| 13150 | Swimming Pools | | 11-25-13 |
| 13151 | Swimming Pool Cast-In-Place Concrete | | 11-25-13 |
| 13152 | Swimming Pool Shotcrete | | 11-25-13 |
| 13153 | Swimming Pool Cementitious Finish | | 11-25-13 |
| 13154 | Swimming Pool Tile | | 11-25-13 |

SPECIFICATION LIST
**SILVERLEAF RESORTS, INC.**
*Ocean Club 29001C01*
*Galveston, Texas*

ADDENDUM 3:   DATE: MAY 23, 2014

| Section No. | Description | Rev. # | Date |
|---|---|---|---|
| **Division 14 – Conveying Systems** | | | |
| 14210 | Gear Traction Elevators | 2 | 3-28-14 |
| **Division 15 – Mechanical** | | | |
| 15010 | Supplementary Mechanical Provisions | | 11-25-13 |
| 15100 | Basic Materials and Methods | | 11-25-13 |
| 15109 | Lift Station Pumps and Controls | | 11-25-13 |
| 15180 | Insulation | | 11-25-13 |
| 15200 | Domestic Water | | 11-25-13 |
| 15300 | Sanitary Waste | | 11-25-13 |
| 15400 | Plumbing | | 11-25-13 |
| 15500 | Fire Protection | 1 | 2-7-14 |
| 15650 | Refrigeration | | 11-25-13 |
| 15700 | Fan Coil Units | | 11-25-13 |
| 15735 | Packaged Roof Top Air Conditioning Units | | 11-25-13 |
| 15800 | Air Distribution | | 11-25-13 |
| 15850 | System Testing and Balancing | | 11-25-13 |
| 15900 | Temperature Controls | | 11-25-13 |
| **Division 16 – Electrical** | | | |
| 16010 | Supplementary Electrical Provisions | | 11-25-13 |
| 16110 | Raceways and Fittings | | 11-25-13 |
| 16111 | Conduits | | 11-25-13 |
| 16112 | Surface Raceways | | 11-25-13 |
| 16120 | Wire and Cable | | 11-25-13 |
| 16121 | Wire Connections and Devices | | 11-25-13 |
| 16131 | Junction and Pull Boxes | | 11-25-13 |
| 16133 | Cabinets | | 11-25-13 |
| 16134 | Outlet Boxes | | 11-25-13 |
| 16140 | Wiring Devices | | 11-25-13 |
| 16150 | Motors and Electric Powered Equipment | | 11-25-13 |
| 16160 | Panelboards | | 11-25-13 |
| 16170 | Motors and Circuit Disconnects | | 11-25-13 |
| 16181 | Fuses | | 11-25-13 |
| 16190 | Supporting Devices | | 11-25-13 |
| 16195 | Electrical Identification | | 11-25-13 |

**SPECIFICATION LIST**
**SILVERLEAF RESORTS, INC.**
*Ocean Club 29001C01*
*Galveston, Texas*

**ADDENDUM 3:  DATE: MAY 23, 2014**

| Section No. | Description | Rev. # | Date |
|---|---|---|---|
| 16402 | Underground Electric Service | | 11-25-13 |
| 16450 | Grounding | | 11-25-13 |
| 16491 | Disconnect Switches | | 11-25-13 |
| 16500 | Lighting | | 11-25-13 |
| 16550 | Lighting Control Equipment | | 11-25-13 |
| 16721 | Fire Alarm and Detection Systems | 1 | 3-28-14 |
| 16740 | Telephone and Communication/TV Cable System | | 11-25-13 |
| 16900 | Controls and Instrumentation | | 11-25-13 |

U:\1 Resort Development\OCR\29001C01 - Ocean Club\2 PLANS & SPECS\Issuances\14 05 23 Addendum 3\04 Spec List-Addendum #3-5-23-14.doc
**Silverleaf Ocean Club Building #1**

5 of 5



SILVERLEAF
RESORTS

EXHIBIT "D"

DESCRIPTION OF
DIVISION 1000 COSTS

GENERAL CONDITIONS

The General Conditions shall include but not be limited to the following:

1.  Owner requirements for Worker's Comp, General Liability, and Auto Insurance (Exhibit E)
2.  Project superintendent
3.  Job site trailer with telephone and data.
4.  Building trash collection and disposal
5.  Safety program including notices, emergency numbers, and first aid supplies
6.  Temporary utilities provided and installed by GC, paid for by Owner
7.  GC related consumables, small tools and office supplies
8.  Clean up and final clean of rooms prior to acceptance by Owner
9.  All general office and job related expenses and travel, including cell phones and lodging
10. All salaries, taxes, and insurance for all GC employees
11. All items required by OSHA for the project
12. Maintaining SWPPP required items, including silt fence
13. Any and all signs required by code, including OSHA, AHJ, fire marshal, etc.
14. Building Security if required.  Property not responsible for Building Security; site lighting as related to security, if required



SILVERLEAF
R E S O R T S

**EXHIBIT "E"**
**INSURANCE REQUIREMENTS**

## GENERAL LIABILITY:

| | |
|---|---|
| GENERAL AGGREGATE | $2,000,000 |
| COMPLETED OPERATIONS | $2,000,000 |
| PERSONAL INJURY | $1,000,000 |
| EACH OCCURRENCE | $1,000,000 |
| FIRE DAMAGE (Any One Fire) | $50,000 |
| MEDICAL EXPENSES (Any One Person) | $5,000 |

## AUTOMOBILE LIABILITY:

| | |
|---|---|
| COMBINED SINGLE LIMIT | $1,000,000 |

## UMBRELLA LIABILITY:

| | |
|---|---|
| EACH OCCURRENCE | $3,000,000 |
| AGGREGATE | $3,000,000 |

## WORKERS COMPENSATION:

**PART I – WORKERS COMP BENEFITS**          Statutory Limits

**PART II – EMPLOYERS LIABILITY**

Each Accident $500,000
Disease Limit $500,000
Disease Each Employee $500,000

## BUILDER'S RISK:

N/A

## ADDITIONAL REQUIREMENTS:

1  The required insurance certificate shall name **SILVERLEAF RESORTS, Inc.** and **SILVERLEAF CLUB as** additional insured.

2  The Contractor shall provide certificates of insurance in compliance with the above requirements to the offices of **SILVERLEAF RESORTS, Inc.,** 1221 River Bend Drive, Suite 120, Dallas, Texas 75247, to the attention of **Bernie Sonnet** prior to submittal of first contractor's application and certificate for payment. **Failure to submit insurance certificate in a timely manner will result in a delay to draw request.**

3  If Contractor does not procure protection for Employee work related injury, Contractor agrees to indemnify and hold harmless **SILVERLEAF RESORTS, Inc.** and **SILVERLEAF CLUB**.

# EXHIBIT F

## INSTRUCTIONS FOR PAYOUT AUTHORIZATION FORM

The PAYOUT AUTHORIZATION FORM (PAF) shall function as follows:

1.      The General Contractor (GC) must submit the PAF with each Request for Payment. Failure to submit this form with the Request will result in the complete package being returned to the GC. All information requested on the PAF must be completed by the GC prior to submittal.

2.      The GC is responsible for the information that is included on the form and must verify that all information required is accurate and complete and that:

   a.      The amount requested by the GC on behalf of the Vendor matches the amount shown on the original SOV and the AIA G703. If the payment requested for a line item is partial, the total for all requests must not exceed the original SOV amount as shown or adjusted by Change Order.

   b.      The PAF must include the Payee name (Subcontractor or Vendor)

   c.      The amount requested by the GC on behalf of the Vendor or Subcontractor equals the amount of work actually done for which a payment is requested.

   d.      The cost code for the work performed must be included. If multiple cost codes are involved, each code and the amount must be listed separately.

   e.      In the case of draws for a Preferred Vendor where the amount exceeds the original SOV, the GC must submit an RFCO for the excess amount with the Draw.

3.      The GC must submit a Conditional Lien Waiver for each amount requested. SRI retains the right to verify payments to Vendors and Subcontractors, and will do so prior to approving payment on any subsequent Request for Payment.

4.      An authorized representative of the GC must sign the form.

# PAYOUT AUTHORIZATION



**SILVERLEAF**
RESORTS

Silverleaf Resorts, Inc.
1221 River Bend Drive
Dallas, TX 75247

Pay Application Date: _____

Contractor: ___T&G Constructors___

| | |
|---|---|
| Resort | OCR |
| SRI Project #: | 29001C01 |
| SRI Contract #: | 2936 |

| PRINT OR TYPE THE PAYEE BELOW | AMOUNT | CHECK ONE | | CHECK ONE | |
|---|---|---|---|---|---|
| | | SUB | MATERIAL | PARTIAL | FULL |
| PAY TO: | | | | | |
| COST CODE | | | | | |
| PAY TO: | | | | | |
| COST CODE | | | | | |
| PAY TO: | | | | | |
| COST CODE | | | | | |
| PAY TO: | | | | | |
| COST CODE | | | | | |
| PAY TO: | | | | | |
| COST CODE | | | | | |
| PAY TO: | | | | | |
| COST CODE | | | | | |
| PAY TO: | | | | | |
| COST CODE | | | | | |
| PAY TO: | | | | | |
| COST CODE | | | | | |
| PAY TO: | | | | | |
| COST CODE | | | | | |
| PAY TO: | | | | | |
| COST CODE | | | | | |
| PAY TO: | | | | | |
| COST CODE | | | | | |
| PAY TO: | | | | | |
| COST CODE | | | | | |
| PAY TO: | | | | | |
| COST CODE | | | | | |
| TOTAL AMOUNT OF DRAW | | | | | |

Submitted:



Contractor:

# EXHIBIT G

## GC Checklist for Closeout Requirements

- As-Builts
- Attic Stock
    - 09300 Tile Floor
        - 2% of each tile
    - 09900 Painting
        - Five unopened 1 gallon containers of each color and type.
    - 15500 Fire Protection
        - 2 heads of each type listed on the Fire Protection Drawings in Sprinkler Head Cabinet with wrench located in Mechanical Room
        - Include extra air dryer for the dry sprinkler system to be given to the property
    - 16500 Light Bulbs
        - 1 case of each light bulb type
- Warranties
    - 04731 Quartz Surface Fabrications
        - 10 yr against defects in materials
    - 06551 Solid Surface Fabrications
        - 10 yr against defects in materials
    - 07110 Sheet Membrane Waterproofing
        - 5 yr
    - 07141 Cold Fluid-Applied Waterproofing
        - 5 yr
    - 07460 Vinyl PVC Siding
        - 50 yr product warranty
    - 14240 Elevators
        - 1 year warranty
        - 1 year maintenance service contract
    - 15010 Supplementary Mechanical Provisions
        - 2 years
    - 15400 Water Heater
        - 5 year
- Maintenance Manuals
    - 15010 Supplementary Mechanical Provisions
- Tests/Inspections
    - 15010 Supplementary Mechanical Provisions
    - 15100 Basic Material and Methods
        - Balancing report for entire hot water system
        - Gas Air Pressure Test (if applicable)
    - 15800 Air Distribution
        - NEEB Certified Balance Test
    - Fire Alarm and Sprinkler testing
    - Fire Alarm Training
    - All A/C filters replaced at sign off
    - Electrical Reports as per Section 16010 1.12 G
- Keys
    - GC to provide key for freeze proof water hydrant at rear of building.

# Request For Information

[Insert Contractor Name]
[Insert Contractor Address]
[Insert Contractor Contact Info]

| | |
|---|---|
| Date of Issuance: | |
| Issued by: | |

| | |
|---|---|
| Owner: | **SILVERLEAF RESORTS, INC.** |
| Resort: | **Silverleaf's Ocean Club Resort** |
| Project Description: | **38 Unit Ocean Club** |
| Project Number: | **29001C01** |

| |
|---|
| **Issued to:** |
| **Attention** |
| |
| |
| |

**INFORMATION REQUESTED:**

**RESPONSE:**

**ANSWERED BY:**                                        **DATE:**



**SILVERLEAF**

# SILVERLEAF RESORTS, INC.

RESORT DEVELOPMENT
1221 RIVERBEND DRIVE
SUITE 120
DALLAS TX 75247
PH (214) 951-0962 FX (214) 630-4740

# Warranty CD Index

Following is the way the electronic warranty CD shall be assembled as part of the close out documentation for all building projects.

**Section 1:** List of all subcontractors and vendors with addresses and phone numbers plus any 24 hour contact numbers and contact names.

**Section 2:** Warranty letter stating a one full year of warranty for the complete building and dated the day of the final punch list completion and acceptance.

**Section 3:** Drawings
   a) Copy of the finish schedule sheet from the drawings.
   b) Copy of the plumbing schedule from the plumbing drawings and building load calculations for sewer and water.
   c) Copy of the electrical sheets showing the building load calculations and unit calculations.
   d) The hydraulic calculations from shop drawings for the fire sprinkler system.  Copy of sealed fire sprinkler installation drawings.
   e) Copy of the front page of the drawings showing the Arch. Eng. Etc.

**Section 4:** Operation and Maintenance manuals
   a) All appliance install and operation manuals
   b) All fire alarm, strobes, smoke alarm, pull station, audio device, install and operation manuals
   c) All plumbing equipment, water heaters, recirculation pumps, thermometers, gauges, expansion tanks, reduced pressure back flow preventors, flow setters, plumbing fixture install and operation manuals.
   d) Warranty letter on the water heaters. (Five years required by Specification book.)
   e) All fire sprinkler system install, fire pumps, air compressors for dry sprinkler systems, fire pump controllers and operation manuals. Include letter to notify of spare heads and install wrench in the mechanical room.
   f) All install and operation manuals, including specifications, for the electrical equipment, breakers, exit signs, battery emergency lighting, electrical panels,

main disconnect, light timers, photocell etc.

g]   All install and operation manuals for the A/C-Heating system.

h]   All install and operation manuals for the ceiling fans, exhaust fans, etc. from the electrical NBP.

i]   All equipment and install info on other items, such as elevators, garbage disposal. washer/dryer, fireplace, unit heaters for mechanical and storage rooms,

j]   Any ADA equipment, doorbell system, phone systems, etc.

k]   All equipment manuals on landscape sprinkler system.

l]   All items required from GC close out sheet.

At the same time the warranty CD's are turned over, a copy of the "As Built Drawings" shall be required.

***Failure to provide this will result in non-payment of pending applications.***



# SILVERLEAF RESORTS, INC.

RESORT DEVELOPMENT
1221 RIVER BEND DRIVE, SUITE 120
DALLAS TX 75247-4919
P: (214) 951-0962 F: (214) 630-4740

## SRI FINAL INSPECTION ACCEPTANCE FORM

The following undersigned hereby accepts final completion of the work; including all punch list items

for SRI Project Number: 29001C01 Purchase Order/Contract Number: _2936_ , located at

Ocean Club Resort.

The work is for 38-Unit Ocean Club Building.

**CONTRACTOR:** T&G Constructors

Comments:_____

_____

_____

_____

Signing of this form verifies that you (the contractor listed above) have full knowledge to submit
final invoice with final "notarized" lien release within 30 days of the date signed below.

Contractor: _____     Date:_____

Resort Development: _____     Date:_____

Resort Operations: _____     Date:_____

# REQUEST FOR CHANGE ORDER

PROJECT NUMBER: *29001 CO1*
RESORT: *OCR*
RFCO #:
TYPE OF CONTRACT: *2936  AIA*
CONTRACT NUMBER: *2936*
GENERAL CONTRACTOR: *T&G Constructors*

1. Why is this Change being requested? Include a brief description.

2. Is this Change considered a Change in the Scope of Work or Specifications?

| Yes | No |
|-----|-----|

3. Is this a Change due to conflicts on the Plans or Specifications?

| Yes | No |
|-----|-----|

4. Who is the responsible party requesting this Change?

| [Name] |
|--------|

5. Is this a Change due to a Field Directive, (attach copy), email (attach copy) or verbal request?

| Yes | No |
|-----|-----|

6. Will the work require a Time Extension?

| Yes | No |
|-----|-----|

7. If a Time Extension is required, how many days will be added?

| 0 |
|---|
| (Days) |

8. What is the approximate cost and cost code for the work?

| Code | Amount |
|------|--------|
|      |        |
|      |        |
|      |        |
| TOTAL | $          - |

| ORIGINAL CONTRACT & COR # | Date | Amount |
|---------------------------|------|--------|
|                           |      |        |
|                           |      |        |
|                           |      |        |
|                           |      |        |
|                           |      |        |

| Contract Amount to Date: | $          - |
|--------------------------|--------------|

9. Does the work require a Backcharge?

       Yes           No

10. If a Backcharge is required, who is the party?

       [Name]

11. Has the Backcharge been prepared and submitted to the responsible party?

       Yes           No

12. If not already submitted, when will this happen?

       [Date]

13. Has the contractor submitted satisfactory evidence of change, including proper credit to applicable cost (attach backup)?

       Yes           No

14. Has the contractor submitted quantity estimates for work to be done, including time and material (attach backup)?

       Yes           No

15. Quantity estimates verified by (attach backup):

       [Initial]

REVIEW & APPROVALS: Owner accepts the RFCO as:
[ To Be Checked By SRI Only]

       Submitted Price
       Cost Plus

_____   _____
Submitted By:                     Date

_____   _____
Request For Change Order Committee      Date

_____   _____
Request For Change Order Committee      Date

_____   _____
Senior Director - Facilities & Construction   Date

_____   _____
VP Resort Development             Date

_____   _____
Director of Construction Accounting & Purchasing  Date

_____   _____
Chief Financial Officer            Date

# SRI Unacceptable Contractors

Texas                                            Current for January 2013

| Contractor | Trade | Location |
|---|---|---|
| A/W Mechanical | HVAC | Houston, TX |
| A-1 Fire and Alarms | Alarm System | Houston, TX |
| ABC Siding | Siding installer | Houston, TX |
| De Los Santos | Drywall installer | Houston, TX |
| Fine Finishes | Flooring | TX |
| FireTrol | Fire Sprinkler | Austin, TX |
| Hi-Tech Fire Alarm | Alarm System | Houston, TX |
| I.H.R.I. | Finishes | Dallas, TX |
| JC Heating & Air | HVAC | Houston, TX |
| Kelly Construction | Siding installer | Canyon Lake, TX |
| Magnolia Construction | Finishes | Dallas, TX |
| Mirage Pools | Pools | Dallas, TX |
| R. O. Hernandez | Concrete | Houston, TX |
| Shamrock Plumbing | Plumbing | Houston, TX |
| Stonebridge | Roofing | New Braunfels, TX |
| TK Services | Finishes | Dallas, TX |
| Inland Marine | Pile Driver | Galveston, TX |
| Barrett & Sons, Inc. | HVAC | Alvin, TX |
| Z-CO Concrete Company | Concrete | Houston, TX |
| Western States | Fire Sprinkler | Any Location |
| AMF Fire Sprinkler | Fire Sprinkler | Dallas, TX |

Massachusettes

| Contractor | Trade | Location |
|---|---|---|
| Porter Construction | General Contractor | MA |
| Salvano Painting | Finishes | MA |
| Treveno Painting | Finishes | MA |



**SILVERLEAF**
RESORTS

# SRI RESORT RULES & REGULATIONS

1.    The property doesn't house GC's or subcontractors.  Off-site housing will need to be considered.
2.    Construction site and surrounding areas are to be kept clean.
   a.  An orange or chain-link construction fence will be installed and maintained by the GC around site and lay-down areas throughout the construction process.
   b.  Any construction debris or food containers blown off-site will be the responsibility of the GC.  Should the Resort be required to clean the debris, the GC will have the costs deducted from their pay application.
   c.  Warning signs provided by the GC are required to notify non-construction personnel to keep off the construction site.
   d.  GC is responsible for SWPPP record keeping and maintenance.
   e.  Construction delivery signs are provided by Owner.
3.    Parking is limited to designated areas.  Any contractor parking in undesignated areas will be subject to towing at their own expense.
4.    Noise levels should be kept to an absolute minimum at all times. Occupants of the buildings at the resort are generally on vacation and do not want to be disturbed by construction noise.  Consider what you would not want to see or hear when you are on vacation.
5.    Specific working times will vary as to the location of project on the resort.  As a general rule there should be no construction noise before 8 am or after sundown.
6.    There are customers and potential customers that will be reviewing the progress of the project periodically.  Appropriate clothing is required at all times.  If someone on the project is wearing what is deemed to be inappropriate they will be asked to leave.
7.    Shirts must be worn at all times.
8.    No music is allowed on site.
9.    No alcohol is allowed on property.
10.   Speed limit on property is 10 MPH.

## CONDITIONAL WAIVER AND RELEASE ON PROGRESS PAYMENT

To:   Silverleaf Resorts, Inc.
      1221 River Bend Drive
      Dallas, TX 75247

| | |
|---|---|
| Property: | Ocean Club Resort |
| Contractor: | T&G Constructors |
| Project Description: | Ocean Club Resort |
| SRI Project Number: | 29001C01 |
| Contract Number: | _2936_ |
| Draw Number: _ | |

On receipt by the signer of this document a check from SILVERLEAF RESORTS, INC. or SILVERLEAF CLUB in the sum of $_____ payable to <u>T&G Constructors</u> and when the check has been properly endorsed and has been paid by the bank on which it is drawn, this document becomes effective to release any mechanic's lien right, any right arising from a payment bond that complies with a state or federal statute, any common law payment bond right, any claim for payment, and any rights under any similar ordinance, rule, or statute related to claim or payment rights for persons in the signer's position that the signer has on the property of SILVERLEAF RESORTS, INC./SILVERLEAF CLUB located at the following address: 19418 San Luis Pass Rd, Galveston, TX 77554 to the following extent:

_____

☐ PARTIAL     This release covers a progress payment for all labor, services, equipment, or materials furnished to SILVERLEAF RESORTS, INC. or SILVERLEAF CLUB as indicated in the attached statement(s) or progress payment requests, except for unpaid retention, pending modifications and changes, or other furnished.

☐ FINAL       This release covers the final payment to the signer for all labor, services, equipment, or materials furnished to SILVERLEAF RESORTS, INC. or SILVERLEAF CLUB.

Before any recipient of this document relies on this document, the recipient should verify evidence of payment to the signer.

The signer warrants that the signer has already paid or will use the funds from this payment to promptly pay in full all of the signer's laborers, subcontractors, material men, and suppliers for all work, materials, equipment, or services provided for or to the above referenced project in regard to the attached statement(s) or payment request(s), up to the date of this waiver and release.

BY: _____   ON: _____
      SIGNATURE                                                            DATE

STATE OF: _____

**<u>NOTE: THIS MUST BE NOTARIZED ONLY IF THIS IS A FINAL LIEN WAIVER.</u>**

BEFORE ME, the undersigned authority, on this day, personally appeared _____; known to me to be the person whose name is subscribed to the foregoing instrument, and, being first duly sworn, acknowledged to me that he executed the same for the purposes and consideration therein expressed and declared to me that the statements contained therein are true.

SWORN AND SUBSCRIBED to before me on this _____

My commission expires: _____

_____
Public Notary                                                        Affix Seal

# EXHIBIT B



CNT
3045



[✓] RD
[✓] CF
[✓] COPY



# AIA® Document B209™ – 2007

**Standard Form of Architect's Services:** Construction Contract Administration, for use where the Owner has retained another Architect for Design Services

AGREEMENT made as of March 1, 2015 is between the Owner and the newly retained Architect.

PROJECT:
Ocean Club Resort
OCR 29001C01 – 38-unit, Section 1, Building 1
19418 San Luis Pass Road
Galveston, TX 77514

THE OWNER:
Silverleaf Resorts Inc.
1201 Elm Street #4600
Dallas TX, 75270
214-951-0962

THE ARCHITECT / CONSTRUCTION ADMINISTRATION ARCHITECT:
ACI Architectural Concepts Inc.
3958 First Avenue
San Diego, CA 92103
619-531-0110

THE GENERAL CONTRACTOR:
T&G Contractors
8623 Commodity Circle
Orlando, FL 32819
407-352-0778

THE ARCHITECT OF RECORD / DESIGN ARCHITECT:
The Matrix Design Companies, Inc.
6213 Skyline Drive, Suite 100
Houston, TX 77057
703-525-0424

TABLE OF ARTICLES

1    GENERAL

2    CONSTRUCTION CONTRACT ADMINISTRATION SERVICES

3    ADDITIONAL SERVICES

4    OWNER'S RESPONSIBILITIES

5    COMPENSATION

6    SPECIAL TERMS AND CONDITIONS



5/4/15

Init.

/

**AIA Document B209™ – 2007.** Copyright © 2005 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**

User Notes:                                                                                    (1848918639)

## ARTICLE 1   GENERAL

### § 1.1 INITIAL INFORMATION

The Architect's performance of the services set forth in this document is based upon the following information. Material changes to this information may entitle the Architect to Additional Services.

**§1.1.** The Owner's anticipated dates for commencement of construction and Substantial Completion of the Work are set forth below:

    .1 Commencement of ACI services March 1, 2015

    .2 Substantial Completion date: ACI services September 1, 2015

### § 1.2 BASIC DEFINITIONS
### § 1.2.1 THE CONTRACT DOCUMENTS

For purposes of this Agreement, the Contract Documents consist of the Owner/Contractor Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, and Specifications, and other documents listed in the Agreement. The Contract Documents do not include the advertisement or invitation to bid, Instructions to Bidders, sample forms, or other information furnished by the Owner in anticipation of receiving bids or proposals.

### § 1.2.2 THE OWNER

The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative (CBRE) who shall have express  authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as  otherwise provided the Architect does not have such authority. The term "Owner" means the Owner  or the Owner's authorized representative.

### § 1.2.3 THE WORK

For purposes of this Agreement, the term "Work" means the construction and services required by the Contract Documents, and includes all other labor, materials, equipment and services to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

### § 1.2.3 THE PROJECT

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by separate contractors.

### § 1.2.4 THE DRAWINGS

The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams. These Drawings were prepared by the Architect Of Record and are not the responsibility of ACI.

### § 1.2.5 THE SPECIFICATIONS

The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services. These Specifications were prepared by the Architect Of Record and are not the responsibility of ACI.

### § 1.2.6 INSTRUMENTS OF SERVICE

Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials. Where required by Texas law, final Instruments of Service shall bear the seal, signature and date of the Architect and the Architect's consultants.

Init.

/

AIA Document B209™ – 2007. Copyright © 2005 and 2007 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**

User Notes:                                                                                                   (1848918639)

## § 1.3   ARCHITECT'S RESPONSIBILITIES
§ 1.3.1 The Architect shall provide the professional services as set forth in this Agreement.

§ 1.3.2 The Architect shall perform its services consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar locality under the same or similar circumstances. The Architect shall perform its services as expeditiously as is consistent with such professional skill and care and the orderly progress of the Project.

§ 1.3.3 The Architect shall identify a representative authorized to act on behalf of the Architect with respect to the Project.

§ 1.3.4 Except with the Owner's knowledge and consent, the Architect shall not engage in any activity, or accept any employment, interest or contribution that would reasonably appear to compromise the Architect's professional judgment with respect to this Project. By executing this Agreement, the Architect certifies, under oath, that they have not in any way received, directly or indirectly, any gratuity, kickback, or contingent fee in connection with their selection to perform the Basic Services, Additional Services, and such further services as are described in this Agreement.

§ 1.3.5 The Architect shall maintain the following insurance for the duration of this Agreement. If any of the requirements set forth below exceed the types and limits the Architect normally maintains, the Owner shall reimburse the Architect for any additional cost:

  .1   General Liability:

      For claims arising out of bodily injury, illness or death, or from damage to or destruction of property of others, including loss or use thereof, with minimum limits of $1,000,000 per claimant, $2,000,000 per occurrence for the entire term of the contract.

  .2   Automobile Liability:

      For non-owned and hired vehicles with minimum limits for bodily injury and property damage of $100,000 per accident for the entire term of the contract.

      If at any time during the term of this Agreement the Architect purchases any automobiles, the Architect's Automobile Liability insurance shall be extended to cover owned vehicles with the minimum limits stated above.

  .3   Workers' Compensation:

      Workers' Compensation coverage shall be in effect, as required by California law, for all employees or agents working for the Architect providing services under this agreement.

  .4   Professional Liability:

      The policy shall be a "claims made" policy with a maximum limit of liability of not less than $500,000 per claim, with an aggregate limit of not less than $1,000,000 per year to protect the Owner from claims arising from the Architect's negligence in the performance of duties under this Agreement. The coverage shall remain in effect for a period of two (2) years following the last date that Architect has provided services under this Agreement. In the event the Architect or the insurer terminates coverage prior to the expiration of the periods noted above, the Architect shall provide to the Owner advance written notification of the termination of said coverage and shall provide the Owner with an endorsement for an extended reporting period ("tail coverage") which shall be in effect for a period of time not less than two (2) years following the last date that Architect has provided services under this Agreement.

AIA Document B209™ – 2007. Copyright © 2005 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.

Init.

User Notes:           (1848918639)

§ **1.3.6** It is understood and agreed that these policies are primary and not contributory. Certificates showing proof of such insurance shall be submitted to the Owner prior to commencement of this Agreement. In the event the Architect's services extend into a future policy period, the Architect shall, prior to the policy expiration date, provide the Owner with a new certificate of insurance demonstrating that such coverage is or shall be in effect during all periods of time that Architect will provide services under this Agreement;

§ **1.3.7** It shall be an affirmative obligation upon the Architect to advise the Owner or representative within two days of the cancellation or substantive change of any insurance policy required in this Agreement. Failure to do so shall be construed to be a breach of this Agreement.

§ **1.3.8** The Owner's failure to request or review such certificates and endorsements shall not affect the Owner's rights or the Architect's obligation hereunder.

§ **1.3.9** Any insurance company providing coverage under this agreement shall have a minimum A M Best rating of A (excellent).

**1.4 SCOPE OF ARCHITECT'S BASIC SERVICES**
§ **1.4.1** The Architect's Basic Services consist of those described in Article 2 and include coordination with Owner-retained structural, mechanical, plumbing, fire alarm and electrical engineering services.

§ **1.4.1.1** The Architect shall manage the Architect's services, consult with the Owner, attend Project meetings in person or via conference call, communicate with members of the Project team and report progress to the Owner.

§ **1.4.1.2** The Architect shall coordinate its services with those services provided by the Owner and the Owner's consultants. The Architect shall be entitled to rely on the accuracy and completeness of services and information furnished by the Owner and the Owner's consultants. The Architect shall provide prompt written notice to the Owner if the Architect becomes aware of any error, omission or inconsistency in such services or information.

§ **1.4.1.3** The Architect shall not be responsible for an Owner's directive or substitution made without the Architect's approval.

§ **1.4.1.4** The Architect shall assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project – as an additional service.

**ARTICLE 2    CONSTRUCTION CONTRACT ADMINISTRATION SERVICES**
§ **2.1** The Architect shall provide Construction Contract Administration Services for the Project.

§ **2.2** The Architect shall coordinate its services and those of the Owners consultants with those services provided by the Owner.

§ **2.3** The Architect's responsibility to provide Construction Administration services commences March 1, 2015 and terminates on September 1, 2015 unless extended as provided for in this Agreement.

§ **2.4** The Architect shall provide administration of the Contract between the Owner and the Contractor as set forth herein. The Architect shall have the right to review the Owner's proposed Owner/Contractor Agreement prior to starting services. If the Owner/Contractor Agreement proposed by the Owner modifies or conflicts with the Architect's responsibilities under this Agreement, the parties shall attempt to resolve any such conflicts. In the event any such conflicts cannot be resolved, either the Owner or the Architect shall have the right to withdraw from this Agreement without liability other than payment for actual work performed and expenses incurred by the Architect pursuant to Section 5.6 of this Agreement.

§ **2.5** The Architect shall advise and consult with the Owner during the provision of the Construction Contract Administration Services. The Architect shall have authority to act on behalf of the Owner only to the extent provided in this Agreement. The Architect shall not have control over, charge of, or responsibility for the construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, nor shall the Architect be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect shall be responsible for the Architect's negligent acts or omissions, but shall not have control over or charge of, and shall not be responsible for, acts or omissions of the

**AIA Document B209™ – 2007.** Copyright © 2005 and 2007 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**

Init.

/

Contractor or of any other persons or entities performing portions of the Work.

§ 2.6 The Architect shall interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests shall be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

§ 2.7 Interpretations and decisions of the Architect shall be consistent with the intent of, and reasonably inferable from, the Contract Documents. When making such interpretations and decisions, the Architect shall endeavor to secure faithful performance by both Owner and Contractor, shall not show partiality to either, and shall not be liable for the results of interpretations or decisions rendered in good faith.

§ 2.8 If appropriate, the Architect shall, on the Owner's behalf, prepare, reproduce and distribute supplemental drawings, specifications and interpretations in response to requests for information by the Contractor relative to changed requirements and schedule revisions; provided they do not require review and approval by the authority having jurisdiction.

§ 2.9 The Architect shall decide matters relating to aesthetic effect. Such decisions shall be final if consistent with the intent expressed in the Contract Documents.

§ 2.10 The Architect is not required to assist the Owner with Bidding.

§ 2.11 EVALUATIONS OF THE WORK

§ 2.11.1 The Architect shall visit the site at intervals appropriate to the stage of construction (three times), or as otherwise requested for an additional service, to become generally familiar with the progress and quality of the portion of the Work completed, and  to determine, in general, if the Work observed is being performed in a manner indicating that the Work, when fully  completed, will be in accordance with the Contract Documents. However, the Architect shall not be required to make   exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of the site visits,  the Architect shall keep the Owner reasonably informed about the progress and quality of the portion of the Work  completed, and report to the Owner (1) known deviations from the Contract Documents and from the most recent  construction schedule submitted by the Contractor, and (2) defects and deficiencies observed in the Work.

§ 2.11.2
The Architect has the authority to reject Work that does not conform to the Contract Documents. Whenever the Architect   considers it necessary or advisable, the Architect shall have the authority to require inspection or testing of the Work in  accordance with the provisions of the Contract Documents, whether or not such Work is fabricated, installed or  completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not  to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors,  material and equipment suppliers, their agents or employees or other persons or entities performing portions of the  Work.

§ 2.12 CERTIFICATES FOR PAYMENTS TO CONTRACTOR
§ 2.12.1  The Architect is not responsible to review Payment Request or certify Certificate for Payment.  These services will be provided by the Owner.

§ 2.13 SUBMITTALS
§ 2.13.1 The Architect shall review and approve the Contractor's submittal schedule and shall not unreasonably delay or withhold approval. The Architect's action in reviewing submittals shall be taken in accordance with the approved submittal schedule or, in the absence of an approved submittal schedule, with reasonable promptness, while allowing sufficient time in the Architect's professional judgment to permit adequate review.

§ 2.13.2 In accordance with the Architect-approved submittal schedule, the Architect shall review and approve or take other appropriate action upon the Contractor's Submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. Review of such submittals is not for the purpose of determining the accuracy and completeness of other information such as dimensions, quantities, and installation or performance of equipment or

**AIA Document B209™ – 2007.** Copyright © 2005 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**

Init.

/

User Notes:                                                                                           (1848918639)

systems, which are the Contractor's responsibility. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Construction Administration Architect, of any construction means, methods, techniques, sequences or procedures of construction, fabrication, transportation or installation. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ 2.13.3 If the Contract Documents specifically require the Contractor to provide professional design services or certifications by a design professional related to systems, materials or equipment, the Architect shall specify the appropriate performance and design criteria that such services must satisfy. The Architect shall review Shop Drawings and other Submittals related to the Work designed or certified by the design professional retained by the Contractor that bear such professional's seal and signature when submitted to the Contract Administration Architect. The Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications and approvals performed or provided by such design professionals.

§ 2.13.4 The Architect shall review and respond to requests for information about the Contract  Documents. Requests for information shall include, at a minimum, a detailed written statement that indicates the specific Drawings  or Specifications in need of clarification and the nature of the clarification requested. The Architect's response to such requests shall be made in writing within any time limits agreed upon, or otherwise with reasonable promptness. If appropriate, the Architect shall prepare and issue supplemental Drawings and Specifications in response to requests for information provided these documents do not require review and approval by the authority having jurisdiction.

§ 2.13.5 The Architect shall maintain a record of submittals and copies of submittals supplied by the Contractor in accordance with the requirements of the Contract Documents.

§ 2.14 CHANGES  IN THE  WORK
§ 2.14.1 The Architect may authorize minor changes in the Work not involving an adjustment in Contract Sum or an extension of the Contract Time that are consistent with the intent of the Contract Documents.

§ 2.14.2 The Architect shall prepare Construction Change Directives, of reasonable quantity, for  the Owner's approval and execution in accordance with the Contract Documents and the applicable laws and  ordinances. If a Change Order results the Owner will prepare and process any Change Orders.

§ 2.14.3 The Architect shall maintain records relative to changes in the Work.

§ 2.15 PROJECT COMPLETION
§ 2.15.1 The Architect shall conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; issue in conjunction with the Owner, Certificates of Substantial Completion; receive from the Contractor and forward to the  Owner for the Owner's review and records, written warranties and related documents required by the Contract  Documents and assembled by the Contractor; and review the final Certificate for Payment based upon a final inspection  indicating the Work complies with the requirements of the Contract Documents.

§ 2.15.2 The Architect's inspections shall be conducted with the Owner to check conformance of the Work with the requirements of the Contract Documents and to verify the accuracy and completeness of the list submitted by the Contractor of Work to be completed or corrected.

§ 2.15.3 The Owner shall forward to the Architect for review the following information received from the Contractor: (1) consent  of surety or sureties, if any, to reduction in or partial release of retainage or the making of final payment (2) affidavits,   receipts, releases and waivers of liens or bonds indemnifying the Owner against liens, and (3) any other documentation   required of the Contractor under the Contract Documents.  The Architect's review is cursory.

ARTICLE 3    ADDITIONAL  SERVICES
§ 3.1 In addition to the Construction Contract Administration Services described above, the Architect shall provide other services only if specifically requested and with prior approval. The Architect shall perform such other services in accordance  with a service description.

Init.

/

AIA Document B209™ – 2007. Copyright © 2005 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.

User Notes:                                                                                                                      (1848918639)

§ 3.2 Additional Services authorized in writing by the Owner, may be provided after execution of this Agreement, without invalidating the Agreement. Except for services required due to the fault of the Architect, any Additional Services authorized in writing by the Owner and provided in accordance with this Section 3 shall entitle the Architect to compensation pursuant to Section 5 and an appropriate adjustment in the Architect's schedule.

§ 3.3 Upon recognizing the need to perform the following Additional Services, the Architect shall notify the Owner with reasonable promptness and explain the facts and circumstances giving rise to the need. The Architect shall not proceed to provide the following services until the Architect receives the Owner's written authorization:

.1 Services necessitated by a change in the Initial Information, previous instructions or approvals given by the Owner, or a material change in the Project including, but not limited to, size, quality, complexity, the Owner's schedule or budget for Cost of the Work, or procurement or delivery method;

.2 Services necessitated by decisions of the Owner not rendered in a timely manner or any other failure of performance on the part of the Owner or the Owner's consultants or contractors;

.3 Preparation for, and attendance at, a public presentation, meeting or hearing;

.4 Preparation for, and attendance at a dispute resolution proceeding or legal proceeding, except where the Architect is party thereto;

.5 Evaluation of the qualifications of bidders or persons providing proposals;

.6 Consultation concerning replacement of Work resulting from fire or other cause during construction; or

.7 Assistance to the Initial Decision Maker, if other than the Architect.

ARTICLE 4    OWNER'S RESPONSIBILITIES

§ 4.1 The Owner shall identify a representative authorized to act on the Owner's behalf with respect to the Project. The Owner shall render decisions and approve the Architect's submittals in a timely manner in order to avoid unreasonable delay in the orderly and sequential progress of the Architect's services.

§ 4.2 Upon request by the Architect, the Owner shall furnish surveys to describe physical characteristics, legal limitations and utility locations for the site of the Project, and written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions, and necessary data with respect to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All information on the survey shall be referenced to a Project benchmark.

§ 4.3 Upon request by the Architect, the Owner shall furnish services of geotechnical engineers and construction testing services, which may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion tests and resistivity tests, including necessary operations for anticipating subsoil conditions, with reports and appropriate recommendations.

§ 4.4 Except when direct communications have been specially authorized, the Owner shall endeavor to communicate with the Contractor through the Owners Representative about matters arising out of or relating to the Contract Documents. The Owner shall notify the Architect of any direct communication between the Owner and the Contractor affecting the Architect's scope of work.

§ 4.5 Upon request by the Architect, the Owner shall furnish tests, inspections and reports required by law or the Contract Documents, such as structural, mechanical, and chemical tests, tests for air and water pollution, and tests for hazardous materials.

§ 4.6 The Owner shall provide the Architect access to the Project site prior to commencement of the Architects Work and shall obligate the Contractor to provide the Architect access to the Work wherever it is in preparation or progress.

§ 4.7 The Owner shall coordinate the services of its own consultants with those services provided by the Architect. Upon the Architect's request, the Owner shall furnish copies of the scope of services in the contracts between the Owner and the Owner's consultants. If at any time during this Project the Architect believes that services of consultants other than those designated in this Agreement are reasonably required by the scope of the Project, the Architect shall provide a written request to the Owner for such services, shall demonstrate that they are reasonably

Init.

/

AIA Document B209™ – 2007. Copyright © 2005 and 2007 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** User Notes:                                                                                          (1848918639)

required by the scope of the Project, and shall inform the Owner of the consequences of not having those services provided on the Project. The Owner shall consider the Architect's request and shall furnish services of the consultants required, shall authorize the Architect to furnish them as an Additional Service, or shall inform the Architect in writing of their decision otherwise. The Owner shall require that its consultants maintain professional liability insurance as appropriate to the services provided.

§ 4.8 The Owner shall provide prompt written notice to the Architect if the Owner becomes aware of any fault or defect in the Project, including errors, omissions or inconsistencies in the Design Architect's Instruments of Service.

ARTICLE 5   COMPENSATION
§ 5.1 For the Architect's Services described under Article 2, the Owner shall compensate the Architect as follows:

| Services | Proposal Amount Lump Sum | Proposal Amount Hourly | Proposed Hours | Notes |
|---|---|---|---|---|
| Project orientation / review | $3,360 | $140 | 24 | |
| Submittal / RFI review | $11,200 | $140 | 80 | 50 Submittal and 30 RFI's |
| Site Visits | $7,440 | $140 | 53 | 3 total @ 2 days each – including reimbursables/ Not hotel or air |
| General Coordination | $11,200 | $140 | 80 | Conf calls, design review, Consultant coordination |
| Final Punch | $4,900 | $140 | 32 | 3 days on site, 4 days total with travel– including reimbursables/ Not hotel or air |
| Design revisions / Record Drawings / Warranty review | TBD | $140 | TBD | Additional Service per request |
| Total Base Proposal | $38,100 | $140 | 197 | |

§ 5.2 COMPENSATION FOR REIMBURSABLE EXPENSES
§ 5.2.1 Reimbursable Expenses are included in the contract except lodging and airfare shall be the responsibility of the Owner.

§
§ 5.3 PAYMENTS TO THE ARCHITECT

§ 5.3.1 Initial Payment – $10,000

§ 5.3.2 Unless otherwise agreed, payments for services shall be made monthly in proportion to services performed. Payments are due and payable upon presentation of the Architect's invoice. Amounts unpaid Sixty ( 60 ) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Architect.

Wall Street Journal Prime Rate, per annum, up to a maximum of six and one half percent (6.5%) per annum

Init.

/

AIA Document B209™ – 2007. Copyright © 2005 and 2007 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**
User Notes:                                                                                                  (1848918639)

§ 5.3.3 The Owner shall not withhold amounts from the Architect's compensation to impose a penalty or liquidated damages on the Architect, or to offset sums requested by or paid to contractors for the cost of changes in the Work unless the Architect agrees or has been found liable for the amounts in a binding dispute resolution proceeding.

§ 5.3.4 Records of Reimbursable Expenses, expenses pertaining to Additional Services, and services performed on the basis of hourly rates shall be available to the Owner at mutually convenient times.

## ARTICLE 6  CLAIMS AND DISPUTES
### § 6.1 GENERAL
§ 6.1.1 The Owner and Architect shall commence all claims and causes of action, whether in contract, tort, or otherwise, against the other arising out of or related to this Agreement in accordance with the requirements of California law.

§ 6.1.2 The Architect and Owner do not waive consequential damages for claims, disputes or other matters in question arising out of or relating to this Agreement, including consequential damages due to either party's termination of this Agreement.

### § 6.2 MEDIATION
§ 6.2.1 Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to binding dispute resolution.

§ 6.2.2 The Owner and Architect shall endeavor to resolve claims, disputes and other matters in question between them by mediation. A request for mediation shall be made in writing, and delivered to the other party to the Agreement.. The request may be made concurrently with the filing of a complaint, in such event; mediation shall proceed in advance of further proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

§ 6.2.3 The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Architect is located, unless another location is mutually agreed upon. Agreements reached in mediation shall   be enforceable as settlement agreements in any court having jurisdiction thereof.

§ 6.2.4 If the parties do not resolve a dispute through mediation pursuant to this Section 8 the method of binding dispute resolution shall be litigation in a court of competent jurisdiction.

## ARTICLE 7   TERMINATION OR SUSPENSION
§ 7.1 If the Owner fails to make payments to the Architect in accordance with this Agreement, such failure shall be considered substantial nonperformance and cause for termination or, at the Architect's option, cause for suspension of performance of services under this Agreement. If the Architect elects to suspend services, the Architect shall give seven days' written notice to the Owner before suspending services. In the event of a suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services. Before resuming services, the Architect shall be paid all sums due prior to suspension and any expenses incurred in the interruption and resumption of the Architect's services. The Architect's fees for the remaining services and the time schedules shall be equitably adjusted.

§ 7.2 If the Owner suspends the Project, the Architect shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Architect shall be compensated for expenses incurred in the interruption and resumption of the Architect's services.

§ 7.3 If the Owner suspends the Project for more than 90 cumulative days for reasons other than the fault of the Architect, the Architect may terminate this Agreement by giving not less than seven days' written notice.

§ 7.4 Either party may terminate this Agreement upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

§ 7.5 The Owner may terminate this Agreement upon not less than seven days' written notice to the Architect for the Owner's convenience and without cause.

Init.

/

AIA Document B209™ – 2007. Copyright © 2005 and 2007 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**

User Notes:                                                                                                            (1848918639)

§ 7.6 In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due.

ARTICLE 8 SPECIAL TERMS AND CONDITIONS
Special terms and conditions that modify this Standard Form of Architect's Services: Construction Contract Administration, if any, are as follows:

§ 8.1 GOVERNING LAW & JURISDICTION
§ 8.1.1 The construction, interpretation and enforcement of this Agreement shall be governed by the laws of the State of Texas.  The courts of the State of Texas shall have jurisdiction over any action arising out of this Agreement   and the parties.

§ 8.2 The Owner and Architect, respectively, bind themselves, their agents, successors, assigns and legal representatives to this Agreement. Neither the Owner nor the Architect shall assign this Agreement without the written consent of the other, except that the Owner may assign this Agreement to a lender providing financing for the Project if the lender agrees to assume the Owner's rights and obligations under this Agreement.

§ 8.3 Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect.

§ 8.4 The Owner agrees to defend the Architect from any legal action by the Design Architect.

§ 8.5 The Architect shall have the right to include photographic or artistic representations of the design of the Project among the Architect's promotional and professional materials. The Architect shall be given reasonable access to the completed Project to make such representations. However, the Architect's materials shall not include the Owner's confidential or proprietary information if the Owner has previously advised the Architect in writing of the specific information considered by the Owner to be confidential or proprietary.

§ 8.6 Notices All notices, requests, claims, demands and other communications hereunder shall be in writing. Such notices shall be given (i) by delivery in person (ii) by a nationally recognized next day courier service, (iii) by first class, registered or certified mail, postage prepaid, (iv) by facsimile or (v) by electronic mail to the address of the party specified in this Agreement or such other address as either party may specify in writing. Notices so given shall be effective upon (i) receipt by the party to which notice is given, or (ii) on the fifth (5th) day following mailing, whichever occurs first.

This Agreement entered into as of the day and year first written above.

**OWNER**                                    **ARCHITECT**

      **Silverleaf Resorts, Inc.**              **ACI Architectural Concepts, Inc.**

      **BY**                                   **BY**

*(Signature)*                                *(Signature)*

BRIAN  BOND                                  Margit Whitlock AIA
*(Printed Name)*

Init.

AIA Document B209™ – 2007. Copyright © 2005 and 2007 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**

User Notes:                                                                                    (1848918639)



**REQUEST FOR INSURANCE EXCEPTION(S)**

**OCEAN CLUB RESORT**

**29001C01**

We are requesting an exception on the Umbrella Coverage for ACI Architectural Concepts per this coverage is not required for Professional Services.

SRI/Club Insurance Standard Minimum Requirements
Large and Small Contracts

## ACI Architectural Concepts

Updated  4/10/2015

| Insurance Expiration Date ➡ | | 5/10/2015 | | 24 Remain as of Date Printed |
|---|---|---|---|---|

29001C01 - OCR 38 Unit Section 1 Bldg 1

| Description | Enter Contract Amount Below | Enter Cert Media Below  Original = 'O'  Fax = 'F'   'C'   Copy = 'C' | Enter Cert Media Type IN Cell D-9  'O'  'F'  or 'C' | | VARIANCE (Under) Insured per SMALL Contract | Notes |
|---|---|---|---|---|---|---|
| Contract Amount ➡ New Structure or Equipment ➡ | 38,100.00  Y | | | | | |
| | Standard Large > 100k | Standard Small < 100k | | | | |
| **General Liability** | | | | | | |
| 1. Each Occurrence | 1,000,000 | 1,000,000 | 2,000,000 | | | |
| 2. Damage To Rented Premises (Ea Occ | 50,000 | 50,000 | 1,000,000 | | | |
| 3. Medical Expense / Per Person | 5,000 | 5,000 | 10,000 | | | |
| 4. Personal & Adv Injury | 1,000,000 | 1,000,000 | 2,000,000 | | | |
| 5. General Aggregate | 2,000,000 | 2,000,000 | 4,000,000 | | | |
| 6. Products-Comp/Op Agg | 2,000,000 | 2,000,000 | 4,000,000 | | | |
| **Automobile Liability** | | | | | | |
| Bodily Injury | | | | | | |
| Each Person | | | | | | |
| Bodily Injury (Each Accident) | | | | | | |
| Property Damage | | | | | | |
| Each Accident | | | | | | |
| 1. Combined Single Limit | 1,000,000 | 1,000,000 | 2,000,000 | | | |
| **Umbrella Liability** | | | | | | |
| 1. Each Occurrence | 3,000,000 | 3,000,000 | | | NO COVERAGE! | (See attached Ins. |
| 2. Aggregate | 3,000,000 | 3,000,000 | | | NO COVERAGE! | Exception) |
| **Workers Compensation & Employers Liability** | | | | | | |
| 1. Workers Compensation | Statutory Limits "Y" or "N" | Statutory Limits "Y" or "N" | Y | | Meets Req | |
| Employers' Liability | | | | | | |
| 1. E.L Each Accident | 500,000 | 500,000 | 1,000,000 | | | |
| 2. E.L. Disease - Ea Employee | 500,000 | 500,000 | 1,000,000 | | | |
| 3. E.L. Disease - Policy Limit | 500,000 | 500,000 | 1,000,000 | | | |
| **Builder's Risk** | | | | | | |
| 1. All Risk | N/A | N/A | N/A | | N/A | |
| **Additional Requirements** | | | | | | |
| 1. Additionally Insured | Silverleaf Resorts, Inc / Silverleaf Club | Silverleaf Resorts, Inc / Silverleaf Club | Silverleaf Resorts, Inc / Silverleaf Club | | Meets Req | |
| 2. Certificate Holder | Silverleaf Resorts, Inc / Silverleaf Club | Silverleaf Resorts, Inc / Silverleaf Club | Silverleaf Resorts, Inc / Silverleaf Club | | Meets Req | |

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YY) |
|---|---|
| | 04/06/15 |

| PRODUCER   Yorba Linda Insurance Services, Inc | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. | |
|---|---|---|
| PO Box 661 | | |
| Yorba Linda, CA 92885 | | |
| Phone (714) 777-8388          Fax (714) 777-8389 | **INSURERS AFFORDING COVERAGE** | NAIC # |
| | INSURER A: certain underwriters at Lloyd's | |
| INSURED  Architectural Concepts | INSURER B: Sentinel Insurance Company | |
| | INSURER C: Hartford Insurance Company of the Mid | |
| 3958 1st Ave | INSURER D: | |
| San Diego, CA 92103-3016 | INSURER E: | |
| | INSURER F: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN. THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | ☑ | **GENERAL LIABILITY**<br>☑ COMMERCIAL GENERAL LIABILITY<br>☐☐ CLAIMS MADE ☑ OCCUR<br>☐ _____<br>☐ _____<br>**GEN'L AGGREGATE LIMIT APPLIES PER:**<br>☑ POLICY ☑ PROJECT ☑ LOC | 72 SBA AP9320-000 | 06/15/14 | 06/15/15 | EACH OCCURRENCE | 2,000,000 |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurence) | 1,000,000 |
| | | | | | | MED EXP (Any one person) | 10,000 |
| | | | | | | PERSONAL & ADV INJURY | 2,000,000 |
| | | | | | | GENERAL AGGREGATE | 4,000,000 |
| | | | | | | PRODUCTS - COMP/OP AGG | 4,000,000 |
| B | ☑ | **AUTOMOBILE LIABILITY**<br>☐ ANY AUTO<br>☐ ALL OWNED AUTOS<br>☐ SCHEDULED AUTOS<br>☑ HIRED AUTOS<br>☑ NON OWNED AUTOS<br>☐<br>☐ _____ | 72 SBA AP9320-000 | 06/15/14 | 06/15/15 | COMBINED SINGLE LIMIT (Ea accident) | 2,000,000 |
| | | | | | | BODILY INJURY (Per person) | |
| | | | | | | BODILY INJURY (Per accident) | |
| | | | | | | PROPERTY DAMAGE (Per accident) | |
| | ☐ | **GARAGE LIABILITY**<br>☐ ANY AUTO<br>☐ | | | | AUTO ONLY - EA ACCIDENT | |
| | | | | | | OTHER THAN          EA ACC<br>AUTO ONLY:            AGG | |
| | ☐ | **EXCESS/UMBRELLA LIABILITY**<br>☐ OCCUR    ☐ CLAIMS MADE<br><br>☐ DEDUCTIBLE<br>☐ RETENTION      $ | | | | EACH OCCURRENCE | |
| | | | | | | AGGREGATE | |
| | | | | | | | |
| | | | | | | | |
| C | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**<br>ANY PROPRIETOR / PARTNER / EXECUTIVE OFFICER / MEMBER EXCLUDED?  2<br>If yes, describe under<br>SPECIAL PROVISIONS below | 72 WEC GF6731-001 | 06/15/14 | 06/15/15 | ☑ WC STATU- ☐ OTH-<br>TORY LIMITS ER | |
| | | | | | | E.L. EACH ACCIDENT | 1,000,000 |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | 1,000,000 |
| | | | | | | E.L. DISEASE - POLICY LIMIT | 1,000,000 |
| A | | **OTHER**<br>Professional Liability | PSC0307988 | 05/10/14 | 05/10/15 | Ded-$5,000 | $1,000,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS**

10 Day notice of cancellation for non payment of premium
Certificate holder is hereby recognized as additional insured

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Silverleaf Resorts, Inc. & Silverleaf Club<br><br>1201 Elm St<br>STE 4600<br>Dallas TX 75270-2112 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL   30   DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br>**AUTHORIZED REPRESENTATIVE** |

ACORD 25 (2001/08) QF                                                                                          © ACORD CORPORATION 1988

# IMPORTANT

If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

# DISCLAIMER

The Certificate of Insurance on the reverse side of this form does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon.

ACORD 25 (2001/08) QF